1  ROB BONTA
   Attorney General of California
2  NORMAN D. MORRISON
   Supervising Deputy Attorney General
3  ASHLEY REYES
   Deputy Attorney General
4  State Bar No. 312120
    2550 Mariposa Mall, Room 5090
5   Fresno, CA 93721-2271
    Telephone: (559) 705-2312
6   Fax: (559) 445-5106
    E-mail: Ashley.Reyes@doj.ca.gov
7  *Attorneys for Defendants State of California, acting*
   *by and through the California Highway Patrol, and*
8  *Officer Ramon Silva*

9           IN THE UNITED STATES DISTRICT COURT

10          FOR THE CENTRAL DISTRICT OF CALIFORNIA

11

12 **SANDRA KIRKMAN AND CARLOS**      Case No. 2:23-cv-07532-DMG-SSC
   **ALANIZ, INDIVIDUALLY AND AS**
13 **SUCCESSORS-IN-INTEREST TO**      <u>DISCOVERY MATTER</u>
   **JOHN ALANIZ, DECEASED,**
14                                    **JOINT STIPULATION**
                        Plaintiffs,   **REGARDING MOTION TO**
15                                    **COMPEL COMPLIANCE WITH**
         v.                          **SUBPOENAS FOR DECEDENT'S**
16                                    **MEDICAL AND/OR MENTAL**
   **STATE OF CALIFORNIA; RAMON**    **HEALTH RECORDS**
17 **SILVA; AND DOES 1-10,**
   **INCLUSIVE,**                    Date:        November 12, 2024
18                                    Time:        1:30 p.m.
                        Defendants.   Courtroom: 790
19
20                                    Discovery Cut Off: November 22, 2024
21                                    Pre-Trial Conf.: March 18, 2025
                                      Trial: April 15, 2025
22

23      TO THE HONORABLE STEPHANIE S. CHRISTENSEN:

24      Pursuant to Local Rule 37-2, the parties hereby submit this Joint Stipulation

25 regarding Plaintiffs' objections to Defendants' subpoenas duces tecum served upon

26 third party, Veteran's Administration, located at 5901 E. 7th Street in Long Beach,

27 California 90822.

28 ///

# TABLE OF CONTENTS

**Page**

I.    Introductory Statements ........................................................6
      A.    Defendants' Introductory Statement..............................6
      B.    Plaintiffs' Introductory Statement ................................8
II.   Meet and Confer Efforts ....................................................9
III.  Discovery at Issue .............................................................11
IV.   Plaintiffs' Objections ........................................................12
V.    Parties Contentions Regarding Defendants' Subpoena ......................12
      A.    Defendants Contentions............................................12
      1.    The Records Sought Are Relevant to the Claims and Defenses in This Action ...................................... 13
      2.    Plaintiffs' Claim that 42 C.F.R. §2.2 Prevents Disclosure of Drug and/or Alcohol Treatment Records Lacks Merit ........... 17
      3.    Any Privacy Concerns Can Be Satisfied by Producing the Records Subject to the Current Protective Order ................18
      B.    Plaintiffs' Contentions ............................................ 18
      1.    The Records Sought Are Not Relevant to Either Parties' Claims or Defenses ........................................19
            a.    *Liability* ...........................................19
            b.    *Damages* .......................................... 22
      2.    The Records Sought Are Privileged Under John Alaniz's HIPAA Protections and his Psychotherapist-Patient Privilege ........................................... 22
      3.    To the Extent That the Records Contain Information Regarding Any Drug or Alcohol Treatment, Such Records and Information are Confidential ...................................... 26
      4.    A Protective Order is Necessary, but Not Sufficient to Protect Mr. Alaniz's Privileged Information ............................ 28
VI.   Conclusion .................................................... 28
      A.    Defendants' Conclusion .........................................28
      B.    Plaintiffs' Conclusion ..........................................28

1

# TABLE OF AUTHORITIES

2

**Page**

3    C<small>ASES</small>

4

*A.H. v. County of Los Angeles*
5      No. CV 22-03671-SB, 2023 WL 3035349 (C.D. Cal., Jan. 19,
6      2023) ................................................................................................. 14, 15

7    *Boyd v. City and County of San Francisco.*
       No. C-04-5459 .................................................................................... 25
8

9    *Camacho v. McCarthy*
       Case No. EDCV 15-2043-JGB, 2020 WL 2510544 (C.D. Cal., Mar.
10     30, 2020) ............................................................................................. 18

11   *E.E.O.C. v. Serramonte*
12     237 F.R.D. 220 (N.D. Cal. 2006) ......................................................... 23

13   *Epstein v. MCA, Inc.*
       54 F.3d 1422 (9th Cir. 1995) .............................................................. 13
14

15   *Fitzgerald v. Cassil*
       216 F.R.D. 632 (N.D. Cal. 2003) .................................................... 23, 24, 25
16

17   *Fritsch v. City of Chula Vista*
       187 F.R.D. 614 (S.D. Cal. 1999) ......................................................... 23
18

19   *Glenn v. Washington Cnty.*
       673 F.3d 864 (9th Cir. 2011) .......................................................... 19, 20
20

21   *Gonzalez v. Marks*
       No. 1:07-cv-00949 OWW GSA, 2009 WL 179779 at *3 (E.D. Cal.
22     Jan. 26, 2009) ..................................................................................... 18

23   *Graham v. Connor.*
       490 U.S. 386 (1989) ...................................................................... 19, 20
24

25   *Hayes v. Cnty. of San Diego*
       736 F.3d 1223 (9th Cir. 2013) ............................................................. 21
26

27   *Hucko v. City of Oak Forest*
       185 F.R.D. 526 (N.D.Ill.1999) ............................................................ 24
28

1

2

# TABLE OF AUTHORITIES
## (continued)

3

**Page**

*I. R. v. City of Fresno*
   Nos. 1:12–CV–00558–AWI–GSA, 1:13–CV–00850 AWI GSA,
   2014 WL 1419305 (E.D. Cal. April 11, 2014.) ........................................... 14, 17

*Jackson v. Chubb Corp.*
   193 F.R.D. 216 (D.N.J. 2000) .................................................................. 24

*Jackson v. City of Bremerton*
   268 F.3d 646 (9th Cir. 2001) ................................................................... 20

*Jaffee v. Redmond*
   518 U.S. 1 (1996) ..................................................................... 12, 23, 24, 25

*Jane H. v. Rothe*
   488 N.W.2d 879 (N.D. 1992) ................................................................... 27

*Jones v. Cnty. of Del Norte, California*
   No. C08-3222 CW (BZ), 2010 WL 11714135 (N.D. Cal. Apr. 1,
   2010) ....................................................................................................... 25

*M.S. v. City of Fontana*
   No. EDCV162498JGBSPX, 2018 WL 6075323 (C.D. Cal. July 12,
   2018) ....................................................................................................... 25

