**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (Bar No. 144074)
dalekgalipo@yahoo.com
Shannon J. Leap (Bar No. 339574)
sleap@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California, 91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT FOR THE

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA KIRKMAN, CARLOS ALANIZ, individually and successors-in-interest to JOHN ALANIZ, deceased,<br><br>Plaintiff,<br><br>vs.<br><br>STATE OF CALIFORNIA, RAMON SILVA, and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 2:23-cv-07532-DMG-SSC<br><br>Assigned to:<br>Hon. Dolly M. Gee<br>Hon. Stephanie S. Christensen<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' EX PARTE APPLICATION FOR MODIFICATION OF SCHEDULING ORDER AND TRIAL CONTINUANCE** |

## MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' EX PARTE APPLICATION

## I.    INTRODUCTION

This Court should deny Defendants' instant application for modification of the scheduling order and trial continuance for four reasons.  First this Court's schedule and management of its docket should not be determined by the DOJ's investigation.  Second, Plaintiffs' counsel's trial calendar is full.  Third, Defendants misuse the ex parte application procedure because they cannot show that this is an emergency not of their own making, that this could not have previously been brought as a regularly noticed motion. Fourth, Plaintiffs have been waiting over three years for their day in court, and it is not in the interest of justice to further delay Plaintiffs' trial.  The parties have sufficient evidence to proceed to trial, including because the incident was captured on video, and it would not be in the interest of judicial economy to prolong discovery and incur additional time and discovery expenses.

The brief facts of this incident are as follows. This civil rights case arises out of the shooting of the unarmed John Alaniz ("Decedent") by California Highway Patrol Officer, Ramon Silva ("Silva") on May 4, 2022, at approximately 11:00 a.m. near the Garvey exit on the West 105 Interstate Highway in Paramount, California. On that date, Officer Silva and another responding officer, Johnathan Van Dragt ("Officer Van Dragt"), responded to a call on the interstate 105 freeway, regarding a pedestrian on the freeway, who was reportedly running in front of vehicles on the freeway, and may have been suicidal. Officer Van Dragt arrived on scene first and located Decedent on the shoulder of the freeway. Officer Van Dragt attempted to initiate some traffic control on the freeway in order to conduct a welfare check on Decedent, because dispatch communicated over the radio that he had been struck by a semi-truck on the freeway. Officer Van Dragt parked his patrol unit on a 45-degree angle on the farthest right lane on the highway. Defendant Silva drove his

motorcycle patrol unit eastbound on the shoulder of the westbound 105 freeway and arrived at the scene where Van Dragt had parked his patrol unit. Officer Van Dragt was on the east side of his unit, locating Decedent.

Decedent walked west along the shoulder of the freeway, towards Van Dragt and Silva, and then ran towards Van Dragt, who tactically repositioned to the rear driver's side of his patrol unit. Initially, Van Dragt unholstered and drew his firearm at Decedent. However, when Van Dragt noticed that Decedent had an object in his hands, and recognized that the object was not a firearm, Van Dragt holstered his firearm and withdrew his taser instead. Silva, conversely, drew his firearm, and pointed it at Decedent as Decedent rounded the rear of Van Dragt's patrol unit. As Decedent came around the patrol unit, and as Van Dragt tased Decedent, Silva deployed his firearm and shot him multiple times. Decedent was transported to St. Francis Hospital in Paramount, California and died as a result of the gunshot wounds.

Plaintiffs are Decedent's parents. Plaintiffs contend that Defendant Silva used excessive and unreasonable force and was negligent in shooting Decedent. Plaintiffs bring federal claims pursuant to 42 U.S.C. § 1983 and related state law claims against Defendants State of California and Officer Silva for the use of excessive deadly force against Decedent and seek survival and wrongful death damages under state and federal law.

Defendants have now filed an *Ex Parte* application seeking an order to modify the Scheduling Order by at least six months. Plaintiffs oppose Defendants' *Ex Parte* application and respectfully request that this Court deny Defendants' *Ex Parte* application in its entirety for the reasons that follow.

