**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (Bar No. 144074)
dalekgalipo@yahoo.com
Shannon J. Leap (Bar No. 339574)
sleap@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California, 91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT FOR THE

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA KIRKMAN, CARLOS ALANIZ, individually and successors-in-interest to JOHN ALANIZ, deceased,<br><br>Plaintiffs,<br><br>vs.<br><br>STATE OF CALIFORNIA, RAMON SILVA, and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 2:23-cv-07532-DMG-SSC<br><br>Assigned to:<br>Hon. Dolly M. Gee<br>Hon. Magistrate Stephanie S. Christensen<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' EX PARTE APPLICATION FOR MODIFICATION OF SCHEDULING ORDER AND TRIAL CONTINUANCE** |

# MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION

## I. INTRODUCTION

This Court should deny Defendants' instant application for modification of the scheduling order and trial continuance for four reasons. First, Defendants misuse the ex parte application procedure because they cannot show that this is an emergency not of their own making, that this could not have previously been brought as a regularly noticed motion, and that good cause exists to modify the scheduling order for speculative discovery requests. Second, Defendants will not be prejudiced if this application is denied: the primary issue in this case is the Defendant Officer's use of deadly force against Decedent; it is not about Decedent's mental health history in the years before the date of the incident and to delay the entire case for additional discovery on such tangential matters (which will be subject to motions *in limine*) is inefficient and inappropriate. Third, Plaintiffs' counsel's trial calendar is full. Fourth, Plaintiffs have been waiting over two years for their day in court, and it is not in the interest of justice to further delay Plaintiffs' trial. As the Court states in its Initial Standing Order (Dkt. No. 8), it is important that this Court's schedule, docket, and trial schedule are understood as firm. This ensures that the Court and all parties are able to litigate the case accordingly. The parties have more than sufficient evidence to proceed to trial, including because the incident was captured on video, and it would not be in the interest of judicial economy to prolong unnecessary discovery and incur additional time and discovery expenses.

Defendants have filed an *Ex Parte* application seeking an order to modify the Scheduling Order by at least ninety (90) days for additional fact discovery related to the production of Decedent's mental health and medical records beginning eight years prior to the incident. Plaintiffs oppose Defendants' *Ex Parte* application and

respectfully request that this Court deny Defendants' *Ex Parte* application in its entirety for the reasons that follow.

## II. RELEVANT PROCEDURAL HISTORY

On July 28, 2023, Plaintiffs filed their lawsuit arising out of this incident, naming the State of California, Ramon Silva, and DOES 1-10 as defendants. (Dkt. No. 1-1). On September 11, 2023, Defendants filed their notice of removal to federal court. (Dkt. No. 1). Defendants have moved to delay or otherwise prolong this action at several previous junctures. For a third time, Defendants are seeking to delay the case by extending fact discovery cutoff deadline to conduct additional discovery flowing from the information contained in Decedent's mental health records, which have no bearing on the liability or damages issues in this case. Defendants also anticipate filing a motion to withdraw, on purported conflicts that have just arisen, which may also unreasonably delay this action. Defendants provide no information regarding the nature of the conflict, nor whether it is impugned to the entire Attorney General's Office, requiring outside counsel to be retained.

Extending the Fact Discovery cutoff and the trial date by at least 90 days, to continue a fishing expedition into decedent's mental health history is a waste of the Parties' and this Court's time and resources. Defendants have the records and the information contained therein they requested through their subpoena. Additional discovery is unnecessary. It is prejudicial to Plaintiffs, who already will be waiting nearly three years after their son's death to have their day in court, especially when the incident was caught on video and the witness statements are available to both parties. It is also a poor use of judicial time and resources, when the parties already have a trial date and have been working to complete discovery deadlines. Therefore, by way of their ex-parte application, Defendants again request another delay in the

litigation of Plaintiffs' claims for speculative, vague, and peripheral discovery reasons, which they could have addressed earlier.

Furthermore, Judge Christiansen specifically set a production deadline for the records that would comply with the current fact discovery cutoff set in this Court's scheduling order. Plaintiffs complied with that deadline and produced the records in full, pursuant to the protective order in effect in this case.

