ROB BONTA
Attorney General of California
NORMAN D. MORRISON
Supervising Deputy Attorney General
ASHLEY REYES
Deputy Attorney General
State Bar No. 312120
 2550 Mariposa Mall, Room 5090
 Fresno, CA  93721-2271
 Telephone: (559) 705-2312
 Fax: (559) 445-5106
 E-mail:  Ashley.Reyes@doj.ca.gov
*Attorneys for Defendants, State of California, acting by and through the California Highway Patrol and Officer Ramon Silva*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SANDRA KIRKMAN AND CARLOS ALANIZ, INDIVIDUALLY AND AS SUCCESSORS-IN-INTEREST TO JOHN ALANIZ, DECEASED,**<br><br>Plaintiffs,<br><br>v.<br><br>**STATE OF CALIFORNIA; RAMON SILVA; AND DOES 1-10, INCLUSIVE,**<br><br>Defendants. | Case No. 2:23-cv-07532-DMG-SSC<br><br>**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL DECLARATION OF DEPUTY ATTORNEY GENERAL ASHLEY REYES IN SUPPORT OF ATTORNEY GENERAL'S MOTION TO WITHDRAW AS COUNSEL FOR DEFENDANTS**<br>Judge:         Honorable Dolly M. Gee<br>Trial Date:   April 15, 2025<br>Action Filed: 7/28/2023 |

I, Ashley Reyes, declare as follows:

1. I am a duly appointed Deputy Attorney General and am assigned to represent Defendants in the above-captioned action.  The facts set forth herein are within my personal knowledge, except where otherwise indicated, and if called to testify herein I could and would competently testify thereto.

1

2. On July 28, 2023, plaintiffs filed the instant lawsuit alleging, *inter alia*, that California Highway Patrol (CHP) Officer Ramon Silva used "excessive force" against Decedent John Alaniz during a law enforcement encounter on May 4, 2022, on the I-105 freeway in Los Angeles, California. On or about September _, 2023, Defendants California Highway Patrol referred its own defense and that of Officer Ramon Silva in this matter to the Office of the Attorney General.

3. Assembly Bill 1506 (AB 1506) requires the Office of the Attorney General, California Department of Justice (DOJ) to investigate all incidents of an officer-involved shooting resulting in the death of an unarmed civilian in the state. Assemb. B. 1506 (Cal. 2020). Pursuant to AB 1506, DOJ separately conducted an investigation of the incident underlying this lawsuit against Defendants California Highway Patrol and Officer Ramon Silva and reviewed the officer-involved shooting for potential criminal liability.

4. ███████████████████████████████████████████

5. When the DOJ performs an AB 1506 investigation, Department employees, including attorneys and experts, are involved in the investigation, questioning, review, analysis, and conclusions and recommendations. These investigating employees collect evidence, participate in or conduct interviews, and perform forensic and technical inspections of the evidence. Other employees, including the Department's attorneys, analyze the evidence and facts to prepare opinions and conclusions regarding the underlying events, and prepare various reports and presentations regarding their findings. Part of this investigatory process is performed by the California Department of Justice's Police Shooting Investigation Team (CaPSIT Team). Beginning in 2024, the California Department of Justice additionally created a separate division, the Police Practices Section

1  (PPS), which performs an investigation into the events, acts, circumstances,
2  policies, procedures, training, and other matters arising out of, or relating to, the
3  underlying use of force incident. California law requires the Attorney General both
4  to both perform these investigations, and to represent nearly all state agencies and
5  officials in lawsuits brought against them.

6.  The Department established an ethical wall between the various divisions, whereby staff from the Tort and Condemnation section are prevented from accessing files, communications, records, and evidence prepared, collected and held by the CaPSIT and PPS sections, and vice-versa. Accordingly, although the Tort and Condemnation Section represents individual defendants and public agencies, it does not have any access or rights to demand access to documents and evidence held by other sections, and vice-versa. The different sections also have the ability, and responsibility, of representing the interests of their respective clients and public agencies, including the DOJ, the CHP, and others.

