Dean Gazzo Roistacher LLP
Lee H. Roistacher, Esq. (SBN 179619)
440 Stevens Avenue, Suite 100
Solana Beach, CA  92075
Telephone:  (858) 380-4683
Facsimile:  (858) 492-0486
E-mail:  lroistacher@deangazzo.com

Attorneys for Defendants
State of California by and through California
Highway Patrol and Officer Ramon Silva

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA KIRKMAN AND CARLOS ALANIZ, INDIVIDUALLY AND AS SUCCESSORS-IN-INTEREST TO JOHN ALANIZ, DECEASED,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF CALIFORNIA; RAMON SILVA; AND DOES 1-10, INCLUSIVE,<br><br>Defendant. | Case No.: 2:23-cv-07532-DMG-SSC<br><br>**MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS STATE OF CALIFORNIA BY AND THROUGH CALIFORNIA HIGHWAY PATROL AND OFFICER RAMON SILA**<br><br>Date:          February 28, 2025<br>Time:          2:00 p.m.<br>Courtroom:  8C<br>Judge:         Hon. Dolly M. Gee<br><br>Complaint Filed: July 28, 2023<br>Trial Date: April 15, 2025 |

///
///
///
///
///
///
///
///
///

1

1

# TABLE OF CONTENTS

2    INTRODUCTION…………………………………………………………..8

3    SUMMARY JUDGMENT STANDARDS……………………………….10

4    FACTS……………………………………………………………………10

5    ARGUMENT…………………………………………………………...14

6    A.    This Court Should Grant Summary Judgment On The § 1983 Claims….14

7         1.    Qualified Immunity………………………………………..14

8         2.    Qualified Immunity Immunizes Silva From Liability On The Fourth Amendment Force Claim……………………………….17

9
10              a.    No Fourth Amendment violation because it was objectively reasonable for Silva to believe Alaniz was pointing a gun at him………………………………………………………17

11
12                   i.    Silva reasonably perceived an immediate threat…….18

13                   ii.    Remaining Graham factors favor Silva……………...25

                    iii.    Additional factors, if considered, favor Silva………..25

14
15              b.    Absence of clearly established law………………………….27

16         3.    Qualified Immunity Immunize Silva From Liability On The Fourteenth Amendment Loss Of Familial Association Claim…….27

17              a.    No underlying Fourth Amendment violation………………27

18              b.    No Fourteenth Amendment violation because Silva didn't act in the rapidly evolving situation with a purpose to harm Alaniz unrelated to the legitimate law enforcement objective of self-protection……………………………….28
19
20              c.    Absence of clearly established law………………………….29

21    B.    This Court Should Grant Summary Judgment On The State Law Claims……………………………………………………….29
22
23         1.    Battery Claim Fails Because Silva's Use Of Deadly Force Was Objectively Reasonable Under The Fourth Amendment………….29

24         2.    Bane Act Claim Fails Because No Fourth Amendment Violation And, Alternatively, Silva Lacked A Specific Intent To Violate Alaniz's Fourth Amendment Rights……………………………….30
25
26         3.    Negligence Claim Fails Because Silva's Use Of Deadly Force Was Objectively Reasonable………………………………………...30
27

28    CONCLUSION……………………………………………………….31

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Abuka v. City of El Cajon*
2019 U.S. Dist. LEXIS 37137 (S.D. Cal. Mar. 7, 2019)....................23

4

*Arian v. City of L.A.*
2013 U.S. Dist. LEXIS 192420 (C.D. Cal. Apr. 30, 2013)..................23

5

*Ashcroft v. al Kidd*
563 U.S. 731 (2011)..................................................14

6

7

*Avina v. United States*
681 F.3d 1127 (9th Cir. 2012)........................................29

8

9

*Barnes v. City of Pasadena*
508 F. App'x 663 (9th Cir. 2013)......................................22

10

*Bowles v. City of Porterville,*
2012 U.S. Dist. LEXIS 71996 (E.D. Cal. May 23, 2012)...............23

11

12

*Brosseau v. Haugen,*
543 U.S. 194 (2004) ...................................................19

13

*Brown v. Ransweiler*
171 Cal. App. 4th 516 (2009)..........................................29

14

15

*Calonge v. City of San Jose*
2024 U.S. App. LEXIS 13911 (9th Cir. June 7, 2024)...............28

16

*Carley v. Aranas*
103 F.4th 653 (9th Cir. 2024).........................................16

17

18

*Celotex Corp. v. Catrett*
477 U.S. 317 (1986)..................................................10

19

*City & County of San Fransisco v. Sheehan*
575 U.S. 600 (2015)..........................................18, 20, 26

20

21

*Corrales v. Impastato*
650 F. App'x 540 (9th Cir 2016).......................................22

22

*Cruz v. City of Anaheim*
765 F.3d 1076 (9th Cir. 2014)...............................19, 20, 21

23

24

*Davidson v. City of Opelika*
675 F. App'x 955 (11th Cir. 2017).....................................24

25

*Dereaux v. Abbey*
263 F.3d 1070 (9th Cir. 2001)........................................10

26

27

*District of Columbia v. Wesby*
583 U.S. 48 (2018)..........................................15, 16, 27

28

3

*Eastburn v. Reg'l Fire Prot. Auth.*
  31 Cal. 4th 1175 (2003)……………………………………..…30

*Ely v. Cnty. of Santa Barbara*
  2021 U.S. Dist. LEXIS 252182 (C.D. Cal. Nov. 29, 2021)………………28

*Estate of Strickland v. Nev. Cty.*
  69 F.4th 614 (9th Cir. 2023)……………………………….....…18, 19, 22

*Felarca v. Birgeneau*
  891 F.3d 809 (9th Cir. 2018)……………………………………..…15

*French v. Pierce Cty.*
  2024 U.S. Dist. LEXIS 94638 (W.D. Wash. May 28, 2024)……………26

*Gauslik v. Perez*
  392 F.3d 1006 (9th Cir. 2004)…………………………………………28

*Gonzalez v. City of Anaheim*
  747 F.3d 789 (9th Cir. 2014)………………………………………19

*Graham v. Connor*
  490 U.S. 386 (1989)…………………………………………..…*Passim*

*Hammett v. Paulding Cty.*
  875 F.3d 1036 (11th Cir. 2017)……………………………………..…23

*Hart v. City of Redwood City*
  99 F.4th 543 (9th Cir. 2024)………………………………….....…17, 18, 25

*Hayes v. Cty. of San Diego*
  57 Cal. 4th 622 (2013)…………………………………………………31

*Hayes v. Cty. of San Diego*
  736 F.3d 1223 (9th Cir. 2013)…………………………………..…21, 26

*Hudspeth v. City of Shreveport*
  2006 U.S. Dist. LEXIS 91053 (W.D. La. Dec. 18, 2006)………………..…24

*Hughes v. Rodriguez*
  31 F.4th 1211 (9th Cir. 2022)………………………………………10

*Hunter v. Bryant*
  502 U.S. 224 (1991)………………………………………………18

*Hyer v. City & Cty. of Honolulu*
  118 F.4th 1044 (9th Cir. 2024)………………………………………...19