*Nehad v. Browder*
   No.: 15-CV-1386 WQH NLS, 2016 WL 1428069 (S.D. Cal., Apr.
   11, 2016) ............................................................................................ 15, 16

*Oleszko v. State Comp. Ins. Fund*
   243 F.3d 1154 (9th Cir. 2001) ................................................................. 23

*Oppenheimer Fund, Inc. v. Sanders*
   437 U.S. 340 (1978) ................................................................................ 13

*Ruhlmann v. Ulster County Department of Social Services*
   194 F.R.D. 445 (N.D.N.Y. 2000) ............................................................. 24

*Ryan v. Putnam*
   No. CV1705752CASRAOX, 2021 WL 9721273 (C.D. Cal. July 26,
   2021) ....................................................................................................... 25

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**TABLE OF AUTHORITIES**
**(continued)**

Page

3

4

*Sarko v. Penn-Del Directory Co.*
    170 F.R.D. 127 (E.D. Penn. 1997) ..................................................................... 24

5

6

*State v. Ctr. For Drug Free Living, Inc.*
    842 So. 2d 177 (Fla. Dist. Ct. App. 2003)......................................................... 27

7

8

*Tennessee v. Garner*
    471 U.S. 1 (1985) ................................................................................................. 19

9

10

*Valentine v. First Advantage Saferent Inc.*
    No. EDCV 08-142-VAP(OPX), 2009 WL 3841967 (C.D. Cal. Sept.
    18, 2009)............................................................................................................... 26

11

12

*Valtierra v. City of Los Angeles*
    99 F. Supp. 3d 1190 (C.D. Cal. 2015)........................................................ 20, 21

13

14

*Vanderbilt v. Town of Chilmark*
    174 F.R.D. 225 (D.Mass. 1997) ........................................................................ 24

15

**STATUTES**

16

California Civil Code § 56.10....................................................................................... 12

17

18

19

Health Insurance Portability and Accountability Act
    of 1996, Pub. L. 104-191 (HIPAA) ................................................................... 9
    (HIPAA), 42 U.S.C. § 299b-2 ........................................................................... 12

20

Medical Information Act ................................................................................................ 12

21

**CONSTITUTIONAL PROVISIONS**

22

23

California Constitution Article I
    § 1 .......................................................................................................................... 12

24

25

United States Constitution
    Fourth Amendment.............................................................................................. 20
    Fourteenth Amendment ...................................................................................... 16

26

27

28

iv

1

**TABLE OF AUTHORITIES**
(continued)

2

3                                                                                   **Page**

**COURT RULES**

4

Federal Rules of Civil Procedure

5          Rule 26...............................................................................13, 19
           Rule 26(b)(1).....................................................................13, 18
6          Rule 26 (b)(5)...........................................................................28
           Rule 35......................................................................................24
7          Rule 45(a)(4).............................................................................12
           Rule 401....................................................................................13
8          Rule 501....................................................................................12
9

10     Rule 26(b)(1)...........................................................................19, 22

11     **OTHER AUTHORITIES**

12     Title 42 C.F.R.
13         § 2.1(a).....................................................................................26
           § 2.1(b)(2)(C)...........................................................................27
14         § 2.1(d).....................................................................................27
           § 2.2........................................................................................17
15         § 2.2(a) (2008)..........................................................................26
16         § 2.2(b)(2)(C)...........................................................................27
           § 2.3(b)(2)................................................................................26
17         § 2.11...................................................................................18, 27
18         § 2.15(b)(2)..............................................................................27
19

20     Title 45 C.F.R.
           § 164.502(a).............................................................................12
21         § 164.508(a)(l).........................................................................12

22     Assembly Bill
23         No. 1506.....................................................................................6

24

25

26

27

28

v

1   **I.**   **INTRODUCTORY STATEMENTS**

2       **A.**   **Defendants' Introductory Statement**

3         This action arises out of an incident that occurred on May 4, 2022, when

4 California Highway Patrol (CHP) dispatch received a 9-1-1 call reporting that a big

5 rig had collided with a pedestrian (later determined to be Decedent John Alaniz) on

6 the roadway of Interstate 105, westbound at Garfield Avenue. It was also reported

7 by witnesses that the Decedent was purposefully jumping in front of additional

8 vehicles and running in lanes of traffic. CHP dispatch broadcast this information

9 and added that Decedent was possibly a suicidal party.

10         Defendant, Officer Ramon Silva, responded to the call and arrived on scene

11 to check on the welfare of Decedent. When he arrived, he reported to dispatch that

12 Decedent had his hands in his pockets. CHP Officer Van Dragt arrived on scene

13 shortly thereafter and exited his vehicle. As the officers approached Decedent, they

14 instructed him to take his hands out of his pockets repeatedly. Decedent failed to

15 comply with the officer's commands.

16         Without warning, Decedent suddenly took both hands out of his pockets,

17 produced an unknown object in his right hand, and positioned himself in a shooting

18 stance. He began to run towards Officer Van Dragt with the unknown object in his

19 hand, causing Officer Van Dragt to retreat to the front of his patrol vehicle.

20 Decedent then ran around the back of Officer Van Dragt's patrol vehicle and

21 continued to advance in a shooting stance with the unknown object in his hands.

22 Fearing for his life and the life of his partner, and not knowing what the object was

23 that Decedent had in his hands, Officer Silva utilized lethal force to stop the threat

24 of the advancing Decedent. Life-saving measures were performed on the decedent,

25 however he ultimately succumbed to his injuries.

26         This officer-involved shooting was investigated by special agents from the

27 Department of Justice California Police Shooting Investigation Team pursuant to

28 Assembly Bill 1506. This investigation was completed in July 2024. Plaintiffs'

1    subsequently issued a subpoena duces tecum for the investigative materials from

2    the Department of Justice, which were produced on September 11, 2024. These

3    materials include interviews with witnesses who witnessed Decedent's actions both

4    prior to and right before the officer-involved shooting. Many of these individuals,

5    whom Defendants are working on locating so that their depositions can be taken,

6    reported to the special agents that Decedent was not only jumping in and out of

7    traffic and purposefully trying to get hit, but also that he had tried putting his head

8    underneath the tire of a semi-truck immediately after he was hit by a separate semi-

9    truck. These witnesses' accounts of Decedent's behavior on the date of the incident

10   are consistent with the Plaintiffs' deposition testimony and their allegations that

11   Decedent suffered from, and had been diagnosed with, schizophrenia and bipolar

12   disorder many years prior.

13        This wrongful death and survival action is brought by Decedent's parents,

14   Plaintiffs Sandra Kirkman and Carlos Alaniz, Jr. Plaintiffs claim that Officer

15   Silva's use of force and alleged denial of medical care caused Decedent's death.

16   Plaintiffs seek damages for decedent's "pre-death pain and suffering, loss of life,

17   and loss of enjoyment of life, for violation of Decedent's rights." Complaint, at ¶

18   47.