## II.    **RELEVANT PROCEDURAL HISTORY**

On July 28, 2023, Plaintiffs filed their lawsuit arising out of this incident, naming the State of California, Ramon Silva, and DOES 1-10 as defendants. (Dkt.

No. 1-1). On September 11, 2023, Defendants filed their notice of removal to federal court. (Dkt. No. 1). On December 4, 2023, Defendants moved to stay discovery directed at Defendant Ramon Silva for six months because the shooting incident giving rise to this lawsuit was also being investigated by the California Department of Justice ("DOJ"), pursuant to AB 1506. Under AB 1506, the DOJ must investigate all officer involved shootings of unarmed civilians. Plaintiffs opposed Defendants' motion to stay, in part on the basis that this Court's schedule and management of its docket should not be determined by the DOJ's investigation. (Dkt. No. 21). This Court denied Defendants' motion to stay discovery in part because judicial efficiency and the Court's case management weighed in favor of proceeding forward with the case, and against a stay of the case. (Dkt. No. 24 at 3). This Court also found that Plaintiffs' interest in proceeding expeditiously, as well as the public's interest in allowing the proceedings to continue forward weighed against a stay of the case. *Id.*

The DOJ concluded its investigation and released its report and findings in July 2024. On July 31, 2024, Plaintiffs served a subpoena on the DOJ, requesting the entire investigative file. The DOJ produced the documents to Plaintiffs on September 12, 2024. As part of the production of documents, the DOJ Produced interviews of twenty-three individuals on scene. Of the twenty-three interviews, only five witnesses saw part of the shooting incident; they were drivers on the freeway at the time of the shooting. Nearly all of these interviews took place on the date of the incident, when the witnesses' memories were presumably most fresh. Defendants have not proffered any evidence to this Court that they have attempted to contact these witnesses, whether the contact information for these witnesses is current or available, nor have Defendants provided any information as to whether the witnesses may be available for a deposition.

Extending the Fact Discovery cutoff and the trial date by at least six months, without any indication that these witnesses would even be available for depositions is prejudicial to Plaintiffs, who already will be waiting nearly three years after their son's death to have their day in court, especially when the incident was caught on video and the witness statements are available to both parties. It is also a poor use of judicial time and resources, when the parties already have a trial date and have been working to complete discovery deadlines. Therefore, by way of their ex-parte application, Defendants again request another delay in the litigation of Plaintiffs' claims due to the DOJ's investigation.

Additionally, on November 12, 2024, the Parties will appear for a hearing before Magistrate Judge Stephanie Christiansen on Defendants' Motion to Compel Decedent's mental health and medical records from the Veteran's Administration. Defendants based their request to modify the scheduling order on their speculation that they will seek additional discovery should Judge Christiansen grant their motion to compel. As a threshold matter, this request is unripe, as Judge Christiansen has not yet ruled on Defendants' motion. Furthermore, in the parties' Informal Discovery Conference on the issue, Judge Christiansen specifically set a briefing schedule for the motion to compel that would comply with the current fact discovery cutoff set in this Court's scheduling order. Plaintiffs further contend that the information contained in the Veterans Administration records is privileged, and inadmissible for trial on several grounds, including that it was information unknown to Defendant Silva at the time of his use of force, and more prejudicial than probative. It would therefore be subject to a motion *in limine*, and this Court should not extend the entire case schedule, including the trial, for the continued investigation of records that have not been ordered to be produced and would likely not be admissible at trial. Defendants should not be permitted to delay the entire case on the basis that they anticipate propounding additional unnecessary discovery.