### III.  LEGAL STANDARD

A proper ex parte motion contains two distinct parts: "[t]he first part should address only why the regular noticed motion procedures must be bypassed [and t]he second part consists of papers identical to those that would be filed to initiate a regular noticed motion." *Mission Power Eng'g Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995). The granting of *ex parte* relief requires an evidentiary showing of good cause that: (1) "the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures"; and (2) "the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Mission Power*, 883 F. Supp. at 492; *see, e.g.*, *Azam v. Brown*, 714 F. App'x 663, 665 (9th Cir. 2017) (recognizing *Mission Power* as setting forth standard for *ex parte* relief); *Erichsen v. Cnty. of Orange*, 677 F. App'x 379, 380 (9th Cir. 2017) (mem.) (noting that appellants failed to meet threshold requirement for *ex parte* relief by failing to establish that they were "without fault in creating the crisis that requires ex parte relief" (quoting *Mission Power*, 883 F. Supp. at 492)).

Under Rule 16, a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). A party seeking to modify the schedule must show good cause and diligence in meeting Federal Rule of Civil Procedure 16's requirements. *See* Fed. R. Civ. P. 16 advisory committee notes (1983 amendment); *Johnson v. Mammoth Recreations*, 975 F.2d 604, 609 (9th Cir. 1992)

(Rule 16(b)'s "good cause" standard focuses on the diligence of the party seeking modification of the scheduling order). "A party demonstrates good cause for the modification of a scheduling order by showing that, even with the exercise of due diligence, he or she was unable to meet the timetable set forth in the order. *Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*, 218 F.R.D. 667, 671 (C.D. Cal. 2003) (citing *Zivkovic v. Southern California Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002)); *Johnson*, 975 F.2d at 609. "Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Johnson*, 875 F.2d at 609. "[T]he existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion" to modify a scheduling order. *Id.* However, "[i]f the party seeking the modification 'was not diligent, the inquiry should end' and the motion to modify should not be granted." *Zivkovic,* 302 F.3d at 1087 (citation omitted); *see also Johnson,* 975 F.2d at 609.

1. **Defendants Do Not Establish that Good Cause Exists to Modify the Court's Scheduling Order.**

In support of their Ex Parte Application, Defendants argue that they have been diligent in seeking this discovery and that they are in this position because Plaintiffs withheld these records. However, while Defendants did propound multiple sets of written discovery to Plaintiffs, to which Plaintiffs provided substantive and timely responses early in the fact discovery stage of the case, Defendants only deposed Plaintiffs on June 19, 2024, despite this Court issuing its scheduling order on January 30, 2024. (Dkt. No. 24, Delaration of Shannon J. Leap "Leap Decl." at ¶ 6). Plaintiffs noticed the depositions of Defendant Ramon Silva and Officer Van Dragt on January 30, 2024 for a date in February, 2024 which was ultimately continued by mutual agreement of the parties to March 6, 2024 and April 4, 2024, respectively. (Leap Decl. at ¶ 2). In their depositions, Plaintiffs provided testimony regarding Decedent, his specific mental health diagnoses, and their relationship with Decedent – including in the context of their relationship with Decedent in the context of his

mental health. Defendants therefore have had information about Decedent's mental health as it pertains to Plaintiffs' claims for damages for months, and from the outset of this litigation, by way of Plaintiffs' complaint. (Leap Decl. at ¶ 6); *See In re W. States*, 715 F.3d at 737 (9th Cir. 2013) ("The good cause standard typically will not be met where the party seeking to modify the scheduling order has been aware of the facts and theories supporting amendment since the inception of the action.").