7.  In July 2024, the DOJ's Police Shooting Investigation Team (CaPSIT Team) completed the investigation required pursuant to AB 1506 involving Defendant Officer Silva and Decedent that had been pending since May 4, 2022. The CaPSIT Team concluded that Officer Silva's conduct was reasonable and did not recommend criminal charges be brought against him. Plaintiffs subpoenaed the investigatory file from the DOJ on July 31, 2024. These items were produced on September 11, 2024.

8.  To adequately represent CHP and Officer Silva in this matter, I have retained experts that will need to physically examine the evidence collected by the CaPSIT team. This raises a conflict under the Rules of Professional Responsibility. Specifically, I will need to question and/or scrutinize the way the DOJ handled this investigation to protect the interests of my clients. DOJ will be represented by other attorneys in my office. This same concern was brought to light on November 21, 2024, when our retained experts attended a physical evidence inspection at the DOJ

3

1  office and were limited in their ability to inspect the evidence despite the issuance
2  of a subpoena. The subpoena was issued by my office on the Department of Justice
3  for this physical inspection of evidence. This inspection is not only vital to our
4  experts' opinions, but necessary for them to complete their Rule 26 reports.

5  9. ████████████████████████████████████████████████
6  ████████████████████████████████████████████████████
7  ████████████████████████████████████████████████████
8  ████████████████████████████████████████████████
9  ████████████████████████████████████████████████████
10 ████████████████████████████████████████████████
11 ████████████████████████████████████████████████████
12 ██████████████████████████████

13 10. It is also anticipated that Plaintiffs' counsel may seek to call employees
14 of the DOJ at trial to testify regarding the AB 1506 investigation, the evidence
15 collected, and their findings. This will prejudice the Defendants, as the Plaintiffs
16 will be seeking to use Defendants counsel's own personnel to provide what are
17 essentially expert opinions and conclusions prepared in the course of their statutory
18 duties against the Defendants. Additionally, Defendants anticipate and expect that
19 at trial Plaintiffs will reference the handling of the AB 1506 investigation and
20 report, and attempt to utilize it to create doubt and improper bias against
21 Defendants and their current counsel of record due to their status as members of the
22 same agency.

23 11. Rule 1-7(b) of the Rules of Professional Conduct provides that: "A
24 lawyer shall not, without informed written consent from each affected client, and
25 compliance with paragraph (d), represent a client if there is a significant risk the
26 lawyer's representation of the client will be materially limited by the lawyer's
27 responsibilities to or relationships with another client, a former client or a third
28

person, or by the lawyer's own interests." Here, because the Attorney General has divided loyalties to CHP and Officer Silva on the one hand, and to DOJ CaPSIT and PPS on the other, there is a significant risk the representation of CHP and Officer Silva will be materially limited by the Attorney General's responsibilities and relationship with DOJ CaPSI T and PPS. The DOJ, CHP, and Officer Silva have all been informed of this conflict.

12. Rule 1-7(d) of the Rules of Professional Conduct provides that: "Representation is permitted under this rule only if the lawyer complies with
   paragraphs (a), (b), and (c), and:
   (1) the lawyer reasonably believes* that the lawyer will be able to provide
       competent and diligent representation to each affected client;
   (2) the representation is not prohibited by law; and
   (3) the representation does not involve the assertion of a claim by one client
       against another client represented by the lawyer in the same litigation or
       other proceeding before a tribunal."

Here, due to the divided loyalties, the Office of the Attorney General does not have a reasonable belief that it will be able to provide competent and diligent representation to each affected client without prejudicing the interests of the other, even if it could obtain informed written consent from each client. The DOJ, CHP, and Officer Silva have all been informed of this conflict. Accordingly, the Office of the Attorney General seeks to withdraw from representation of CHP and Officer Silva in this case, in compliance with Rule 1-7.