*In re Oracle Corp. Sec. Litig.*
  627 F.3d 376 (9th Cir. 2010)………………………………………10

*Kirkpatrick v. County of Washoe*
  843 F.3d 784 (9th Cir. 2016)………………………………………..…15

4

*Kisela v. Hughes*
584 U.S. 100 (2018)………………………………………………………15

*Koussaya v. City of Stockton*
54 Cal. App. 5th 909 (2021)……………………………………………31

*Kramer v. Cullinan*
878 F.3d 1156 (9th Cir. 2018)…………………………………………17

*Lal v. California*
746 F.3d 1112 (9th Cir. 2014)…………………………………………26

*Lamont v. New Jersey*
637 F.3d 177 (3rd Cir. 2011)…………………………………………24

*Lane v. Franks*
573 U.S. 228 (2014)……………………………………………………17

*Larocca v. City of L.A.*
2024 U.S. Dist. LEXIS 45650 (C.D. Cal. Mar. 14, 2024)…………….…19

*Little v. Smith*
114 F. Supp. 2d 437 (W.D.N.C. 2000)…………………………………25

*Longoria v. Pinal County*
873 F.3d 699 (9th Cir. 2017)…………………………………………19, 20

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
475 U.S. 574 (1986)……………………………………………………10

*Mattos v. Agarano*
661 F.3d 433 (9th Cir. 2011)…………………………………………16, 20

*Monzon v. City of Murrieta*
978 F.3d 1150 (9th Cir. 2020)…………………………………………27

*Murillo v. City of L.A.*
707 F. Supp. 3d 947 (C.D. Cal. 2023)…………………………………29

*Napouk v. L.V. Metro. Police Dep't*
123 F.4th 906, 2024 U.S. App. LEXIS 31226
(9th Cir. Dec. 10, 2024)…………………………………………….*Passim*

*Nehad v. Browder*
929 F.3d 1125 (9th Cir. 2019)…………………………………………26, 27

*Nicholson v. City of L.A.*
935 F.3d 685 (9th Cir. 2019)…………………………………………29

*Ochoa v. City of Mesa*
26 F.4th 1050 (9th Cir. 2022)…………………………………………27, 28

*Pearson v. Callahan*
555 U.S. 223 (2009)…………………………………………………14, 21

*Perez v. City of Fontana*
  2023 U.S. Dist. LEXIS 105403 (C.D. Cal. June 15, 2023)...................30

*Plumhoff v. Rickard*
  572 U.S. 765 (2014) ……………………………………………………………..19

*Pollard v. City of Columbus*
  780 F.3d 395 (6th Cir. 2015)………………………………………………..…24

*Porter v. Osborn*
  546 F.3d 1131 (9th Cir. 2008)………………………………………………28

*Quigley v. Garden Valley Fire Prot. Dist.*
  7 Cal. 5th 798 (2019)………………………………………………………30

*Reese v. Cnty of Sacramento*
  888 F.3d 1030 (9th Cir. 2018)………………………………………………30

*Reyes v. City of Santa Ana*
  832 F. App'x 487 (9th Cir. 2020)………………………………………29

*Rivas Villegas v. Cortesluna*
  595 U.S. 1 (2021)………………………………………………………16

*Rivera v. Cater*
  2019 U.S. Dist. LEXIS 177424 (E.D. Cal. Oct. 11, 2019)………………20

*Rodriguez v. Swartz*
  899 F.3d 719 (9th Cir. 2018)........................................................22

*Ryburn v. Huff*
  565 U.S. 469 (2012)………………………………………………....…18

*Sabra v. Maricopa County Cmty. Coll. Dist.*
  44 F.4th 867 (9th Cir. 2022)………………………………………………16

*Saucier v. Katz*
  533 U.S. 194 (2001)………………………………………………....…21

*Schwarz v. Lassen Cnty.*
  628 F. App'x 527 (9th Cir. 2016)………………………………………28

*Scott v. Harris*
  550 U.S. 372 (2007)…………………………………………………10, 20

*Scott v. Henrich*
  39 F.3d 912 (9th Cir. 1994)………………………………………………26

*Scott v. Smith*
  109 F.4th 1215 (9th Cir. 2024)………………………………………………27

*Sharp v. County of Orange*
  871 F.3d 901 (9th Cir. 2017)………………………………………………16

6

*Simmonds v. Genesee Cty.*
    682 F.3d 438 (6th Cir. 2012)……………………………………..…24

*Slattery v. Rizzo*
    939 F.2d 213 (4th Cir. 1991)……………………………………….24

*Smith v. Agdeppa*
    81 F.4th 994 (9th Cir. 2023)………………………………………15, 27

*Spencer v. Pew*
    117 F.4th 1130 (9th Cir. 2024)……………………………………15, 16

*Tabares v. City of Huntington Beach*
    988 F.3d 1119 (9th Cir. 2021)……………………………………31

*Taylor v. Barkes*
    575 U.S. 822 (2015)………………………………………………...16

*Varnadore v. Merritt*
    343 F. Supp. 3d 1367 (S.D. Ga. 2018)……………………………24

*Waid v. County of Lyon*
    87 F.4th 383 (9th Cir. 2023)……………………………………16

*White v. Pauly*
    580 U.S. 73 (2017)………………………………………………15

*Wilkinson v. Torres*
    610 F.3d 546 (9th Cir. 2010)…………………………………….*Passim*

*Williams v. City of Sparks*
    112 F.4th 635 (9th Cir. 2024)……………………………………18

*Williamson v. City of Nat'l City*
    23 F.4th 1146 (9th Cir. 2022)……………………………………30

**Statutes**

42 U.S.C. § 1983………………………………………………......9, 15, 31

Cal. Gov. Code § 815………………………………………………...30

Cal. Pen. Code § 148………………………………………………25

Cal. Pen. Code § 240………………………………………………25

Cal. Pen. Code § 241………………………………………………25

Cal. Pen. Code § 835a………………………………………………31

Fed. R. Civ. P. 56………………………………………………10

**INTRODUCTION**

This admittedly tragic case is about a May 4, 2022 officer involved shooting.  CHP Officers Jonathan Van Dragt and Ramon Silva responded to the I-105 freeway because John Alaniz was purposely trying to kill himself by jumping in front of cars.  Upon contact with the officers, Alaniz ignored commands to remove his hands from his pocket until he pulled objects from his pocket and immediately charged directly at the officers with his hands together and outstretched in front of him in the classic "shooter's stance" best illustrated by this picture:



Reasonably believing Alaniz had a gun and was going to shoot (as anyone would), Silva responded with objectively reasonable deadly force.

///

///

Alaniz's surviving parents assert federal and state claims against Silva and CHP.[1]

On Alaniz's behalf, parents assert a Fourth Amendment based § 1983 unreasonable force claim against Silva.   Doc. 1-1, pp. 7-9.  On their own behalf, parents assert a Fourteenth Amendment based § 1983 claim against Silva for interference with their familial relationship with Alaniz.  *Id.,* pp. 11-12.