19        To assist with assessing Plaintiffs' claims for liability and damages,

20   Defendants issued a subpoena duces tecum seeking production of Decedent's

21   psychological and medical records. Declaration of Deputy Attorney General Ashley

22   Reyes (Reyes Decl.), at ¶ 2, Exhibit A. Plaintiffs objected to the subpoena. Reyes

23   Decl., at ¶ 3, Exhibit B. Accordingly, Defendants respectfully request that the Court

24   issue an order enforcing the subpoena for Decedent's psychological and medical

25   records by either compelling the facilities to produce the requested records,

26   compelling Plaintiffs to sign an authorization for the facility authorizing release of

27   the records sought in the subpoena duces tecum, or compel Plaintiff to produce the

28   full, unredacted set of records from the Veteran's Administration in their

possession, and subject to the stipulated protective order.

### B.    Plaintiffs' Introductory Statement

This civil rights and state law tort action arises of the fatal officer-involved shooting of John Alaniz (hereinafter "Mr. Alaniz" or "Decedent"), on May 4, 2022, on the 105 westbound freeway in Paramount, California by Defendant CHP Officer, Ramon Silva (hereinafter, "Silva" or "Officer Silva"). Mr. Alaniz was 34 years-old at the time of his death. The primary issue in this case is whether Silva used excessive and unreasonable deadly force when he shot and killed Mr. Alaniz, who was unarmed at the time of the shooting and at all relevant times. At his deposition, Silva testified, that prior to his arrival on scene he had obtained some information through dispatch that led him to believe that he would be responding to assist with someone who may be experiencing a mental health crisis. There were no reports that the person had injured or attempted to injure any other person. Silva also testified in his deposition that he did not have any information regarding the identity of the person to whom he was responding and that he had no prior contacts with that person – later identified as Mr. Alaniz. Silva therefore had no information regarding any particular diagnoses, treatment history, or any other specific information regarding Mr. Alaniz's physical or mental health history.

When Silva arrived on scene on his patrol unit motorcycle along the shoulder of the 105 freeway, another CHP Officer, Officer Van Dragt ("Van Dragt"), was also present and was attempting to facilitate traffic away from Mr. Alaniz, who was on the shoulder of the freeway. Van Dragt testified in his deposition that upon contacting Mr. Alaniz, Mr. Alaniz had his hands in his sweatshirt pocket. Van Dragt ordered Mr. Alaniz to remove his hands from his pockets, and Mr. Alaniz complied. Van Dragt saw that Mr. Alaniz's hands were empty before Mr. Alaniz put hands back in his pockets. Mr. Alaniz approached Van Dragt with his hands out of his pockets and an object that Van Dragt understood was not a firearm in one of his hands. Because Van Dragt saw that the object was not a firearm, he holstered

his own firearm, and unholstered his taser instead. Van Dragt tactically repositioned to the other side of his patrol unit SUV, which put him between Mr. Alaniz and Silva. As Mr. Alaniz approached the officers, Silva deployed his firearm, shooting and killing Mr. Alaniz and striking some trucks, which were on the freeway behind Mr. Alaniz. The object that was in Mr. Alaniz's hands was a felt sunglasses case.

Plaintiffs are Mr. Alaniz's parents, Sandra Kirkman and Carlos Alaniz, who bring this suit individually and as successors-in-interest to Mr. Alaniz. Prior to his death, Mr. Alaniz was a veteran, and received health care, including mental health care, from the Veteran's Administration in Long Beach. Both Plaintiffs have sat for depositions and have responded to Defendants' propounded written discovery requests. By way of their overbroad and unlimited subpoena to the Veteran's Administration-Long Beach (hereinafter "VA"), Defendants seek to compel all mental health and medical records of Mr. Alaniz, without any time limit or other substantive limit. Plaintiffs respectfully request the court to deny Defendants' motion to compel, or in the alternative, limit Defendants subpoena to five years prior to Mr. Alaniz's death, and subject to the privileges outlined below.

**II.    MEET AND CONFER EFFORTS**

Defendants sent an email to opposing counsel requesting a signed authorization pursuant to the Health Insurance Portability and Accountability Act of 1996, Pub. L. 104-191 (HIPAA) from Plaintiffs on September 6, 2024. Reyes Decl., at ¶ 4. This email set forth the reasoning why the records are pertinent, namely the fact that Plaintiffs' have placed the decedent's mental health at issued based on their claims contained within the complaint. *Id*. Opposing counsel responded on September 9, 2024 indicating that they were not agreeable to providing a HIPAA authorization, and provided dates and times to meet and confer to discuss the issue further. *Id*. The parties met and conferred via telephone on September 13, 2024 wherein Plaintiffs' counsel offered to provide redacted versions of the records they have personally received from the Veteran's

Administration. *Id*. at ¶ 5. The parties met and conferred further via email on September 19-20, 2024, indicating that an impasse had been reached and an informal discovery conference was necessary. *Id*.

The parties attended an informal discovery conference with Magistrate Christensen on October 8, 2024 wherein the parties were ordered to continue to meet and confer further regarding these disputes. Doc. 30.

On October 11, 2024, the parties met and conferred via telephone further. Reyes Decl., at ¶ 6. The parties discussed the scope of the records, as well as the redactions of the records if Plaintiffs' counsel were to produce them. *Id*. Defense counsel requested that the scope be narrowed to eight years, since that was the timeframe to which Plaintiffs' claimed the Decedent began suffering from schizophrenia and bipolar disorder. *Id*. Plaintiffs' counsel suggested that the records be narrowed to five years. *Id.* Defense counsel also requested that Plaintiffs' counsel provide proof that the records produced by their office were the totality of the records from the Veteran's Administration. *Id*. Defense counsel further inquired as to the scope of the redactions and whether Plaintiffs still intended to redact third-party information that was covered by the protective order. *Id*. Plaintiffs' counsel indicated that she would need to check with the lead attorney and would get back to Defense Counsel. *Id*.

Defense counsel emailed opposing counsel on October 15, 2024, asking about the timeframe and scope of redactions and whether plaintiffs' position had changed. Plaintiffs' counsel proposed that the parties stipulate to amend the complaint so that the mention of Decedent's mental health was removed from the Complaint. *Id* at ¶7. Plaintiffs' counsel also proposed amending the prayer for relief to be less overbroad and more specific, and that with these changes, Plaintiffs would not have opened the door or waived the psychotherapist-patient privilege. *Id*. Defense counsel responded the same day indicating that Defendants were not agreeable to this proposal and would seek a motion to compel the records requested

1   in the subpoena. *Id*.