### III.  <u>LEGAL STANDARD</u>

A proper ex parte motion contains two distinct parts: "[t]he first part should address only why the regular noticed motion procedures must be bypassed [and t]he second part consists of papers identical to those that would be filed to initiate a regular noticed motion." *Mission Power Eng'g Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995). The granting of *ex parte* relief requires an evidentiary showing of good cause that: (1) "the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures"; and (2) "the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Mission Power*, 883 F. Supp. at 492; *see, e.g.*, *Azam v. Brown*, 714 F. App'x 663, 665 (9th Cir. 2017) (recognizing *Mission Power* as setting forth standard for *ex parte* relief); *Erichsen v. Cnty. of Orange*, 677 F. App'x 379, 380 (9th Cir. 2017) (mem.) (noting that appellants failed to meet threshold requirement for *ex parte* relief by failing to establish that they were "without fault in creating the crisis that requires ex parte relief" (quoting *Mission Power*, 883 F. Supp. at 492)).

Under Rule 16, a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). A party seeking to modify the schedule must show good cause and diligence in meeting Federal Rule of Civil Procedure 16's requirements. *See* Fed. R. Civ. P. 16 advisory committee notes (1983 amendment); *Johnson v. Mammoth Recreations*, 975 F.2d 604, 609 (9th Cir. 1992) (Rule 16(b)'s "good cause" standard focuses on the diligence of the party seeking modification of the scheduling order). "A party demonstrates good cause for the modification of a scheduling order by showing that, even with the exercise of due diligence, he or she was unable to meet the timetable set forth in the order. *Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*, 218 F.R.D. 667, 671 (C.D. Cal. 2003) (citing *Zivkovic v. Southern California Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002)); *Johnson*, 975 F.2d at 609. "Moreover, carelessness is not compatible

with a finding of diligence and offers no reason for a grant of relief." *Johnson*, 875 F.2d at 609. "[T]he existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion" to modify a scheduling order. *Id.* However, "[i]f the party seeking the modification 'was not diligent, the inquiry should end' and the motion to modify should not be granted." *Zivkovic,* 302 F.3d at 1087 (citation omitted); *see also Johnson,* 975 F.2d at 609.

## IV.    <u>LEAD TRIAL COUNSEL DALE K. GALIPO IS UNAVAILABLE FOR TRIAL IN OCTOBER 2025.</u>

Defendants request this Court to continue the current trial date six months, which would be October 2025. Plaintiffs' lead trial counsel, Mr. Galipo already has several trials scheduled for October 2025 and would not be available for a trial in this case at that time. Currently, Mr. Galipo has the following trials scheduled for October 7, 2025; October 20, 2025; and October 28, 2025. Mr. Galipo also has a full trial schedule for the intermittent months between April and October, 2025. It is not in the interests of justice to delay trial an additional six months, when lead trial counsel is not available at that time, and when Plaintiffs will have already waited three years from the death of their son to have their day in court.

## V.    <u>DEFENDANTS WILL NOT SUFFER ANY PREJUDICE IF THEIR EX PARTE APPLICATION IS DENIED</u>

Defendants will not suffer any prejudice from a denial of their request to modify the Scheduling Order. Defendants have deposed both Plaintiffs, as well as the Decedent's grandparents (who are not parties to this action or witnesses to the incident). Plaintiffs have also deposed Defendant Silva, as well as Officer Van Dragt, who was a percipient witness to the shooting and had a similar position and perspective to Defendant Silva but deployed his taser instead of his firearm at Decedent because he realized the object in Decedent's hand was not a firearm. Prior to the DOJ's production responsive to Plaintiffs' subpoena, Defendants were in

custody of, and produced in discovery including: audio recordings of the 911 calls
and dispatch channels, Defendant Silva's body worn video camera footage, dashcam
footage from the semi-truck that Decedent jumped in front of prior to the shooting,
volumes of scene photos, Defendant Silva's and Officer Van Dragt's post-incident
interview transcription, crime scene logs, and other materials from the investigative
file. Plaintiffs should not now be punished by an extensive delay to have their day in
court, due to the external DOJ investigation, especially when there is ample
evidence with which the parties can proceed to trial.