Plaintiffs and plaintiffs' counsel have been cooperative and acted in good faith through the duration of this litigation, including the specific disputes regarding the production of these records, which Plaintiffs maintained and continue to maintain are privileged. (Leap Decl. at ¶ 3). This has included engaging in several meet and confer efforts, wherein Plaintiffs' counsel offered to produce the records with redactions pursuant to stated privileges and a privilege log in September 2024, an offer which Defendants rejected. *Id.* Plaintiffs' counsel also offered to amend the complaint to remove allegations of mental health issues and state Plaintiffs' claims for damages more specifically, another offer which Defendants rejected. *Id.* at ¶ 4. Plaintiffs have no intention of relying on these records at trial. Plaintiffs attempted to compromise, while maintaining the contended privileges and protecting Plaintiffs' interests. In addition, Defendants note that they have produced over 9,000 documents in this case, in response to Plaintiffs' requests for production of documents and as supplemental disclosures. About 4,500 of those were produced on November 20, 2024. Id. at ¶ 5. However, Plaintiffs are not seeking to extend the fact discovery cutoff.

### 2. Defendants Will Not Suffer Any Prejudice If Their Ex Parte Application Is Denied.

Good cause also does not exist because Defendants will not suffer any prejudice from a denial of their request to modify the Scheduling Order. Defendants have deposed both Plaintiffs, the Decedent's grandparents (who are not parties to

this action nor witnesses to the incident), and two percipient third party witnesses identified in the production of documents from the DOJ. Plaintiffs have deposed Defendant Silva and Officer Van Dragt. As noted in Plaintiffs' opposition to Defendants' previous ex parte application to extend the fact discovery cutoff, there is ample evidence with which the parties can proceed to trial, including the testimony from these depositions, the body worn camera and dash camera video footage of the incident, scene photos, witness statements, and other records from the investigation of this incident, involving an unarmed decedent.

Defendants contend that the continued investigation of, proposed additional written discovery, and potential depositions of individuals identified in the mental health records warrants an extension of the fact discovery cutoff. However, this information is not relevant to the questions of liability or damages in this case, and is therefore not reasonably calculated to lead to admissible evidence, as Rule 26 requires. Therefore, deadlines in place in this case should not be extended on speculative and unnecessary discovery on tangential issues, designed to distract from Defendant's unreasonable and excessive use of force against Decedent.

### a. The Records are Irrelevant as to Liability

Defendants argue that further discovery regarding Decedent's mental health records should be warranted because this information is relevant to liability insofar as it could indicate "whether [Decedent] exhibited aggressive tendencies during any prior mental health episodes needs to be explored." (Def. App. at 8). Not only is it wholly speculative that additional discovery will yield such information, it is also unsupported by the evidence in the record, and it is plainly improper character evidence. Information regarding whether Decedent exhibited aggressive tendencies in the past is improper propensity character evidence under Federal Rule of Evidence 404. This argument fails and Defendants do not articulate any other reason why or how Decedent's mental health history bears on *Defendant Silva's*

actions and inactions on the date of the incident. This information was also unknown to Defendant Silva at the time of his use of force. Decedent's actions that precipitated the law enforcement encounter are irrelevant to evaluating Plaintiffs' claims because Defendant Officer Silva did not have that information at the time he used lethal force against Decedent. As the Court noted in its order denying Defendants' previous Ex Parte Application (Dkt. No. 39 at 4), the Fourth Amendment reasonableness standard in police shooting-death cases, requires the fact finder to confine their inquiry to the information known to the officer at the time of the use of force. *See Graham v. Connor*, 490 U.S. 386, 396 (1989). "The clarity of hindsight cannot provide the standard for judging the reasonableness of police decisions made in uncertain and often dangerous circumstances." *Tennessee v. Garner*, 471 U.S. 1, 26 (1985).

In *Glenn v. Washington County*, 673 F.3d 864, 873 (9th Cir. 2011), the Ninth Circuit reiterated that information unknown to an officer at the time of his use of force – or information *acquired after the incident* by investigators or during discovery – cannot be considered. The Ninth Circuit stated that "[w]e cannot consider evidence of which the officers were unaware—the prohibition against evaluating officers' actions 'with the 20/20 vision of hindsight' cuts both ways." *Id.* (citing *Graham*, 490 U.S. at 396). This prohibition also applies when evaluating California state law battery and negligence claims arising out of the same conduct and use of force. *See Munoz v. City of Union City*, 120 Cal. App. 4th 1077 (2004); *Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1232-33 (9th Cir. 2013) (applying California negligence law); *Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1125 (9th Cir. 2021).