13. In addition, the Office of the Attorney General has concluded that withdrawal is mandated pursuant to Rules of Professional Conduct 1-7(d)(1), because the sections that are responsible for the AB 1506 investigation have taken an adverse position on behalf of their client (the Department of Justice) with regards to the production of evidence and records collected during the AB 1506 investigation. As one example, in response to the subpoena previously served on

the Department by the Plaintiffs, the DOJ (by and through CaPSIT and PPS) objected to portions of the subpoena and refused to produce documents. Defendants' current counsel has no access or right to these records, despite the fact they may be relevant to the current case and may be put at issue at trial.

14. In order to comply with the Court's current scheduling order, the DOJ has issued a subpoena (by and through Defendants' current counsel of record) upon itself for the production of records. On November 12, 2024, our office issued a subpoena on the DOJ for a physical inspection of evidence collected during the AB 1506 investigation. On November 21, 2024, Defendants' counsel, Plaintiffs' counsel, Officer Silva, and Defendants' retained experts were present at the DOJ office in Commerce, California and were informed that a physical inspection of the physical evidence was not permitted, nor were photographs. Despite the specific requests outlined in the subpoena served on the DOJ, the parties were told that they were only allowed to take notes of the items of evidence. Accordingly, any motions that may need to be brought to enforce the subpoena or gain access to records previously withheld or objected to by the CaPSIT and PPS sections will necessarily need to be brought against the Department by Departmental employees, and any defense will similarly need to be handled by Departmental staff against other Departmental employees.

15. To date, Defendants have produced over 9,250 documents. The vast majority of these documents include evidence, photographs, interviews and videos from the shooting investigation, which are critical documents that need to be reviewed as the officer-involved shooting that was investigated by the DOJ forms the basis of the Plaintiffs' lawsuit. There have been a total of eight depositions taken between both parties. Additionally, the AB 1506 Report that was issued in July identified a total of 25 civilian witnesses that provided interviews; replacement counsel will need to review these witness statements to determine whether these individuals and any members of the CaPSIT team will need to be called as

witnesses at the time of trial. In addition to the documents produced, my office has subpoenaed records from various agencies including the Torrance Police Department and the Veteran's Administration. These records combined total approximately 900 pages. The evidence in this case has been collected and produced over a period of 10 months and has required numerous hours of dedicated review to analyze, organize, and understand. It would be impossible for a new attorney to review and analyze the evidence, understand the facts, liability, and damages of this case within just a few months.

16. My office has already retained experts in this matter; however, replacement counsel will need to assist one of these experts in completing a vital physical evidence inspection as current counsel has been unable to do so because of the conflict. As discussed above, our office issued a Rule 45 subpoena duces tecum for the physical inspection of all physical evidence taken at the scene in this matter. Despite this subpoena, our experts were unable to physically examine or inspect the evidence, including, but not limited to, the gray eyeglass case Decedent pointed at Officer Silva, glass pipe, bullet fragments, and taser probes. Despite the issuance of a subpoena pursuant to Fed. R. Civ. P. 45 to the Department of Justice, the Department's staff in possession of the evidence refused to allow any inspection or viewing of much of the evidence, did not allow photographs to be taken of much of the evidence, did not allow the parties' counsel and their experts to actually handle or closely examine any of the evidence collected as part of the investigation into the underlying incident, and further advised that the evidence would only be able to be reviewed pursuant to procedures and requirements mandated by the Department. Without this physical inspection and review of the physical evidence taken at the scene of this incident, CHP and Officer Silva's expert witness will be unable to issue a Rule 26 report.

17. Upon becoming aware of the conflict, our office issued a conflict letter to CHP and communicated the conflict directly to Officer Silva. CHP commenced the

1 | process of attempting to obtain replacement counsel promptly. The AGO has not
2 | delayed in bringing this motion.
3 |     I declare under penalty of perjury under the laws of the United States of
4 | America that the foregoing is true and correct.
5 |     Executed on November 27, 2024, at Fresno, California.

*/s/ Ashley Reyes*
Ashley Reyes

LA2023603259
95604221.docx