Parents allege state law claims directly against Silva and vicariously against CHP for battery and negligence seeking damages on Alaniz's behalf (survivor claim) and on their own behalf (wrongful death claim).  Doc. 1-1, pp. 12-15; *see id.*, ¶¶ 70, 76. Parents also allege a Bane Act claim directly against Silva and vicariously against CHP on Alaniz's behalf.  *Id.*, pp. 15-16.

Silva is entitled to qualified immunity on the § 1983 claims.  He violated neither Alaniz's Fourth Amendment rights nor parent's Fourteenth Amendment rights and, alternatively, no "clearly established" law existed on May 4, 2022 demonstrating that all reasonable law enforcement officers would know Silva's use of deadly force was unconstitutional under the specific circumstances confronting him.

Silva's objectively reasonable use of deadly force renders meritless the battery, negligence and Bane Act claims.  The Bane Act claim further fails for lack of a specific intent by Silva to violate Alaniz's constitutional rights.  Because Silva is not directly liable, CHP is not vicariously liable.

This Court should grant summary judgment for Silva and CHP.

///

///

---

[1] Parents stipulated and the Court dismissed the second claim under 42 U.S.C. § 1983 for failing to provide medical care under the Fourth Amendment, the negligence liability theories asserted in ¶ 73(d), (e), (f) and (g) and the punitive damage claims against Silva.  Doc. 61.

## SUMMARY JUDGMENT STANDARDS

Summary judgment is proper where no genuine issue of material fact exists.  Fed. R. Civ. P. 56.  A defendant meets its summary judgment burden by submitting evidence showing the absence of a genuine issue of material fact or by pointing out the absence of evidence to support the plaintiff's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Dereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).

Facts are viewed in favor of the nonmoving party only where there is a genuine dispute.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  But the court can't adopt a plaintiff's version of facts if blatantly contradicted by record evidence.  *Id.* at 380; *Hughes v. Rodriguez*, 31 F.4th 1211, 1218 (9th Cir. 2022).  Neither a "scintilla of evidence," *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010), nor "metaphysical doubt[s]" preclude summary judgment, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## FACTS

On May 4, 2022, Alanez jumped in front of a big rig traveling around 54 mph on I-105, bounced off and landed in a traffic lane requiring another driver to stop.  Defendants' Separate Statement of Undisputed Material Facts ("Fact(s)") 1-2.  Alaniz got up and put his head under the wheels of another big rig.  Fact 3.

Someone called 911 around 11:18 a.m. to report the incident.  Fact 4.  Around 11:20 a.m., CHP started broadcasting information about the incident.  Fact 5.

Alaniz then walked down the shoulder followed by a witness who feared Alaniz would jump in front of another car.  Fact 6.  Alaniz pushed him aside and jumped in front of truck, charging head first into the truck breaking the front grill and denting the hood.  Facts 7-8.  Alaniz got up and continued walking down the shoulder where he got stuck by a van.  Fact 9.  Ignoring the witness, Alaniz

///

10

looked for cars to jump in front of.  Fact 10.  Alaniz as "full of adrenalin" and "wanting to kill himself."  Fact 11.

Officer Silva arrived around 11:31 a.m.  Fact 12.  He requested air support for assistance and described the scene as "chaotic," "tense," "uncertain" and concerning.  Facts 13-15.  Silva immediately reported Alaniz had his hands in his pocket.  Fact 16.  Between 50-100 feet from Alaniz, Silva planned on waiting for back up and then securing Alaniz to remove him from the roadway.  Facts 17-19.

Van Dragt arrived in his patrol car about 30 seconds later, positioning it in Silva's line of sight at an angle on the shoulder between Alaniz and Silva.  Facts 20-21. Van Dragt also planned to secure and remove Alaniz from the roadway. Fact 22.

Getting out of his car, Van Dragt saw Alaniz with his hands in his pockets and believed Alaniz was a potential threat.  Facts 23-24.

Van Dragt unholstered his gun and moved toward the back of his car while ordering Alaniz to remove his hands from his pockets.  Facts 25-26.  Alaniz complied but put his hands back into his pockets.  Fact 27.  Silva unholstered his gun and told Alaniz to "show his hands."  Facts 28-29.

Alaniz immediately charged at Van Dragt while removing an object from his pocket and getting into a "shooting platform" as Van Dragt retreated.  Fact 30.

Silva believed Alaniz's had a gun in his hands based on his observations of the object's shape.  Fact 31.  Silva feared for Van Dragt's life.  Fact 32.  Alaniz and Van Dragt were 10-12 feet from each other.  Fact 33.

Van Dragt couldn't confirm if Alaniz was pointing a gun at him, so he didn't immediately use deadly force though he still feared injury or death from Alaniz because he could have had a gun or knife.  Facts 34-36.

Silva momentarily lost sight of Alaniz behind Van Dragt's car.  Fact 37.

///

Silva feared for Van Dragt's life and his own. Fact 38. Silva's focus was on where Alaniz would next appear right in front of him from behind the car. Fact 39.

Van Dragt thought Alaniz was going to attack him. Fact 40. Van Dragt retreated toward the front of his car holstering his gun and drawing his Taser while ordering Alaniz to get on the ground. Facts 41-42. Van Dragt fired the Taser when Alaniz was 3-5 feet away. Fact 43. Van Dragt heard no gun shots before firing his Taser. Fact 44. Van Dragt did not know if his Taser shot made contact. Fact 48.

Silva thought he heard a gunshot from the direction of Van Dragt and Alaniz who was still running toward the officers in a "shooter's stance." Facts 45, 49. Silva also saw Van Dragt do a "weird side-step." Fact 45. A Taser deployment can sound like a gunshot. Fact 47. With his focus on Alaniz, Silva didn't know Van Dragt transitioned to a Taser. Fact 48.

Believing Alaniz had a gun and was a threat, Silva used deadly force when Alaniz was about five feet away and closing distance. Facts 49-51. Silva intended to neutralize a lethal threat because he thought he would be shot if he didn't use deadly force. Facts 52-53. Silva thought he had no other options. Fact 54.

Van Dragt reported "shots fired" around 11:32 a.m. Fact 55. Less than five seconds elapsed between Alaniz starting to run and the shooting. Facts 30, 50. About 30 seconds elapsed between Silva's arrival and the shooting. Fact 56.

Officers provided Alaniz with medical care until medical care providers took over at 11:36 a.m. Fact 57. Alaniz was pronounced dead at 12:08 p.m. Fact 58.

It is undisputed no gun was recovered at the scene. An open (on the side) eyeglass case holding a glass pipe was recovered at the scene that Van Dragt believes Alaniz had in his hands. Fact 59.

12

CONFIDENTIAL PURSUANT TO STIPULATED PROTECTIVE ORDER
Sandra Kirkman, Carlos Alaniz v. State of California, et al., 2:23-cv-07532-DMG-SSC



DOJ01543

A black vape pen was also found at the scene, Fact 59, that would look consistent with what Silva described seeing in Alaniz hands.