2   **III.  DISCOVERY AT ISSUE**

3   On July 2, 2024, Defendants issued a subpoena duces tecum on third party

4   Veteran's Administration located in Long Beach California. The subpoena duces

5   tecum sought the following records:

6   "1. All records pertaining to John Joseph Alaniz (DOB: 01/25/1988; SSN:

7   XXX-XX-XXXX) including but not limited to medical summaries, intake sheets,

8   intake notes, nurses notes, charts, chart notes, psychological records, counseling

9   records, prescription records, images, photographs, x-rays, CT scans, MRI's,

10  correspondence prescription scrips, laboratory reports and results, toxicology

11  reports and results and any other records related to the medical, psychological or

12  counseling treatment of John Joseph Alaniz (DOB: 01/25/1988; SSN: XXX-XX-

13  XXXX

14  2.  All DOCUMENTS evidencing the amounts or values of the medical

15  services provided to John Joseph Alaniz (DOB: 01/25/1988; SSN: XXX-XX-

16  XXXX) including but not limited to invoices, billings, payments applied to account

17  from any source including write-offs, adjustments, ARI Statements, write-downs,

18  and contractual allowances, written history of payments made by patient, insurance

19  companies, Medicare, Medi-Cal, write-offs and adjustments, monetary

20  disbursements, billed rates, paid rates. Correspondence, and all other documents

21  and writings that are in your possession regarding the billing records related to the

22  medical, psychological or counseling treatment and care of John Joseph Alaniz

23  (DOB: 01/25/1988; SSN XXX-XX-XXX)."

24  Defendants acknowledge that category number two is not relevant to any

25  claims and/or defenses, and therefore withdraw category two of the subpoena duces

26  tecum.

27  ///

28  ///

1    **IV.  PLAINTIFFS' OBJECTIONS**

2          On August 22, 2024, Plaintiffs served the following objections via USPS

3    mail to the foregoing subpoena duces tecum:

4          "Plaintiffs hereby object to the production of any protected
             information of Decedent, John Alaniz, by Veteran's Administration,
5            Long Beach Health Care, (VA Long Beach Health Care, 5901 E. 7th
             Street, Long Beach, CA 90822) including any and all medical records,
6            psychological records, notes, counseling records, billing, records,
             medical summaries, intake sheets, intake notes, nurses notes, charts,
7            chartnotes, psychological records, counseling records, prescription
             records, images, photographs, x-rays, CT scans, MRI's,
8            correspondence, prescription scrips, laboratory reports and results,
9            toxicology reports and results and any other records related to the
             medical, psychological or counseling treatment of Decedent John
10           Alaniz in response to Defendants' subpoenas dated July 31, 2024,
             served on the VA on July 1, 2024 and served on Plaintiffs' Counsel on
11           July 2, 2024. This objection is based on the following grounds:

12
13

14         "Plaintiffs object on the grounds that they do not waive any privileges
             and do not consent to the production of privileged or private
15           documents. Plaintiffs further object on the grounds that the subpoena
             was improperly served under FRCP Rule 45(a)(4), is overbroad on its
16           face, fails to seek documents that are reasonably likely to lead to the
             discovery of admissible evidence, and violates plaintiffs' rights to
17           privacy. Plaintiffs contend that disclosing any and all of John Alaniz's
18           records would be a violation of the Health Insurance Portability and
             Accountability Act (HIPAA), 42 U.S.C. § 299b-2, 45 C.F.R. §§
19           164.502(a), 164.508(a)(l), the California Confidentiality of Medical
20           Information Act, Cal. Civ. Code§ 56.10, his psychotherapist-patient
             privilege *Jaffee v. Redmond,* 518 U.S. 1, 15 (1996), Fed. Rule Evid.
21           Rule 501, the California Confidentiality of Medical Information Act,
22           Cal. Civ. Code § 56.10, and his California constitutional right to
             privacy concerning medical information under Cal. Const. art I, § 1."
23
24

25    **V.   PARTIES CONTENTIONS REGARDING DEFENDANTS' SUBPOENA**

26          **A.    Defendants Contentions**

27          Defendants issued the subpoena duces tecum to the Veteran's Administration

28    because: (1) the complaint specifically alleges that Decedent was suffering from a

mental health crisis at the time of the incident, See Complaint, at ¶¶18, 29, and 73 (c) and (i); (2) Plaintiffs' have waived the psychotherapist-patient privilege by putting Decedent's mental health at issue by filing this lawsuit and seeking survival and wrongful death damages; (3) Plaintiffs' testified during their depositions that Decedent suffered from and was diagnosed with schizophrenia and bi-polar disorder which may have affected his encounter with CHP Officers on the date of the incident; (4) Plaintiffs seek damages for Decedent's emotional distress, including loss of enjoyment of life, loss of life, and loss of earning capacity, See Complaint, at ¶44; and (5) Plaintiffs are claiming damages for interference with their familial relations for the alleged wrongful death of Decedent.

Defendants contend that the foregoing subpoena duces tecum seeking Decedent's psychological and mental health records are necessary to reasonably prepare a defense to Plaintiffs' claims in this action.

### 1. The Records Sought Are Relevant to the Claims and Defenses in This Action

Federal Rule of Civil Procedure 26 provides, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ." Fed. R. Civ. P. 26(b)(1). Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Civ. P. 401. Relevancy to a subject matter is interpreted "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). The Ninth Circuit instructs that "wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for truth." *Epstein v. MCA, Inc.*, 54 F.3d 1422, 1423 (9th Cir. 1995).

///

1    Recently, in *A.H. v. County of Los Angeles*, No. CV 22-03671-SB, 2023 WL

2    3035349 at *2 (C.D. Cal., Jan. 19, 2023), this Court addressed this same issue with

3    Plaintiffs' counsels' firm. There, the Defendants sought to compel compliance with

4    subpoenas issued on third parties for the decedent's medical records and argued that

5    the psychotherapist-patient privilege was waived, the subpoenas were directly

6    relevant to the plaintiffs' claims and damages, and any privacy concerns could be

7    satisfied by producing the records subject to the terms of the existing protecting

8    order. *Id*. Plaintiffs' counsel objected contending that the decedent's

9    psychotherapist-privilege and/or HIPAA protections had not been waived, the

10   information was not within the permissible scope of discovery, and the subpoenas

11   were vague, overbroad, and should be limited in scope and time. *Id*.

12   The Court agreed with Defendants that the Plaintiffs had waived the

13   psychotherapist-patient privilege when they put the decedent's mental health at

14   issue by filing the lawsuit and seeking both survival and wrongful death damages.

15   *Id*. The Court also found that Plaintiffs' put their relationship with the decedent at

16   issue by filing the claim for wrongful death and sought damages for their own

17   emotional pain and suffering. *Id* at *3; *see also I. R. v. City of Fresno*, Nos. 1:12–

18   CV–00558–AWI–GSA, 1:13–CV–00850 AWI GSA, 2014 WL 1419305 at *4

19   (E.D. Cal. April 11, 2014.) (holding that "[t]he extent to which decedent was

20   suffering from mental illness…at the time of the incident, may have affected his

21   ability to participate in familial relationships and/or provide financial support to his

22   family.") The court in *A.H.* further noted that the information sought by the

23   subpoenas was also relevant to any argument Defendants may assert that their use

24   of force was reasonable in response to the decedent's aggressive behavior. *Id*.