Moreover, as stated, this incident was captured on video, by Defendant
Silva's body-worn camera. Decedent was unarmed at the time of the shooting.
Defendants contend that the continued investigation and proposed depositions of
these witnesses is warranted because some of these witnesses saw Decedent's
actions prior to and at the time of the shooting (Def. Application at 2). But the
specific details of Decedent's actions that precipitated the law enforcement
encounter are irrelevant to evaluating Plaintiffs' claims because Defendant Officer
Silva did not have that information at the time he used lethal force against Decedent.

Since the United States Supreme Court first elucidated the Fourth
Amendment reasonableness standard in police shooting-death cases, lower courts
and juries have been required to confine their inquiry to the information known to
the officer at the time of the use of force. *See Graham v. Connor*, 490 U.S. 386, 396
(1989). "The clarity of hindsight cannot provide the standard for judging the
reasonableness of police decisions made in uncertain and often dangerous
circumstances." *Tennessee v. Garner*, 471 U.S. 1, 26 (1985).

In *Glenn v. Washington County*, 673 F.3d 864, 873 (9th Cir. 2011), the Ninth
Circuit reiterated that information unknown to an officer at the time of his use of
force – or information *acquired after the incident* by investigators or during
discovery – cannot be considered. The Ninth Circuit stated that "[w]e cannot

1  consider evidence of which the officers were unaware—the prohibition against

2  evaluating officers' actions 'with the 20/20 vision of hindsight' cuts both ways." *Id.*

3  (citing *Graham*, 490 U.S. at 396). This prohibition also applies when evaluating

4  California state law battery and negligence claims arising out of the same conduct

5  and use of force. *See Munoz v. City of Union City*, 120 Cal. App. 4th 1077 (2004);

6  *Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1232-33 (9th Cir. 2013) (applying

7  California negligence law); *Tabares v. City of Huntington Beach*, 988 F.3d 1119,

8  1125 (9th Cir. 2021).

9      The primary issue in this case is whether Defendant Silva used excessive or

10 unreasonable force in light of the circumstances he was confronted with and the

11 facts known to him. The information that Defendant Silva had at the time of the

12 shooting is contained in the materials that have long-been in both parties' custody,

13 including the dispatch tapes. Defendant Silva did not have the information that these

14 third-party witnesses conveyed in their interviews after the incident and therefore

15 that information would not be relevant to the use of force analysis as established in

16 *Graham.* Defendants have not explained how these numerous and speculative

17 depositions are necessary for Defendants' preparation at trial or for their expert

18 witnesses to complete their reports. *See Arredondo v. University of La Verne*, Case

19 No. 2:20-cv-07665-MCS-RAO, 2022 WL 423389, at *1 (C.D. Cal. Jan. 11, 2022)

20 (denying ex parte application to extend expert discovery deadlines because the

21 moving party failed to make a showing that the pending discovery "is information

22 for which expert testimony will be necessary and on which the expert's conclusions

23 will rely.").

## VI.   THE COURT SHOULD LIMIT DISCOVERY SHOULD IT FIND GOOD CAUSE TO GRANT DEFENDANTS' EX PARTE APPLICATION

26      In the event that the Court finds good cause to grant Defendants' Application

27 to modify the Scheduling Order, the Court should maintain the current trial date and

extend the fact discovery cutoff dates and other deadlines by 30-60 days only and keep the current trial date of April 15, 2024. Lead Trial Counsel, Mr. Galipo's trial calendar is fully booked in October of 2025, and he would be unavailable for a trial at the time to which Defendants propose to continue the trial date.

## VI. **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Ex Parte Application to Modify Scheduling Order in its entirety.

Respectfully submitted,
DATED:  November 5, 2024         LAW OFFICES OF DALE K. GALIPO

By_____*/s/ Shannon J. Leap*_____
        Dale K. Galipo
        Shannon J. Leap
        Attorneys for Plaintiffs