Furthermore, to the extent that Defendants argue these records are relevant to Decedent's behavior on the date of the incident, this is also an improper inquiry for the same reasons. See *Valtierra v. City of Los Angeles*, 99 F. Supp. 3d 1190, 1193 (C.D. Cal. 2015) (holding that information bearing on the Decedent's state of mind

on the date of the incident, but unknown to the officer was inadmissible because that information was not known to the shooting officer at the time of the incident). Just as in *Valtierra*, Defendant Silva had no information regarding Mr. Alaniz's state of mind at the time of Silva's use of deadly force, and such information therefore is not relevant to the inquiry.

Defendants have not explained how numerous and speculative depositions, subpoenas, additional and what may be cumulative written discovery are necessary for Defendants' preparation at trial or for their expert witnesses to complete their reports. *See Arredondo v. University of La Verne*, Case No. 2:20-cv-07665-MCS-RAO, 2022 WL 423389, at *1 (C.D. Cal. Jan. 11, 2022) (denying ex parte application to extend expert discovery deadlines because the moving party failed to make a showing that the pending discovery "is information for which expert testimony will be necessary and on which the expert's conclusions will rely."). Moreover, initial expert designations are scheduled for December 3, 2024, and expert discovery does not close until February 4, 2024. Defendants' experts have sufficient time to review the records with the currently set deadlines.

b. The Records Are Not Relevant for the Purposes of Damages.

Defendants argue that additional discovery regarding Decedent's mental health is necessary because of Plaintiffs' claims for damages. Plaintiffs do not assert any claim for damages for Decedent's own emotional distress, so the records are irrelevant as to Decedent's emotional distress as a result of being shot. Plaintiffs seek survival damages for Decedent's pre-death pain and suffering, and can specify that this is in regards to Decedents' pre-death *physical* pain and suffering – not his emotional pain and suffering.

Plaintiffs also are not seeking damages for financial support Decedent provided to Plaintiffs. This information was already provided to Defendants by way of Plaintiffs' deposition testimony and responses to written discovery. It is undisputed

that Decedent was not working at the time of his death, and it is unclear how additional discovery of Decedent's mental health history would produce information regarding his financial support of his parents, Plaintiffs.

Defendants also argue that additional discovery into Decedent's mental health history is relevant to the nature and quality of Plaintiffs' relationship with their son. Again, plaintiffs have already sat for depositions and provided ample testimony regarding the nature and quality of their relationship with their son, as have Decedent's grandparents.

### 3. Lead Trial Counsel Dale K. Galipo Has A Full Trial Schedule.

Defendants do not specify the amount of time by which they seek to continue to the current trial date. However, if it is consistent with their request to continue the fact discovery cutoff by 90 days, this would continue the trial date to June or July 2025. Mr. Galipo also has a full trial schedule for the intermittent months between April and August 2025. It is not in the interests of justice to delay trial an additional four or five months, when lead trial counsel is not available at that time, and when Plaintiffs will have already waited three years from the death of their son to have their day in court.

## IV. THE COURT SHOULD LIMIT DISCOVERY SHOULD IT FIND GOOD CAUSE TO GRANT DEFENDANTS' EX PARTE APPLICATION

In the event that the Court finds good cause to grant Defendants' Application to modify the Scheduling Order, the Court should maintain the current trial date of April 15, 2025 and extend the fact discovery cutoff dates and other deadlines by 30 days only. Lead Trial Counsel, Mr. Galipo's trial calendar is fully booked through July 2025, and he would be unavailable for a trial at the time to which Defendants propose to continue the trial date.

///

///

///

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Ex Parte Application to Modify Scheduling Order in its entirety.

Respectfully submitted,
DATED: November 21, 2024           LAW OFFICES OF DALE K. GALIPO

                                    By  /s/ Shannon J. Leap
                                        Dale K. Galipo
                                        Shannon J. Leap
                                        Attorneys for Plaintiffs