/// 

///

///

///

///

///

///

///

Case No. 2:23-cv-07532-DMG-SSC

CONFIDENTIAL PURSUANT TO STIPULATED PROTECTIVE ORDER
Sandra Kirkman, Carlos Alaniz v. State of California, et al., 2:23-cv-07532-DMG-SSC



**ARGUMENT**

**A.    This Court Should Grant Summary Judgment On The § 1983 Claims**

**1.    Qualified Immunity**

"[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  It "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.  When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al Kidd*, 563 U.S. 731, 743 (2011) (simplified).

///

"Under [Supreme Court] precedents, officers are *entitled* to qualified immunity under §1983 *unless* (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018) (emphasis added).  It is a plaintiff's burden to overcome both prongs of qualified immunity.  *Spencer v. Pew,* 117 F.4th 1130, 1137 (9th Cir. 2024); *Felarca v. Birgeneau*, 891 F.3d 809, 815 (9th Cir. 2018); *see also Smith v. Adepa*, 81 F.4th 994, 1004 n.4 (9th Cir. 2023) ("[T]he burden is not on the officers to prove they fit perfectly within the facts of a case granting qualified immunity; the burden is on the plaintiff to show a violation of a clearly established right in the specific circumstances at issue.").

"Clearly established" law means precedent existing at the time of the conduct "'squarely governs the specific facts' at issue," *Kisela v. Hughes*, 584 U.S. 100, 104 (2018), such that it "placed the [un]constitutionality of the officer's conduct 'beyond debate,'" *Wesby*, 583 U.S. at 63, under the "'particularized' facts of the case," *White v. Pauly*, 580 U.S. 73, 79 (2017).  This is a "demanding," "exacting," and "high standard." *Wesby*, 583 U.S. at 63; *City & County of San Fransisco v. Sheehan*, 575 U.S. 600, 611 (2015); *Kirkpatrick v. County of Washoe*, 843 F.3d 784, 792 (9th Cir. 2016); *Smith,* 81 F.4th at 1001-02.

"Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Wesby*, 583 U.S. at 63 (simplified).  It "must be settled law .... It is not enough that the rule is suggested by then existing precedent." *Id.* (simplified).  "The rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  This requires a high degree of specificity." *Id.*

///

15

"[C]ourts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Wesby*, 583 U.S. at 63-64 (simplified). "A rule is too general if the unlawfulness of the officer's conduct does not follow immediately from the conclusion that the rule was firmly established." *Id.* at 64 (simplified).

Existing case law with "materially distinguishable" facts is insufficient to constitute "clearly established" law. *Rivas Villegas v. Cortesluna*, 595 U.S. 1, 6 7 (2021); *Spencer*, 117 F.4th at 1138.

"Except in the rare case of an obvious instance of constitutional misconduct" "[p]laintiffs must point to prior case law that articulates a constitutional rule specific enough to alert the[] [officer] in this case that [his] particular conduct was unlawful."[2] *Sharp v. County of Orange*, 871 F.3d 901, 911 (9th Cir. 2017).

"[P]rior precedent must be 'controlling' from the Ninth Circuit or Supreme Court or otherwise be embraced by a 'consensus' of [appellate] courts outside the relevant jurisdiction." *Id.; Spencer*, 117 F.4th at 1142 n.6 ("district court decisions 'are insufficient to create a clearly established right.'").

The Supreme Court requires a plaintiff "'to prove that "precedent on the books" at the time the officials acted "would have made clear to [him] that [his] violated the Constitution."'" *Carley v. Aranas*, 103 F.4th 653, 661 (9th Cir. 2024); *Taylor v. Barkes*, 575 U.S. 822, 827 (2015). "So long as existing case law 'did not preclude' an official from reasonably believing that his or her conduct

---

[2] "[T]he bar for finding such obviousness is quite high." *Mattos v. Agarano*, 661 F.3d 433, 442 (9th Cir. 2011) (en banc). "'Obvious' cases are few and far between," *Sabra v. Maricopa County Cmty. Coll. Dist.*, 44 F.4th 867, 888 (9th Cir. 2022), and "exceedingly rare," *Waid v. County of Lyon*, 87 F.4th 383, 389 (9th Cir. 2023). This is not an "obvious" case.

was lawful, the official has a right to qualified immunity." *Kramer v. Cullinan*, 878 F.3d 1156, 1163 (9th Cir. 2018) (quoting *Lane v. Franks*, 573 U.S. 228, 243 (2014)).

**2. Qualified Immunity Immunizes Silva From Liability On The Fourth Amendment Force Claim**

**a. No Fourth Amendment violation because it was objectively reasonable for Silva to believe Alaniz was pointing a gun at him**

The Fourth Amendment permits "objectively reasonable" force. *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). "[T]he Supreme Court has instructed [courts] to inquire 'whether it would be objectively reasonable for the officer to believe that the amount of force employed was required by the situation he confronted.'" *Hart v. City of Redwood City*, 99 F.4th 543, 549 (9th Cir. 2024). This requires a court to "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." *Id*. (simplified).

"'[T]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'" *Napouk v. L.V. Metro. Police Dep't*, 123 F.4th 906, 2024 U.S. App. LEXIS 31226, at *12 (9th Cir. Dec. 10, 2024). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Hart*, 99 F.4th at 549.

"So when determining whether [Alaniz] posed an immediate threat to Officer [Silva], the perspective of an officer on the scene must be considered." *Id*. "Judges should be cautious about second guessing a police officer's assessment, made on the scene, of the danger presented by a particular situation."

1    *Ryburn v. Huff*, 565 U.S. 469, 477 (2012).  The "peace of a judge's chambers"

2    cannot color the analysis, *Graham*, 490 U.S at 396, and courts are precluded

3    from asking "whether another reasonable, or more reasonable,

4    interpretation of the events can be constructed ... after the fact," *Hunter v.*

5    *Bryant*, 502 U.S. 224, 228 (1991).

6         "The Fourth Amendment standard is reasonableness, and it is reasonable

7    for police to move quickly if delay 'would gravely endanger their lives or the

8    lives of others even when, judged with the benefit of hindsight, the officers may

9    have made 'some mistakes.'  The Constitution is not blind to the fact that police

10   officers are often forced to make split second judgments." *Sheehan*, 575 U.S. at

11   612 (simplified); *see Wilkinson v. Torres*, 610 F.3d 546, 553 (9th Cir. 2010)

12   ("'the Fourth Amendment does not require omniscience,' and absolute certainty

13   of harm need not precede an act of self-protection").