25   Finally, the court in *A.H.* found that the Plaintiffs put the decedent's mental health

26   at issue by seeking damages for his emotional distress, including, "pre-death

27   physical and mental pain and suffering, loss of life, and loss of enjoyment of life."

28   *Id* at *3.

Similarly, in *Nehad v. Browder*, No.: 15-CV-1386 WQH NLS, 2016 WL 1428069 (S.D. Cal., Apr. 11, 2016), the parents of an individual shot by San Diego Police Department officers filed a lawsuit for excessive force, interference with familial relationship, assault, battery, negligence, and wrongful death. *Id*. at *1. During discovery, the Plaintiffs sought a protective order to prohibit and/or limit the disclosure of the decedent's medical and mental health records. *Id*. Defendants argued they were entitled to the decedent's psychiatric and medical history because such records were relevant for the following reasons: (1) to determine the extent of how his schizophrenia, bipolar disorder, and PTSD affected his relationship with plaintiffs; and (2) to determine whether the decedent's mental state was impaired, and therefore, he acted irrationally and/or without proper judgment to corroborate the shooting officer's version of events. *Id*. The court held that the decedent's psychiatric and medical records were relevant because Plaintiffs "put their familial relationship with [d]ecedent at issue." *Id.* at *5. The court also found that the records contained information that may bear on Plaintiffs' damages because the "valuation of their relationship [with decedent] is not a one-way street." *Id*. Accordingly, the court ordered production of decedent's mental health records, holding that, "[d]efendants are entitled to have the discovery process be fair to both parties so that each can present an effective and complete case to the jury." *Id*.

Here, the Decedent's psychological and medical health records are relevant to the claims and defenses in this lawsuit for several reasons. First, and most importantly, as in *A.H.*, the Plaintiffs have placed Decedent's mental health at issue by, among other things, seeking damages for his emotional distress and mental suffering, including pre-death pain and suffering, loss of life, and loss of enjoyment of life. Complaint, at ¶ 47. Accordingly, this information bears on the Decedent's mental pain and suffering as well as the loss of his enjoyment of life, which is certainly relevant.

///

15

Second, based on the Plaintiffs' testimony, it is more likely than not that the Decedent's psychological and medical records will contain information concerning his mental health diagnoses, prescription medications, mental health treatment received, and could also reflect a history of suicidal ideation/attempts, treatment for suicide, reported self-harm, etc., all of which are directly relevant to Plaintiffs' wrongful death claims.

Third, these records may also contain information regarding whether Decedent exhibited any aggressive behavior during any of his previous mental health episodes. Plaintiffs testified that Decedent had "changed" after he was discharged from the Air Force in 2014 and was ultimately diagnosed with schizophrenia and bipolar disorder by the Veteran's Administration. Thus, any and all records from the time of his discharge in 2014 to the time of his death in May of 2022 are relevant. Further, one of Plaintiffs' theory of liability is that Officer Silva negligently used deadly force against the Decedent who was experiencing a mental health crisis/distress, and the failure to provide appropriate responses to the obvious mental health crisis calls resulted in the Decedent's death. Complaint, at ¶ 73 (c) and (i). Given this theory of liability, information about the Decedent's mental health care and whether he exhibited aggressive tendencies during any prior mental health episodes are directly relevant to this litigation.

Fourth, Decedent's records will have information about whether his mental illness impaired his ability to gain employment and/or spend time with his family. Similar to the decedent in *Nehad*, Decedent's mental health records are directly relevant to Plaintiffs' alleged damages, including their Fourteenth Amendment claim and loss of familial relationship. Not only does this information bear on the amount of financial support Decedent would be able to provide to his family, but also the nature and quality of his relationship with them. See *Nehad*, 2016 WL 1428069 at *5.

///

Finally, these records are pertinent and may explain the Decedent's behavior on the date of the incident. As in *I.R.,* whether Decedent was experiencing a mental health crisis may have affected how he responded to CHP officers on the date of the incident. *I. R.*, 2014 WL 1419305 at *4(holding that the psychotherapist-patient privilege was waived in part because the decedent's mental illness may have affected the altercation he had with the police).

Multiple witnesses reported the Decedent jumping in and out of traffic on the date of the incident, and he was reported as possibly being suicidal. There is also video of the decedent purposefully jumping in front of a semi-truck, getting hit, then immediately placing his head underneath the tire of a second semi-truck. This behavior is consistent with Plaintiffs' testimony that Defendant suffered from Schizophrenia and Bipolar Disorder and may likely have affected his encounter with CHP officers. These records are therefore relevant and should be produced.

### 2.    Plaintiffs' Claim that 42 C.F.R. §2.2 Prevents Disclosure of Drug and/or Alcohol Treatment Records Lacks Merit

During the Informal Discovery Conference, Plaintiffs claimed that the records they have in their possession from the Veteran's Administration include drug and/or alcohol treatment that the Decedent sought and are privileged and cannot be released pursuant to 42 C.F.R. §2.2. 42 C.F.R. § 2.64 provides procedures for disclosure of such records, and applies to "[r]ecords of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity relating to substance use disorder education, prevention, training, treatment, rehabilitation, or research, which is conducted, regulated, or directly or indirectly assisted by any department or agency of the United States…"

///

///

///

Defendants contend that any and all records related to Decedent's alcohol and/or drug treatment are relevant to Plaintiffs' claims and damages, and at the very least, should be provided for the Court to conduct an in-camera review to determine what records specific to any drug and/or alcohol treatment should be released.

### 3. Any Privacy Concerns Can Be Satisfied by Producing the Records Subject to the Current Protective Order

As discussed during the informal discovery conference, Defense counsel is agreeable to having the records produced subject to the existing protective order to satisfy any privacy concerns that the Plaintiffs have. Additionally, HIPAA routinely permits disclosure of medical and/or mental health records pursuant to a qualified protective order that prohibits the use or disclosure of "the protected health information for any purpose other than the litigation…" *Gonzalez*, No. 1:07–cv–00949 OWW GSA, 2009 WL 179779 at *3 (E.D. Cal. Jan. 26, 2009); see, e.g., *Camacho v. McCarthy*, Case No. EDCV 15-2043-JGB, 2020 WL 2510544 (C.D. Cal., Mar. 30, 2020) (overruling plaintiff's objection to defendant's subpoenas to her mental health care providers because such records are relevant to her claims and "any privacy concerns can be appropriately mitigated by a protective order").

### B. Plaintiffs' Contentions

Mr. Alaniz's mental health records and medical records are not discoverable because they are outside the scope of Federal Rules of Civil Procedure, Rule 26(b)(1). They are not relevant to either parties' claims or defenses regarding liability and damages. The records are also privileged under Mr. Alaniz's HIPAA protections, his psychotherapist-patient privilege, and to the extent that any the records contain information regarding whether Mr. Alaniz's sought or received substance use treatment at the Veteran's Administration in Long Beach under 42 CFR Section 2.11 et seq.