14        Because Silva used deadly force, the inquiry here is "reduce[d] to 'whether

15   the governmental interests at stake were sufficient to justify it.'"  *Hart*, 99 F.4th

16   at 549.  *Graham* "provide[s] three factors for determining the strength of the

17   government's interest: "[1] the severity of the crime at issue, [2] whether the

18   suspect poses an immediate threat to the safety of the officers or others, and [3]

19   whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id.*

20   i.    *Silva reasonably perceived an immediate threat*

21        "The 'most important'" *Graham* factor is "'whether the suspect posed an

22   immediate threat to the safety of the officers or others.'" *Id.; Williams v. City of*

23   *Sparks*, 112 F.4th 635, 643 (9th Cir. 2024); *Estate of Strickland v. Nev. Cty*., 69

24   F.4th 614, 620 (9th Cir. 2023).

25        The "immediacy of the threat" can outweigh all other *Graham* factors,

26   *Estate of Strickland*, 69 F.4th at 620; *Hart*, 99 F.4th at 552, and a court need not

27   consider them if the immediacy of the perceived threat warranted deadly force.

28   ///

1  *See, e.g., Plumhoff v. Rickard*, 572 U.S. 765, 777 (2014) (analyzing only the

2  immediacy of the threat).

3       Deadly force is constitutional when the officer reasonably believes a

4  suspect poses a threat of injury or death to the officer or someone else, *Brosseau*

5  *v. Haugen,* 543 U.S. 194, 197-98 (2004), "*at the moment* when the shots were

6  fired," *Plumhoff*, 572 U.S. at 777 (emphasis added). *See also Gonzalez v. City of*

7  *Anaheim*, 747 F.3d 789, 794 (9th Cir. 2014) ("The key issue in this case is

8  whether a reasonable jury would necessarily find that [the officer] perceived an

9  immediate threat of death or serious physical injury at the time he shot [the

10  suspect] in the head.  That requires us to consider exactly what was happening

11  when the shot was fired."); *Larocca v. City of L.A.*, 2024 U.S. Dist. LEXIS

12  45650, at *19 (C.D. Cal. Mar. 14, 2024) ("when an officer shoots at a suspect,

13  the reasonableness of that action is judged at the moment the shot was fired")

14  (citing *Plumhoff*, 572 U.S. at 777).

15       "[W]hen a suspect points a gun in an officer's direction, 'the Constitution

16  undoubtedly entitles the officer to respond with deadly force.'" *Est. of*

17  *Strickland*, 69 F.4th at 620. "'If the person is armed – *or reasonably suspected of*

18  *being armed* – a furtive movement, harrowing gesture, or serious verbal threat

19  might create an immediate threat.'" *Id.* (emphasis added).

20       Deadly force is "unquestionably reasonable" if a suspect "reaches for"

21  what is believed to be a weapon or makes some "similar threatening gesture.*"*

22  *Cruz v. City of Anaheim*, 765 F.3d 1076, 1079 (9th Cir. 2014).  Like, for

23  example, assuming a "shooter's platform" or getting into a "shooter's stance."

24       Indeed, "[t]he most important question" in this case "is whether [Silva]

25  reasonably perceived that [Alaniz] assumed a threatening or 'shooter's stance.'"

26  *Hyer v. City & Cty. of Honolulu*, 118 F.4th 1044, 1062 (9th Cir. 2024) (quoting

27  *Longoria v. Pinal County*, 873 F.3d 699, 706 07 (9th Cir. 2017)).  "'If [Silva]

28  ///

did, he was entitled to shoot; if he didn't, he wasn't." *Longoria*, 873 F.3d at 707-08 (quoting *Cruz*, 765 F.3d at 1079) (brackets omitted).

"Yes" is the only answer to that dispositive question.

Silva was entitled to shoot Alaniz because every objectively reasonable officer would have feared injury or death from Alaniz and believed deadly force was necessary to eliminate the imminent threat of being shot by Alaniz. And it must not be forgotten that Alaniz forced Silva to "make [a] split-second judgment[]" in "tense, uncertain, and rapidly evolving" circumstances. *Graham,* 400 U.S. at 397.

"[T]he videotape . . . speak[s] for itself," *Scott*, 550 U.S. at 379 n. 5, and is dispositive on what occurred. *Id.* at 378 80.  Alaniz was in a "shooter's stance" as he charged toward Silva after pursuing Van Dragt and ignoring commands. To be sure, Silva had but a fraction of a second to react when Alaniz popped out from behind Van Dragt's car in the "shooter's stance" and the constitution did not require Silva to wait to see if he or Van Dragt would be shot.  *Sheehan*, 575 U.S. at 612; *Wilkinson*, 610 F.3d at 553; *see also Rivera v. Cater*, 2019 U.S. Dist. LEXIS 177424, at *11 (E.D. Cal. Oct. 11, 2019) ("The video ... shows Attaway's arms extended, hands clasped together in front of him, and head cocked between his arms in a manner which would cause any reasonable person, whether a police officer or not, to reasonably fear they were about to be shot.").   .

No doubt parents will argue deadly force was unreasonable because Alaniz didn't have a gun in his hand, despite Alaniz clearly wanting Silva and Van Dragt to think he did.  No other reason exists for getting into a "shooting stance" with an object in his hands pointed at the officers  regardless of what it was.  *See Mattos*, 661 F.3d at 445 (a defiant suspect "bears some responsibility for the escalation" of an incident ultimately resulting in the use of deadly force).  Alaniz was committing "suicide by cop."  Fact 61.

Parents' argument is meritless for two reasons.

First, Silva didn't know Alaniz had something other than a gun in his hands at the moment he fired. *See Graham*, 490 U.S. at 396 (reasonableness determined without "20/20 hindsight"); *Hayes v. Cty. of San Diego*, 736 F.3d 1223, 1232 33 (9th Cir. 2013) ("[W]e can only consider the circumstances of which Deputies King and Geer were aware when they employed deadly force."); *Cruz*, 765 F.3d at 1079 n.3 ("[T]he fact that Cruz did not have a gun on him normally wouldn't factor into the reasonableness analysis because the officers couldn't know what was (or wasn't) underneath Cruz's waistband."); *Wilkinson*, 610 F.3d at 551 ("the critical inquiry is what [the officer] perceived").

Second, Silva's "mistake of fact" doesn't render the deadly force unreasonable because it was objectively reasonable given Alaniz acted like he had a gun and was going to shoot Silva or Van Dragt.  Also, Silva believed someone had shot immediately preceding his use of deadly force and saw Van Dragt react unusually.  *See Cruz,* 765 F.3d at 1079 n.2 ("Plaintiffs have presented no evidence, circumstantial or otherwise, to doubt Officer Brown's account that he reasonably perceived an immediate threat when he heard gunshots that could have been coming from his fellow officers' weapons, a weapon Cruz was firing or both. We therefore affirm summary judgment in favor of Officer Brown."). As the Ninth Circuit recently explained:

> These [use of deadly force] principles apply even when officers are reasonably mistaken about the nature of the threat. 'Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of' an immediate threat, and 'in those situations courts will not hold that they have violated the  Constitution.' *Saucier v. Katz*, 533 U.S. 194, 206 [ ] [ ] (2001). Take the example given by the Court: 'If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, . . . the officer would be justified in using more force than in fact was needed.' Id. at 205. Thus, the Constitution even allows for officer's action that resulted from a reasonable 'mistake of fact.' *Pearson v. Callahan*, 555 U.S. 223, 231 [ ] [ ] (2009). When an officer's 'use of force is based on a mistake of fact, we ask whether a reasonable officer would have or should have accurately perceived that fact.' [Citation].