///

///

**1.    The Records Sought Are Not Relevant to Either Parties'
Claims or Defenses.**

**a.    _Liability_**

The exchange of information during the discovery process, under Federal
Rule of Civil Procedure, Rule 26 is broad, but it is not without limitations. Rule
26(b)(1) states in relevant part (emphasis added):

> Parties may obtain discovery regarding any ***nonprivileged matter*** that
> is relevant to any party's claim or defense and ***proportional to the
> needs of the case, considering the importance of the issues at stake
> in the action,*** the amount in controversy, the parties' relative access to
> relevant information, the parties' resources, the importance of the
> discovery in resolving the issues, and ***whether the burden or expense
> of the proposed discovery outweighs its likely benefit***.

The information Defendants seek by way of compelling the production of
John Alaniz's mental health and medical records from the VA is tangential to the
primary issue in this case: whether Defendant Ramon Silva used of deadly force
against decedent, John Alaniz was reasonable. To the extent that Defendants argue
that the records are relevant to Plaintiffs' claims of excessive force and negligence,
such arguments misconstrue the reasonableness standard outlined in _Graham v.
Connor._ 490 U.S. 386, 396 (1989). Indeed, in excessive use of force cases, it is well
established that this inquiry is limited to the facts and circumstances known to the
officers at the time that they fired. _Id._ ("The reasonableness of a particular use of
force must be judged from the perspective of a reasonable officer on the scene,
rather than with the 20/20 vision of hindsight."); See also, _Tennessee v. Garner_,
471 U.S. 1, 26 (1985).

In _Glenn v. Washington Cnty._, 673 F.3d 864, 873 (9th Cir. 2011), the Ninth
Circuit reiterated that information _unknown_ to an officer at the time of his use of
force – or information _acquired after the incident_ by investigators or during
discovery – cannot be considered in the reasonableness analysis.  In _Glenn_, officers
used a beanbag gun to shoot a man with a knife who was threatening suicide.

Unknown to the shooting officer at the time of the incident, a witness told a 911 operator that the suspect "was threatening to kill everybody" and might "run at the cops with a knife." *Id.* Rejecting the District Court's "suggestion that, …these statements provide uncontroverted evidence demonstrat[ing] that the officers' safety concerns were not at odds with information provided to law enforcement," the Ninth Circuit reiterated, "[w]e cannot consider evidence of which the officers were unaware…" *Glenn v. Washington Cnty.*, 673 F.3d 864, 873, n.8 (9th Cir. 2011) (citing *Graham*, 490 U.S. at 396). Accordingly, in the Ninth Circuit, juries are instructed that they "must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene" at the time of the use of force "and not with the 20/20 vision of hindsight." *Id.*; Ninth Circuit Model jury Instruction 9.25 (June 2024 edition); *Jackson v. City of Bremerton,* 268 F.3d 646, 651 (9th Cir. 2001).

Therefore, information that Defendant Silva did *not* have at the time he used lethal force against Mr. Alaniz is not relevant to the use of force analysis, nor Plaintiffs' claims for excessive use of force or negligence. Silva did not have any specific information regarding Decedent's mental health diagnoses, let alone Decedent's mental health and medical records. Because these records are after-acquired information, not within the officer's knowledge at the time of the shooting, they cannot be considered in the reasonableness analysis of his use of deadly force, as such records would fall under "the vision of 20/20 hindsight" that the Ninth Circuit prohibits. *Jackson*, 268 F.3d at 651. They are therefore not relevant.

For the same reasons, Mr. Alaniz's state of mind at the time of the shooting is also not a proper inquiry and is not relevant under the Fourth Amendment use of force analysis. See *Valtierra v. City of Los Angeles*, 99 F. Supp. 3d 1190, 1193 (C.D. Cal. 2015). In *Valtierra*, Defendants sought to introduce evidence of the Decedent's criminal history, and specifically that the decedent was subject to a

Deferred Entry of Judgment, and therefore had motivation to avoid detention and arrest. *Id.* However, the court held that such information was not relevant to any of plaintiffs' claims, which included excessive force and negligence, on the basis that that information was not known to the shooting officer at the time of the incident. *Id*. Just as in *Valtierra*, Defendant Silva had no information regarding Mr. Alaniz's state of mind at the time of Silva's use of deadly force, and such information therefore is not relevant to the inquiry.

In several paragraphs of their Complaint, Plaintiffs allege that Decedent was likely experiencing a mental health crisis, and was exhibiting "obvious signs of a mental health crisis." Because Silva had some limited information that Mr. Alaniz may have been experiencing a mental health crisis (including the information from dispatch described in Defendants Contentions, *supra*), he had an obligation to respond using appropriate intervention strategies, consistent with Police Officer Standards and his own training. The information Defendant Silva had at the time of his use of force is relevant to this inquiry of whether Silva's use of deadly force was reasonable, consistent with his training and standardized law enforcement training and policies, as well as to the pre-shooting tactics Defendant Silva used. *See Hayes v. Cnty. of San Diego,* 736 F.3d 1223, 1235-1236 (9th Cir. 2013) (finding that an officer's duty to act reasonably when using deadly force extends to their pre-shooting conduct).

Furthermore, to the extent that Defendants argue that the records are relevant to liability because they may indicate whether Mr. Alaniz exhibited any past "aggressive behavior," such argument unveils the fishing expedition inherent in this overbroad subpoena. Whether Mr. Alaniz exhibited any prior "aggressive behavior," any evidence of which is totally unsupported in the record, has no bearing on whether Defendant Silva's use of deadly force at the time of the incident was reasonable. Again, Silva had no prior contacts with Mr. Alaniz and had no knowledge of any alleged past "aggressive behavior," and constitutes improper

character evidence. This subpoena is therefore outside the scope of Rule 26(b)(1) in
that is not reasonably calculated to lead to admissible evidence.

**b.    _Damages_**

Additionally, Mr. Alaniz's mental health records are also not relevant to
Plaintiff's claims for damages. Plaintiffs are claiming wrongful death and survival
damages (including Mr. Alaniz's pre-death pain and suffering). Defendants argue
that the records are relevant to Plaintiffs' claims for damages because the
information contained in the records could be relevant to the parents' claimed
damages relationship with their son. This argument fails. The plaintiffs in this case
have already sat for deposition in this matter and testified as to the quality of their
relationship with their son, Mr. Alaniz, including in the context of his mental health
diagnoses. Plaintiffs do not intend to rely on Mr. Alaniz's mental health or medical
records to establish their damages. Additionally, as to their own emotional distress
as a result of their son's death, Plaintiffs have already stipulated with Defendants
that they are only seeking damages for the "garden variety," emotional distress that
would naturally result for anyone who loses their son.