///

1    *Estate of Strickland*, 69 F.4th at 621; *accord Napouk*, 2024 U.S. App. LEXIS

2    31226, at *13.

3        An extensive and uniform body of case law both within and outside the

4    Ninth Circuit establishes Silva's use of deadly force objectively reasonable even

5    though Alaniz had no gun or weapon in his hands.

6        Indeed, the Ninth Circuit has found deadly force objectively reasonable

7    even when a suspect has nothing in his hands. *Corrales v. Impastato*, 650 F.

8    App'x 540, 541 (9th Cir 2016) (deadly force objectively reasonable when

9    unarmed suspect "pull[ed] his previously concealed hand from his waistband and

10   form[ed] it into a fist with a single, hooked finger extended"). And many more

11   cases exist. *E.g., Napouk*, 2024 U.S. App. LEXIS 31226, at *14 ("Even

12   Plaintiffs describe the object in their complaint as a 'toy sword wrapped in duct

13   tape' and a 'machete shaped instrument.' Put simply, the item objectively looked

14   like a machete, and no rational jury could find Kenton or Gunn's mistake

15   unreasonable."); *Estate of Strickland*, 69 F.4th at 621 ("[W]e are tasked with

16   determining whether the officers reasonably concluded that Strickland was an

17   immediate threat even though he merely possessed a replica gun. In the light

18   most favorable to Strickland, we conclude that the officers' mistaken belief that

19   Strickland possessed a dangerous weapon was reasonable and they were justified

20   in the use of deadly force when he pointed it at them."); *Rodriguez v. Swartz*, 899

21   F.3d 719, 732-33 (9th Cir. 2018), *vacated on other grounds*, 140 S. Ct. 1258

22   (2020) ("For example, if a police officer shot a suspect after the suspect

23   brandished what looked like a gun, the officer's reasonable perception that the

24   suspect was armed would entitle the officer to qualified immunity—even if the

25   'gun' turned out to be a cell phone."); *Barnes v. City of Pasadena*, 508 F. App'x

26   663, 665 (9th Cir. 2013) ("[E]ven if an issue of fact existed about the presence of

27   a gun, the determinative issue was whether the officers reasonably believed

28   Barnes had a gun and posed an immediate threat to safety. The record indicated

that they did.  The enhanced still photos from the patrol car video undisputedly show something in Barnes's hand, and Plaintiffs pointed to no evidence suggesting that the officers did not believe, or should not have believed, it to be a gun.  In light of that belief, the officers used deadly force to ensure their safety. No evidence suggested any other purpose."); *Abuka v. City of El Cajon*, 2019 U.S. Dist. LEXIS 37137, at *19 20 (S.D. Cal. Mar. 7, 2019) (deadly force objectively reasonable when suspect "pulled a metal object from his pocket, and while holding the object in his hands, moved into a 'shooting stance' with his hands pointed at the officer" that turned out to be a vape); *Bowles v. City of Porterville*, 2012 U.S. Dist. LEXIS 71996, at *20 21 (E.D. Cal. May 23, 2012) (deadly force objectively reasonable when suspect turned toward officer with a cologne bottle in his hands extended in front of him), *aff'd*, 571 F. App'x 538, 539 (9th Cir. 2014) (the "[officer] reasonably feared that Bowles was about to shoot him"); *Arian v. City of L.A.,* 2013 U.S. Dist. LEXIS 192420, at *7-8 (C.D. Cal. Apr. 30, 2013) (deadly force objectively reasonable against suspect with a cell phone in his hands because suspect "turned towards Officers . . . and extended his arms outward toward them" holding "a small dark object in his hands [ ] pointed in the direction of Officers" and video reveals "no reasonable juror could find that [suspect's] stance did not resemble that of an individual preparing to fire a gun."), *aff'd*, 622 F. App'x 692, 692 (9th Cir. 2015) ("Arian repeatedly pointed an object that resembled a weapon towards police officers, and the officers had 'probable cause to believe' that Arian 'pose[d] a significant threat of death or serious physical injury' to the officers or to the civilians at the scene.'"); *Hammett v. Paulding Cty*., 875 F.3d 1036, 1051-52 (11th Cir. 2017) ("After refusing to show his hands, [the suspect] moved aggressively toward [the officer] and raised his hands rapidly toward [the officer's] face.  'Non-compliance of this sort supports the conclusion that use of deadly force was reasonable' [Citation].  We acknowledge that here it turned out that [the suspect]

was not armed with a deadly weapon.  Nevertheless, we must view the situation from the perspective of a reasonable officer in [the officers'] position."); *Davidson v. City of Opelika*, 675 F. App'x 955, 959 (11th Cir. 2017) ("the unusual position of the dark object in [the suspect's] outstretched and clasped hands would have led a reasonable officer to believe that [he] was pointing a gun at him"); *Pollard v. City of Columbus*, 780 F.3d 395, 400, 402-03 (6th Cir. 2015) (deadly force objectively reasonable where unarmed suspect "extended his arms and clasped [] his hands into a shooting posture, [and] pointed at the officers"); *Simmonds v. Genesee Cty.*, 682 F.3d 438, 445 (6th Cir. 2012) ("Although 20/20 hindsight now informs us that Kevin was unarmed at the time" he was "brandishing a silver object, and pointed it at the officers" so "all of the information available to the officers at the time they used force constituted probable cause that Kevin 'pose[d] a threat of serious physical harm.' [Citation]."); *Lamont v. New Jersey*, 637 F.3d 177, 179, 183 (3rd Cir. 2011) (officers justified in using deadly force when suspect suddenly pulled his right hand out of his waistband with an object as if drawing a weapon even though object turned out to be a crack pipe); *Slattery v. Rizzo*, 939 F.2d 213, 215-216 (4th Cir. 1991) (officer justified in using deadly force when mistaking beer bottle in the suspect's hands for a weapon); *Varnadore v. Merritt*, 343 F. Supp. 3d 1367, 1376-77 (S.D. Ga. 2018) (deadly force objectively reasonable where "[t]he video shows how the motion of Mr. Foskey's hand swung up from the waist, across his body, and directly toward Deputy Merritt like someone raising a handgun about to fire. Given the surrounding circumstances, an objective officer would be more likely to conclude Mr. Foskey was drawing out a weapon rather than a CD."), *aff'd*, 778 F. App'x 808, 815 (11th Cir. 2019) (district court's conclusion "not altered by the fact that Foskey turned out to be unarmed"); *Hudspeth v. City of Shreveport*, 2006 U.S. Dist. LEXIS 91053, at *48-49 (W.D. La. Dec. 18, 2006) (deadly force objectively reasonable where suspect with a cell

24

phone "brought up both hands with both arms extended in front of him in a universally recognizable shooting stance"), *aff'd*, 270 F. App'x 332, 337 (5th Cir. 2008); *Little v. Smith*, 114 F. Supp. 2d 437, 444-45 (W.D.N.C. 2000) (deadly force objectively reasonable when suspect with an object in his hands took a "shooting stance" and pointed the object at the officer although object turned out to be a dumbbell).