As to Mr. Alaniz's survival damages, and in particular, those for pre-death
pain and suffering, Plaintiffs are claiming damages for Mr. Alaniz's pre-death pain
and suffering from the injuries he sustained as a result of _the uses of deadly force
against him_, not pre-death pain and suffering from prior to the date of the incident.
Mr. Alaniz's mental health and medical records from before the incident are also
not relevant to his pre-death pain and suffering resulting from the use of deadly
force against him.

**2.    The Records Sought Are Privileged Under John Alaniz's
HIPAA Protections and his Psychotherapist-Patient
Privilege**

Even if this Court finds that the records sought are relevant to the parties'
claims and defenses, Plaintiffs contend that they are privileged, under the
Decedent's psychotherapist-patient privilege and his HIPAA protections. "The test

of whether [defendant] should obtain access to [plaintiffs'] medical records is ... whether the privilege has been waived by putting the privileged information 'at issue.' " *E.E.O.C. v. Serramonte*, 237 F.R.D. 220, 224 (N.D. Cal. 2006) (citing *Fritsch v. City of Chula Vista*, 187 F.R.D. 614, 625-26 (S.D. Cal. 1999)).

Plaintiffs understand that this Court's tentative finding at the Informal Discovery Conference held on October 8, 2024 was that Plaintiffs had waived the psychotherapist-patient privilege when they filed a law suit including allegations that the Decedent was experiencing a mental health crisis at the time of the shooting incident that is the subject matter of this case. To address this Court's concern in that regard, Plaintiffs offered to stipulate to amend the Complaint to remove the current allegations referencing Decedent's potential mental health crisis on the date of the incident. Defendants were not agreeable.

In *Jaffee,* the Supreme Court recognized that litigants possess a psychotherapist-patient privilege, holding that "confidential communications between a licensed psychotherapist and her [or his] patients in the course of diagnosis or treatment are protected from compelled disclosure under Ruel 501 of the Federal Rules of Evidence. *Jaffee v. Redmond,* 518 U.S. 1, 15, (1996); See also, *Oleszko v. State Comp. Ins. Fund*, 243 F.3d 1154, 1156 (9th Cir. 2001). In so holding, the Court further noted that:

> The psychotherapist-patient privilege serves the public interest by facilitating the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem. The mental health of our citizenry, no less than its physical health, is a public good of transcendent importance.
> *Jaffee*, at518 U.S. at 11.

Since that decision, courts across circuits have evaluated whether the psychotherapist-patient privilege is waived across a spectrum of applications, and no consensus has yet been reached. *See Fitzgerald v. Cassil,* 216 F.R.D. 632, 636 (N.D. Cal. 2003) (collecting cases). Under the broad approach, an allegation that

the plaintiff has experienced emotional distress constitutes a waiver. *Sarko v. Penn-Del Directory Co.*, 170 F.R.D. 127 (E.D. Penn. 1997)*. However, courts in the Ninth Circuit have rejected this approach, finding that it expressly violates the holding and purpose of *Jaffee. Fitzgerald,* 216 F.R.D. at 636. Under the "middle ground" approach, courts adopt the same standard as that which applies in a Rule 35 examination, holding that even plaintiffs who alleged emotional distress, but not "a separate tort for the distress, any specific psychiatric injury or disorder, or unusually severe distress" did not constitute a waiver of the psychotherapist patient privilege. *Id.*, quoting *Jackson v. Chubb Corp.*, 193 F.R.D. 216 (D.N.J. 2000); see also *Ruhlmann v. Ulster County Department of Social Services*, 194 F.R.D. 445, 449 (N.D.N.Y. 2000) (finding waiver only when a patient alleges more than "garden variety" emotional distress, such that "significant emotional harm is alleged or the mental condition is at the heart of the litigation.").

Courts have also adopted a narrower approach to analyzing whether the psychotherapist patient privilege is waived. Under the narrow approach, courts have held that there must be "an affirmative reliance on the psychotherapist-patient communications before the privilege will be deemed waived." *Fitzgerald,* 216 F.R.D. at 636, citing *Vanderbilt v. Town of Chilmark*, 174 F.R.D. 225 (D.Mass. 1997) ("privilege is waived if the communication between a psychotherapist and patient is, itself, put at issue by the patient"); *Hucko v. City of Oak Forest*, 185 F.R.D. 526 (N.D.Ill.1999) "[T]he very nature of a privilege is that it prevents disclosure of information that may be relevant in the case, in order to serve interests that are of over-arching importance.").

By way of their argument, Defendants ask the Court to apply the broad approach and find that Plaintiffs have waived the psychotherapist-patient privilege. Other courts in the Central District have rejected the "broad" approach as inconsistent with *Jaffee.* Instead, opted to apply either the middle or narrow approaches, reasoning that the broad approach "eviscerates" the psychotherapist-

1    patient privilege articulated in *Jaffee*. See *M.S. v. City of Fontana*, No.

2    EDCV162498JGBSPX, 2018 WL 6075323 at *3 (C.D. Cal. July 12, 2018) (("the

3    broad approach may find waiver even if the psychotherapy treatment has little

4    bearing on the claims, a result that would largely eviscerate the privilege."), see

5    also *Ryan v. Putnam*, No. CV1705752CASRAOX, 2021 WL 9721273 at * 5 (C.D.

6    Cal. July 26, 2021) (rejecting application of the broad approach), and *Boyd v. City*

7    *and County of San Francisco*. No. C-04-5459 MMC(JCS), 2006 WL 1390423

8    (N.D. Cal. May 18, 2006) (applying the narrow approach in wrongful death action

9    where Decedent's mental state in issue, finding that it "best embodies the goals set

10   forth in *Jaffee*."). The records Defendants seek by way of this subpoena are

11   squarely within the confines of records contemplated in *Jaffee*, and are therefore

12   subject to Decedent's psychotherapist-patient privilege. Here, under both the

13   "middle ground," and narrow approaches, Plaintiffs have not waived Decedent's

14   psychotherapist-patient privilege. Plaintiffs request that the Court apply the narrow

15   approach to evaluating waiver, so as to protect the "primacy of the privacy interests

16   inherent in the privilege." *Fitzgerald*, 216 F.R.D. at 638.

17           This case is analogous to *Jones v. Cnty. of Del Norte, California*, No. C08-

18   3222 CW (BZ), 2010 WL 11714135 (N.D. Cal. Apr. 1, 2010). In that case, the

19   plaintiffs had potentially put the decedent's mental status at issue by virtue of filing

20   their lawsuit and including claims for wrongful death and survival damages.

21   However, the Court rejected the broad approach, finding it inconsistent with *Jaffee,*

22   and found that the privilege was not waived. *Id.* at *1. Furthermore, the Court

23   reasoned that a question of life expectancy by way of claiming wrongful death

24   damages is an insufficient basis to waive a decedent's psychotherapist patient

25   privilege.