The immediacy of the threat Silva perceived is sufficient by itself, and the analysis could end here. But Silva nonetheless shows how the remaining *Graham* factors favor his use of deadly force.

ii.   *Remaining Graham factors favor Silva*

The remaining factors are the severity of the crime at issue and whether the suspect was actively resisting or trying to avoid arrest. *Graham*, 490 U.S. at 396; *Hart,* 99 F.4th at 549.

The Ninth Circuit "often has 'used the severity of the crime at issue as a proxy for the danger a suspect poses at the time force is applied.'" *Napouk,* 2024 U.S. App. LEXIS 31226, at \*23. Alaniz likely committed assault on a peace officer, Cal. Pen. Code §§ 240, 241(c), which "is a sufficiently serious and dangerous crime." *Id.* That Alaniz didn't have a weapon "has no bearing on the severity of the crime because [Silva] reasonably believed" he did. *Id.* at \*24. Alaniz also ignored commands, Cal. Pen. Code § 148(a), and advanced on the officers, *see Napouk*, 2024 U.S. App. LEXIS 31226, at \*24. Alaniz's mere presence on the highway was also extremely dangerous, having caused two accidents before the officers arrived.

iii.   *Additional factors, if considered, favor Silva*

Although other factors like a suspect's "mental state, the availability of less lethal means, and the lack of an effective warning," "are relevant when evaluating the totality of the circumstances, [citation], they do not overcome the *Graham* factors to prove a constitutional violation where" as here, "all three

*Graham* factors favor the officers' use of force. But even if they could, each weighs in [Silva's] favor in this case." *Napouk*, 2024 U.S. App. LEXIS 31226, *26.

Assuming Alaniz was having a "mental health crisis," Silva's use of deadly force was still objectively reasonable given the immediacy of the perceived threat Alaniz posed. *Sheehan*, 575 U.S. at 617 (noting officers not required to treat mentally ill suspects differently); *Napouk*, 2024 U.S. App. LEXIS 31226, at *26 ("we do not have 'two tracks of excessive force analysis, one for the mentally ill and one for serious criminals'").

"[I]n a case like this one ... where [Alaniz] is brandishing what is reasonably understood to be a lethal weapon and advancing towards the officers, that he was emotionally disturbed does not negate the serious threat he exhibited." *Id.* at *27. "If anything, his mental state and erratic behavior made [Alaniz] more of a threat to the officers because he clearly was not behaving rationally or in a predictable manner ...." *Id.; French v. Pierce Cty.*, 2024 U.S. Dist. LEXIS 94638, at *12-13 (W.D. Wash. May 28, 2024) ("[T]he presence of 'mental illness ... does not reduce the immediate and significant threat a suspect poses.'").

When an officer reasonably believes an immediate and serious threat exists, deadly force is constitutionally used without warning and regardless of potentially less severe alternatives. *Hayes*, 736 F.3d at 1233; *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994); *see Wilkinson*, 610 F.3d at 551 (A reasonable use of force "encompasses a range of conduct, and the availability of a less intrusive alternative will not render conduct unreasonable."); *Lal v. California*, 746 F.3d 1112, 1118 (9th Cir. 2014) ("[E]ven assuming that it might have been possible for the officers to have given [the suspect] a wider berth . . . there is no requirement that such an alternative be explored."). And given the speed at which the incident unfolded, a warning was not feasible. *Nehad v. Browder*, 929

26

1    F.3d 1125, 1137 (9th Cir. 2019) ("We recognize, of course, that it may not

2    always be feasible for an officer to warn a suspect prior to deploying force."); *see*

3    *Smith*, 81 F.4th at 1006-07 (discussing "warning rule").  Nor was some lesser

4    means of force by Silva feasible given the speed of events.

5    **b.    Absence of clearly established law**

6         The Supreme Court has "stressed that the 'specificity' of the ["clearly

7    established"] rule is 'especially important in the Fourth Amendment context,'"

8    *Wesby*, 583 U.S. at 64, because of the "'hazy border between excessive and

9    acceptable force,'" *Monzon v. City of Murrieta*, 978 F.3d 1150, 1162 (9th Cir.

10   2020), and the recognition "that it is sometimes difficult for an officer to

11   determine how the relevant legal doctrine . . . will apply to the factual situation

12   the officer confronts," *Mullenix*, 577 U.S. at 12.

13        No controlling precedent "on the books" existed in May 2022 telling all

14   reasonable officers that Silva's use of deadly force violated the Fourth

15   Amendment under the facts of this case.  Indeed, the case law just cited clearly

16   establishes Silva's use of deadly force constitutionally permissible.

17
     **3.    Qualified Immunity Immunize Silva From Liability On The
             Fourteenth Amendment Loss Of Familial Association Claim**
18

19        "Parents and children have a substantive due process right to a familial

20   relationship free from unwarranted state interference."  *Scott v. Smith*, 109 F.4th

21   1215, 1227 (9th Cir. 2024).  Proving this claim "demands more of such a

22   plaintiff than a Fourth Amendment claim by the victim of an officer's actions."

23   *Ochoa v. City of Mesa*, 26 F.4th 1050, 1056-57 (9th Cir. 2022).  It requires proof

24   that an officer's conduct "'shocks the conscience.'" *Id.* at 1055.

25   **a.    No underlying Fourth Amendment violation**

26        Because Silva didn't violate Alaniz's Fourth Amendment rights, the

27   Fourteenth Amendment loss of familial association claim accordingly fails.

28

*Gauslik v. Perez*, 392 F.3d 1006, 1008 (9th Cir. 2004); *see Schwarz v. Lassen Cnty.*, 628 F. App'x 527, 528 (9th Cir. 2016) ("Recovery for a violation of the right to familial association is generally contingent on the existence of an underlying constitutional violation."); *Ely v. Cnty. of Santa Barbara*, 2021 U.S. Dist. LEXIS 252182, at *21 (C.D. Cal. Nov. 29, 2021) (Gee, J.) (same).

**b.    No Fourteenth Amendment violation because Silva didn't act in the rapidly evolving situation with a purpose to harm Alaniz unrelated to the legitimate law enforcement objective of self-protection**

There is no disputing that about 30 seconds elapsed from Silva's arrival to the use of deadly force, and about five seconds from Alaniz running to the shooting. "[W]here, as here, a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may only be found to shock the conscience if he acts with a purpose to harm unrelated to legitimate law enforcement objectives." *Napouk*, 2024 U.S. App. LEXIS 31226, at *34 (simplified); *see Porter v. Osborn*, 546 F.3d 1131, 1139 (9th Cir. 2008) (purpose to harm standard applied to "five minute altercation" that was "quickly evolving and escalating, prompting repeated split second decisions").