26   ///

27   ///

28   ///

Similarly, in *Valentine v. First Advantage Saferent Inc*., the court found that under either the narrow or middle approach to waiver, the plaintiff had not waived his psychotherapist-patient privilege, despite asserting a claim for which he could recover damages for emotional distress and humiliation. No. EDCV 08-142-VAP(OPX), 2009 WL 3841967 (C.D. Cal. Sept. 18, 2009). Because the plaintiff had not "pled a cause of action for intentional or negligent infliction of emotional distress, ha[d] not alleged a specific psychiatric injury or disorder or unusually severe emotional distress, and has agreed that he will not testify that he sought or obtained psychological treatment and will not call [his psychologist] as a witness," the plaintiff had not waived his psychotherapist patient privilege under either the middle ground or narrow approach.

Just as in *Valentine,* Plaintiffs have not alleged any specific infliction of emotional distress claims on Mr. Alaniz's behalf, have not alleged any specific psychiatric injury or disorder or unusually severe emotional distress, and have not relied on Mr. Alaniz's treatment with his psychotherapist(s) or psychologist(s) in pursuing their claims and damages. Plaintiffs contend that on these bases, the privilege has not been waived and the documents should not be released.

**3.    To the Extent That the Records Contain Information Regarding Any Drug or Alcohol Treatment, Such Records and Information are Confidential.**

In 2020, a final rule revising the federal regulations governing the Confidentiality of Substance Use Disorder Patient Records, Title 42 CFR Part 2 (Part 2), was released by the Substance Abuse and Mental Health Services Administration and U.S. Department of Health and Human Services. Alcohol and drug abuse patient treatment records are confidential and may only be disclosed in limited circumstances. 42 C.F.R. §§ 2.1(a), 2.2(a) (2008). Limiting disclosure is meant to ensure that a person who seeks treatment for addiction is not made more vulnerable than an addict who does not seek treatment. § 2.3(b)(2). In the absence of patient consent, a party seeking access to such records must obtain a court order

upon a showing of good cause. Courts assess good cause by "weigh[ing] the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services." §§ 2.1(b)(2)(C), 2.2(b)(2)(C). Protection against disclosure continues even after the patient's death. §§ 2.1(d), 2.15(b)(2).

The regulation pertains to any reference to an individual's substance use disorder or condition that caused that substance use disorder; and the scope of the prohibition of disclosures extends to any information identifying a patient as being or having been diagnosed with a substance use disorder or having been referred for treatment. *Id.* at §§2.11, 2.12. In other words, it would be improper even in the instant stipulation to even identify if any party or witness to this action received any substance use treatment. "[I]t is clear that the privilege provided by 290dd is a strong one and is not to be lightly set aside." *State v. Ctr. For Drug Free Living, Inc.*, 842 So. 2d 177, 181 (Fla. Dist. Ct. App. 2003). The additional protections under 42 CFR Part 2 for protection of disclosure of patient's confidential communications have been literally interpreted—thus, "[a] court cannot order disclosure of a patient's confidential communications merely because the patient has sued someone or has plead matters that seem related to the subject of the confidential communications." *Jane H. v. Rothe*, 488 N.W.2d 879, 884 (N.D. 1992) (pleadings that raise an emotional/mental health question is an inadequate basis for disclosure).

If any of the records sought from the VA contain information regarding whether Mr. Alaniz sought, received, or otherwise obtained substance use treatment at the Veteran's Administration, it should not be produced, given the privileges outlined above. In weighing the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services, the balance clearly is in favor of non-disclosure. The public has no interest in whether Mr. Alaniz engaged in any substance use treatment at the Veteran's

Administration. To the contrary, it in the public's interest *not* to disclose such records or information, given the importance of facilitating substance use disorder treatment among the general public. Disclosure undermines this policy. Mr. Alaniz and Plaintiffs would suffer injury if records disclosing whether Mr. Alaniz sought or received substance use treatment, as it would be disclosing confidential information.

### 4. A Protective Order is Necessary, but Not Sufficient to Protect Mr. Alaniz's Privileged Information.

Should this Court find that the records sought shall be produced, Plaintiffs request that the records be produced pursuant to this Court's Protective Order in place in this case. However, even documents produced pursuant to a protective order may contain redactions for information if that information is privileged. Those privileges must be identified and supported in a privilege log. Fed. R. Civ. Pro. 26 (b)(5). Indeed, Defendants have produced several documents pursuant to the protective order, with blocks of text redacted, with a corresponding privilege log.

## VI. CONCLUSION

### A. Defendants' Conclusion

Based on the foregoing, Defendants respectfully request that the Court issue an order either: (1) compelling the facilities to produce the requested records; (2) compelling Plaintiffs to sign an authorization for release of the records sought in the subpoena; (3) or compelling Plaintiffs' counsel to produce complete, unredacted copies of the records sought in the subpoena duces tecum subject to the stipulated protective order.

### B. Plaintiffs' Conclusion

For the foregoing reasons, Plaintiffs request the Court to decline to issue an order compelling the Veteran's Administration to produce the requested records; compelling Plaintiffs to sign an authorization to release the records; or compel

1    Plaintiff's counsel to produce the records absent any redactions. If this Court is

2    inclined to order disclosure of any of Mr. Alaniz's medical and psychological

3    records, then Plaintiffs respectfully request that the Court limit the scope of the

4    subpoena to records from May 2017, or five years prior to the incident, limit to

5    decedent's psychological and medical records only (not include any billing

6    records); and that the records be produced to Plaintiffs' counsel to make redactions

7    based on Decedent's privileges, as claimed above.

8    Dated: October 22, 2024                    Respectfully submitted,

9                                               ROB BONTA
                                               Attorney General of California
10                                              NORMAN D. MORRISON
                                               Supervising Deputy Attorney General
11

12                                              */s/ Ashley Reyes*
13                                              ASHLEY REYES
                                               Deputy Attorney General
14                                              *Attorneys for Defendants, State of*
                                               *California acting by and through the*
15                                              *California Highway Patrol, and*
                                               *Officer Ramon Silva*
16
     Dated: October 22, 2024                    Respectfully submitted,
17
                                               LAW OFFICES OF DALE K.
18                                              GALIPO

19

20                                              *"/s/ Shannon Leap (as authorized on*
                                               *10/22/2024)."*
21                                              DALE K. GALIPO
                                               SHANNON LEAP
22                                              *Attorneys for Plaintiffs*

23   LA2023603259
     95599075.docx
24

25

26

27

28

29

## CERTIFICATE OF SERVICE

Case Name:    **Sandra Kirkman, et al. v. State of California, et al.**    No.    **2:23-cv-07532-DMG-SSC**

I hereby certify that on <u>October 22, 2024</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**JOINT STIPULATION REGARDING MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS FOR DECEDENT'S MEDICAL AND/OR MENTAL HEALTH RECORDS**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>October 22, 2024</u>, at Fresno, California.

.

| Carrie Vue | */s/ Carrie Vue* |
|:---:|:---:|
| Declarant | Signature |

LA2023603259
95599814.docx