Silva used deadly force for the legitimate law enforcement objective of self-protection or the protection of others. *Ochoa*, 26 F.4th at 1056 (defining legitimate law enforcement objective). Because the test is subjective, *A.D.*, 712 F.3d at 453, Silva's mistaken belief that Alaniz had a gun doesn't alter the conclusion. *See Napouk,* 2024 U.S. App. LEXIS 31226, at *34-35 (finding self-protection legitimate law enforcement objective where officer mistakenly believed suspect had a gun); *Calonge v. City of San Jose*, 2024 U.S. App. LEXIS 13911, at *4 (9th Cir. June 7, 2024) (unpub.) ("Officer Carboni testified that he fired his rifle because he thought Calonge was reaching for the gun in his waistband and might take bystanders hostage. Although Officer Carboni may

have been tragically and unreasonably mistaken, his testimony is facially plausible as to his subjective beliefs, and Ms. Calonge has not offered evidence that contradicts it. Because there is no evidence from which a reasonable jury could conclude that Officer Carboni had a purpose to harm, we conclude that Officer Carboni's actions did not violate the Fourteenth Amendment. He is therefore entitled to qualified immunity on that claim.").

**c.**    **Absence of clearly established law**

Parents must point to controlling precedent existing on May 4, 2022 holding Silva's use of deadly force under the circumstances presented in this case violated *parent's Fourteenth Amendment rights*.  *See Nicholson v. City of L.A.*, 935 F.3d 685, 696 & n.5 (9th Cir. 2019) (Fourth Amendment cases don't satisfy the "clearly established" component of qualified immunity for a Fourteenth Amendment claim.)

No controlling precedent existed.

**B.**    **This Court Should Grant Summary Judgment On The State Law Claims**

**1.**    **Battery Claim Fails Because Silva's Use Of Deadly Force Was Objectively Reasonable Under The Fourth Amendment**

Parents' battery claim is based on excessive force which is "a counterpart to a federal claim of excessive use of force*." Brown v. Ransweiler*, 171 Cal. App. 4th 516, 527 (2009).  "[T]he reasonableness standard applied to state law battery by a peace officer matches the reasonableness standard used for Fourth Amendment excessive force claims."  *Reyes v. City of Santa Ana*, 832 F. App'x 487, 491 (9th Cir. 2020); *accord Avina v. United States*, 681 F.3d 1127, 1131 (9th Cir. 2012); *Murillo v. City of L.A.*, 707 F. Supp. 3d 947, 960 61 (C.D. Cal. 2023).

///

29

1   Because Silva's use of force didn't violate the Fourth Amendment, the

2   battery claim fails.  *See Perez v. City of Fontana*, 2023 U.S. Dist. LEXIS

3   105403, at *38 (C.D. Cal. June 15, 2023) ("Since his excessive force claim fails

4   as a matter of law, his battery claim also fails.")

5   **2.   Bane Act Claim Fails Because No Fourth Amendment Violation And,**

6   **Alternatively, Silva Lacked A Specific Intent To Violate Alaniz's**

7   **Fourth Amendment Rights**

8   Parents' Bane Act claim fails because Silva did not violate Alaniz's Fourth

9   Amendment rights.  *Williamson v. City of Nat'l City*, 23 F.4th 1146, 1155 (9th

10  Cir. 2022) ("California's Bane Act requires proof of an underlying constitutional

11  violation.").

12  Notwithstanding, and assuming a Fourth Amendment violation, parents

13  cannot establish Silva had a "specific intent" to violate Alaniz's rights. *Reese v.*

14  *Cnty of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018).  The evidence

15  establishes neither specific intent to violate nor reckless disregard for Alaniz's

16  Fourth Amendment rights.  *Id.* at 1045.

17  **3.   Negligence Claim Fails Because Silva's Use Of Deadly Force Was**

18  **Objectively Reasonable**

19  Parent's negligence claim is based on negligent use of force, including

20  pre-shooting conduct.  *See* Doc. 1-1, ¶ 73 (a)-(c).  It also asserts theories based

21  on "communication of information during the incident" and failing to "provide

22  appropriate resources to obviously, mental health crisis calls."  *Id.,* ¶ 73(h), (i).

23  These latter claims are direct negligence claims against CHP which are not

24  alleged and don't exist anyway because they are non-statutory.  Cal. Gov. Code §

25  815; *Quigley v. Garden Valley Fire Prot. Dist*., 7 Cal.5th 798, 803 (2019);

26  *Eastburn v. Reg'l Fire Prot. Auth*., 31 Cal.4th 1175, 1183 (2003).  If these claims

27  are somehow applicable to Silva, parents have no evidentiary support for them.

28

1    Thus, the focus is on the force claim.

2        "[P]eace officers have a duty to act reasonably when using deadly force."

3    *Hayes v. Cty. of San Diego*, 57 Cal. 4th 622, 629 (2013).  Except for the

4    reasonableness of pre-shooting tactical conduct in the evaluation of the "totality

5    of circumstances," the reasonableness standard mirrors the Fourth Amendment

6    standard.  *Id.* at 629, 632, 637-39; *see* Cal. Pen. Code, § 835a (deadly force

7    standards); *Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1125-26 (9th

8    Cir. 2021) (explaining use of force negligence analysis); *Koussaya v. City of*

9    *Stockton*, 54 Cal. App. 5th 909, 932-37 (2021) (same).

10       As already explained, Silva's use of deadly force was objectively

11   reasonable.  The question thus becomes whether any "preshooting circumstances

12   might show that an otherwise reasonable use of deadly force was in fact

13   unreasonable."  *Hayes*, 57 Cal. 4th at 630.  Parents have no evidence establishing

14   anything Silva did or didn't do in the 30-second event before using deadly force

15   transforming his objectively reasonable use of force into an unreasonable one.

16   *See Id.* at 632 ("Although preshooting conduct is included in the totality of

17   circumstances, we do not want to suggest that a particular preshooting protocol

18   ... is always required. Law enforcement personnel have a degree of discretion as

19   to how they choose to address a particular situation. Summary judgment is

20   appropriate when the trial court determines that, viewing the facts most favorably

21   to the plaintiff, no reasonable juror could find negligence.").

22                           **CONCLUSION**

23       Though a tragic case, Silva is not liable for Alaniz death.  Silva is entitled

24   to summary judgment on the § 1983 claims based on qualified immunity and is

25   ///

26   ///

27   ///

28   ///

31

entitled to summary judgment on the state law claims because the undisputed material facts demonstrate the absence of liability.

Dated: January 24, 2025                    Dean Gazzo Roistacher LLP


By: */s/ Lee H. Roistacher*
Lee H. Roistacher
Attorneys for Defendants
State of California by and through
California Highway Patrol and
Officer Ramon Silva
Email: lroistacher@deangazzo.com


## CERTIFICATION OF COMPLIANCE

The undersigned, counsel of record for Defendants State of California by and through California Highway Patrol and Officer Ramon Silva, certify that this Motion for Summary Judgment contains 6,994 words, which:

   __X__ complies with the word limit of L.R. 11-6.1.

   _____ complies with the word limit set by court order dated [date].


Dated: January 24, 2025              */s/ Lee H. Roistacher*
Lee H. Roistacher , declarant