1 | Dean Gazzo Roistacher LLP
2 | Lee H. Roistacher, Esq. (SBN 179619)
2 | 440 Stevens Avenue, Suite 100
3 | Solana Beach, CA  92075
3 | Telephone:  (858) 380-4683
4 | Facsimile:  (858) 492-0486
4 | E-mail:  lroistacher@deangazzo.com

5 | Attorneys for Defendants
6 | State of California by and through California Highway Patrol and Officer Ramon Silva

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA KIRKMAN AND CARLOS ALANIZ, INDIVIDUALLY AND AS SUCCESSORS-IN-INTEREST TO JOHN ALANIZ, DECEASED,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF CALIFORNIA; RAMON SILVA; AND DOES 1-10, INCLUSIVE,<br><br>Defendant. | Case No.: 2:23-cv-07532-DMG-SSC<br><br>**SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS AND CONCLUSIONS OF LAW IN SPPORT OF MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS STATE OF CALIFORNIA BY AND THROUGH CALIFORNIA HIGHWAY PATROL AND OFFICER RAMON SILVA**<br><br>Date:     February 28, 2025<br>Time:    2:00 p.m.<br>Dept:     8C<br>Judge:   Hon. Dolly M. Gee<br><br>Complaint Filed: July 28, 2023<br>Trial Date: April 15, 2025 |

Defendants State of California by and through California Highway Patrol and Officer Ramon Silva submit the following statement of undisputed material facts and reference to supporting evidence and conclusions of law in support of their summary judgment motion:

| UNDISPUTED FACT | SUPPORTING EVIDENCE |
|---|---|
| 1. On May 4, 2022, Alanez jumped in front of a big rig truck traveling | Exh. 1: Truck Video: 1:40-1:50. |

1

Case No. 2:23-cv-07532-DMG-SSC

| | |
|---|---|
| around 54 mph on westbound I-105. | Exh. 2:  Acosta Deposition, pp. 7:10-22, 8:8-9:6.<br>Exh. 3:  Burtran Statement, pp. 5:25-7:3, 14:3-24. |
| 2.  Alaniz landed in a traffic lane requiring a driver to stop. | Exh. 1:  Truck Video: 1:50-2:00.<br><br>Exh. 2:  Acosta Deposition, p. 9:7-13. |
| 3.  Alaniz eventually got up and tried to put his head under the wheels of another big rig. | Exh. 1: Truck Video: 4:20-4:55.<br><br>Exh. 2: Acosta Deposition, pp. 15:20-16:25. |
| 4.  Someone called 911 around 11:18 a.m. to report the incident. | Exh. 2:  Acosta Deposition, p. 10:23-11:10.<br><br>Exh. 3:  Burtran Statement, p. 20:12-21:9.<br><br>Exh. 4:  911 Transcript, pp. 1-20.<br><br>Exh. 5:  911 Recordings: 0:00-20:55. |
| 5.  Starting around 11:20 a.m., information was dispatched by CHP regarding the location and incident. | Exh. 6:  Incident Log, p. .3<br><br>Exh. 7:  Van Dragt Deposition, pp. 9:1-7, 11:11-12:3.<br><br>Exh. 8:  Silva Deposition, pp. 22:19-24:1.<br><br>Exh. 9:  Silva DOJ Statement, pp. 10:1-11:25, 19:6-20:6.<br><br>Exh. 10:  Dispatch Transcript, pp. 2-9.<br><br>Exh. 11:  Dispatch Recordings: 0:00-11:46. |
| 6.  Alaniz eventually walked down the | Exh. 1:  Truck Video: 4:55-6:15. |

| | |
|---|---|
| shoulder with a witness following fearing Alaniz would try to kill himself by jumping in front of another car. | Exh. 2: Acosta Deposition, pp. 9:4-10:22, 11:19-22.<br><br>Exh. 4: 911 Transcript, pp. 1-20.<br><br>Exh. 5: 911 Recordings: 0:00-20:55. |
| 7. Alaniz pushed the driver aside and jumped in front of another truck. | Exh. 2: Acosta Deposition, pp. 11:19-12:11, 12:25-13:16, 14:12-14.<br><br>Exh. 12: Verdugo Deposition, pp, 8:3-9:5. |
| 8. Alaniz charged at the truck striking it with his head, breaking the front grill and denting the hood. | Exh. 12: Verdugo Deposition, pp. 12:17-14:12.<br><br>Exh. 13: Truck Photo. |
| 9. Alaniz got up and continued to walk down westbound I-105 where he got stuck by a van. | Exh. 2: Acosta Deposition, pp. 13:20-14:17.<br><br>Exh. 12: Verdugo Deposition, pp. 8:20-23, 14:13-15:1. |
| 10. Alaniz ignored the witness and appeared to look for cars to jump in front of. | Exh. 2: Acosta Deposition, p. 17:4-16. |
| 11. The witness described Alaniz as "full of adrenalin" and "wanting to kill himself." | Exh. 2: Acosta Deposition, pp. 17-22-18:9. |
| 12. Officers Silva arrived on scene around 11:31 a.m. | Exh. 6: Incident Log, p. 4([63]).<br><br>Exh. 10: Dispatch Transcript, pp. 9-10.<br><br>Exh. 11: Dispatch Recordings: 12:12-12:37. |

| | |
|---|---|
| | Exh. 14: BWC: 6:20-6:40. |
| | Exh. 19: Blake Video File: 6:20-6:40. |
| 13. Silva had previously requested air support for assistance. | Exh. 9: Silva DOJ Statement, pp. 20:18-22:12. |
| 14. Silva described the scene as "chaotic", "tense" and "uncertain." | Exh. 9: Silva DOJ Statement, pp. 12:5-13:12, 24:14-25:6. |
| 15. Silva was concerned. | Exh. 9: Silva DOJ Statement, pp. 19:25-20:17. |
| 16. Silva reported to dispatch that Alaniz had his hands in his pocket. | Exh. 6: Incident Log, p. 4 ([64]). |
| | Exh. 9: Silva DOJ Statement, pp. 13:13-18, 14:24-15:4, 5:22-24. |
| | Exh. 10: Dispatch Transcript, p. 12. |
| | Exh. 11: Dispatch Recordings: 13:20-13:42. |
| | Exh. 14: BWC: 6:40-6:45. |
| | Exh. 19: Blake Video File: 6:40-6:45. |
| | Exh. 20: Blake Video File: 0:00-0:12. |
| 17. Alaniz was between 50-100 feet from Silva at that point. | Exh. 9: Silva DOJ Statement, p. 25:7-21. |
| 18. Silva planned on waiting for back up. | Exh. 9: Silva DOJ Statement, pp. 13:18-21, 14:24-15:4. |
| 19. Silva's plan was to secure Alaniz and remove him from the roadway. | Exh. 9: Silva DOJ Statement, pp. 13:24-14:3. |
| 20. Van Dragt arrived in his patrol car around 20-30 seconds after Silva. | Exh. 8: Silva Deposition, p. 22:11-18. |

| | |
|---|---|
| | Exh. 6: Incident Log, p. 4 ([65]).<br><br>Exh. 7: Van Dragt Deposition, pp. 9:1-23, 11:11-23.<br><br>Exh. 14: BWC: 6:50-6:55.<br><br>Exh. 19: Blake Video File: 6:50-6:55. |
| 21. Van Dragt positioned his vehcile at an angle to the shoulder between Alaniz and Silva, about 10-15 feet in front of Silva and in his line of sight. | Exh. 9: Silva DOJ Statement, pp. 14:4-20 32:18-24.<br><br>Exh. 8: Silva Deposition, pp. 32:16-33:1, 35:14-36:12.<br><br>Exh. 14: BWC: 6:50-7:00.<br><br>Exh. 18: Blake Video File: 0:00-0:10.<br><br>Exh. 19: Blake Video File: 6:50-7:00.<br><br>Exh. 20: Blake Video File: 0:00-0:12. |
| 22. Van Dragt's plan was to secure and remove Alaniz from the roadway. | Exh. 7: Van Dragt Deposition, p.16:5-15. |
| 23. Van Dragt got out of his car and saw Alaniz standing on the shoulder with his hands in his pockets. | Exh. 7: Van Dragt Deposition, pp. 17:9-18:3, 20:10-14.<br><br>Exh. 14: BWC: 6:55-7:00. |
| 24. Van Dragt believed Alaniz was a potential threat. | Exh. 15: Van Dragt CHP Statement, pp. 12:19-13:6. |
| 25. Van Dragt had unholstered his gun and moved toward the back of his car toward Alaniz. | Exh. 8: Silva Deposition, pp. 36:13-22, 37:9-13.<br><br>Exh. 14: BWC: 6:55-7:00.<br><br>Exh. 19: Blake Video File: 6:55-7:00. |

|  | Exh. 20: Blake Video File: 0:00-0:12. |
|---|---|
| 26. Van Dragt ordered Alaniz to "let me see your hands." | Exh. 7: Van Dragt Deposition, pp. 20:25-22:5.<br>Exh. 17: MVARS: 7:00-7:03.<br>Exh. 18: Blake Video File: 0:15-0:18. |
| 27. Alaniz initially complied but then put his hands back into his pockets. | Exh. 8: Silva Deposition, p. 39:6-10, 18-22.<br>Exh. 7: Van Dragt Deposition, pp. 20:25-22:5. |
| 28. Silva unholstered his gun. | Exh. 8: Silva Deposition, p. 65:13-15.<br>Exh. 9: Silva DOJ Statement, pp. 14:24-15:9. |
| 29. Silva told Alaniz to "show his hands." | Exh. 8: Silva Deposition, pp. 40:19-41:13, 65:11-18.<br>Exh. 9: Silva DOJ Statement, pp. 15:10-15, 50:11-19.<br>Exh. 14: BWC: 6:55-7:00. |
| 30. Alaniz immediately started running at Van Dragt while removing an object from his pocket and getting into a "shooting platform" as Van Dragt retreated toward the front of his car away from Alaniz. | Exh. 2: Acosta Deposition, pp. 21:11-22:5.<br>Exh. 7: Van Dragt Deposition, pp. 22:21-24:6.<br>Exh. 8: Silva Deposition, pp. 41:20-42:10, 42:18-43:11.<br>Exh. 9: Silva DOJ Statement, p. 15:4-20.<br>Exh. 14: BWC: 6:57-7:04. |

|  |  |
|---|---|
|  | Exh. 19:  Blake Video File: 6:57-7:04.<br><br>Exh. 20:  Blake Video File: 0:00-0:12.<br><br>Exh. 21:  Blake PDF File.<br><br>Exh. 22:  Blake PDF File. |
| 31.  Silva believed he saw a "the barrel of a gun" or a "cylindrical silver thing" in Alaniz's hands. | Exh. 8:  Silva Deposition, pp. 58:17-20, 60:8-13 67:19.<br><br>Exh. 9:  Silva DOJ Statement, pp. 15:21-16:1, 28:21-29:13.<br><br>Exh. 16:  Silva CHP Statement, pp. 19:23-20:6.<br><br>Exh. 30:  Photo of Vape Pen |
| 32.  Silva feared for Van Dragt's life. | Exh. 9:  Silva DOJ Statement, pp. 25:22-27:12, 29:14-23.<br><br>Exh. 16:  Silva CHP Statement, pp. 16:4-12, 17-24. |
| 33.  Alaniz and Van Dragt were about 10-12 feet from each other. | Exh. 9:  Silva DOJ Statement, p. 27:13-22. |
| 34.  Van Dragt did not know if Alaniz was pointing a gun or knife at him but could not confirm it was a gun. | Exh. 7:  Van Dragt Deposition, pp. 24:15-17, 26:23-27:15, 46:13-18.<br><br>Exh. 15:  Van Dragt CHP Statement, p. 15:17-16:7. |
| 35.  Because Van Dragt couldn't positively recognize the object as a gun, he did not use deadly force. | Exh. 7:  Van Dragt Deposition, pp. 24:7-21, 26:23-28:11, 36:15-22. |
| 36.  Van Dragt still feared injury or death from Alaniz. | Exh. 15:  Van Dragt CHP Statement, p. 16:15-23. |

7

| | | |
|---|---|---|
| | 37. Silva momentarily lost sight of Alaniz behind Van Dragt's car. | Exh. 8: Silva Deposition, pp. 43:12-44:4, 65:25-66:10, 66:19-67:2.<br><br>Exh. 9: Silva DOJ Statement, pp. 15:21-16:3, 31:13-32:9;<br><br>Exh. 14: BWC: 7:02-7:04.<br><br>Exh. 16: Silva CHP Statement, pp. 16:25-17:20.<br><br>Exh. 19: Blake Video File: 7:02-7:04.<br><br>Exh. 20: Blake Video File: 0:04-0:06. |
| | 38. Silva feared for Van Dragt's life and his own. | Exh. 9: Silva DOJ Statement, pp. 15:21-17:15, 29:20-23, 31:13-32:8, 32:25-33:9.<br><br>Exh. 16: Silva CHP Statement, p. 17:21-23. |
| | 39. Silva's focus was on where Alaniz would next appear right in front of him. | Exh. 9: Silva DOJ Statement, pp. 32:25-33:9. |
| | 40. Van Dragt thought Alaniz was going to attack him. | Exh. 7: Van Dragt Deposition, pp. 24:4-21, 39:12-14. |
| | 41. Van Dragt retreated toward the front of his car away from Alaniz while holstering his gun and drawing his Taser. | Exh. 7: Van Dragt Deposition, pp. 37:4-11; 38:2-16.<br><br>Exh. 8 - Silva Deposition, p. 44:8-13.<br><br>Exh. 14: BWC: 6:57-7:04.<br><br>Exh. 19: Blake Video File: 6:57-7:04.<br><br>Exh. 20: Blake Video File: 0:00-0:05. |

| | |
|---|---|
| 42. Van Dragt ordered Alaniz to get on the ground. | Exh. 2 - Acosta Deposition, pp. 20:18-21:10.<br><br>Exh. 15 - Van Dragt Deposition, p. 39:10-14.<br><br>Exh. 17 - MVARS: 7:00-7:07.<br><br>Exh. 18: Blake Video File: 0:12-0:19.<br><br>Exh. 20: Blake Video File: 0:00-0:07. |
| 43. Van Dragt fired the Taser when Alaniz was 3-5 feet away from him as he was retreating around his car. | Exh. 7: Van Dragt Deposition, 36:23-37:1, 37:17-39:14, 52:14-17.<br><br>Exh. 14: BWC: 7:04.<br><br>Exh. 17: MVARS: 7:07-7:09.<br><br>Exh. 18: Blake Video File: 0:18-0:22.<br><br>Exh. 19: Blake Video File: 7:04. |
| 44. Van Dragt did not hear gunshots before deploying his Taser. | Exh. 7: Van Dragt Deposition, p. 39:23-25. |
| 45. Silva heard what he thought was a gunshot from the direction of Van Dragt and Alaniz and saw Van Dragt to a "weird side step thing." | Exh. 8: Silva Deposition, pp. 51:1-52:9.<br><br>Exh. 9: Silva DOJ Statement, p. 17:18-23. |
| 46. A Taser deployment can sound like a gunshot and can be difficult to distinguish. | Exh. 8: Silva Deposition, pp. 51:1-52:3.<br><br>Exh. 7: Van Dragt Deposition, p. 42:3-23. |
| 47. Silva did not know Van Dragt transitioned to a Taser. | Exh. 8: Silva Deposition, p. 50:23-25. |

| | | |
|---|---|---|
| 1 2 3 | 48. Van Dragt did not know if the Taser darts hit Alaniz because he deployed it "on the move." | Exh. 7: Van Dragt Deposition, p. 44:6-11. |
| 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 | 49. Alaniz came around the corner of Van Dragt's car in a "shooter's stance" pointing his outstretched arms with hands together while moving toward the officers. | Exh. 8: Silva Deposition, pp. 13:22-14:1, 51:1-5, 52:4-23.<br><br>Exh. 9: Silva DOJ Statement, pp. 17:13-18:5, 35:7-36:7, 39:1-18.<br><br>Exh. 14: BWC: 7:02-7:04.<br><br>Exh. 16: Silva CHP Statement, pp. 17:24-18:15.<br><br>Exh. 19: Blake Video File: 7:02-7:04.<br><br>Exh. 20: Blake Video File: 0:04-0:06.<br><br>Exh. 23: Blake PDF File.<br><br>Exh. 24: Blake PDF File.<br><br>Exh. 25: Zhou AG Statement, pp. 4:20-25.<br><br>Exh. 26: Horbino AG Statement, pp. 2:23-3:9, 5:9-16, 8:19-22. |
| 21 22 23 24 25 26 27 28 | 50. Believing Alaniz had a gun and was a threat, Silva used deadly force against Alaniz. | Exh. 8: Silva Deposition, pp. 58:17-20, 60:8-13.<br><br>Exh. 9 - Silva DOJ Statement, pp. 15:21-16:1, 28:21-29:13, 43:16-22, 44:13-45:3.<br><br>Exh. 14: BWC: 7:04-7:06.<br><br>Exh. 16: Silva CHP Statement, pp. 19:23-20:6. |

| | |
|---|---|
| | Exh. 18:  Blake Video File: 0:15-0:22. |
| | Exh. 19:  Blake Video File: 7:04-7:06. |
| | Exh. 20:  Blake Video File: 0:00-0:12. |
| | Exh. 23:  Blake PDF File. |
| | Exh. 24:  Blake PDF File. |
| 51.  When Silva fired his gun, he was about five feet from Alaniz who was moving forward. | Exh. 8:  Silva Deposition, pp. 66:19-67:1. |
| | Exh. 14:  BWC: 7:04-7:06. |
| | Exh. 19:  Blake Video File: 7:04-7:06. |
| | Exh. 20:  Blake Video File: 0:00-0:12. |
| | Exh. 23:  Blake PDF File. |
| | Exh. 24:  Blake PDF File. |
| 52.  Silva thought he was going to get shot if he did not use deadly force. | Exh. 9:  Silva DOJ Statement, p. 45:4-8. |
| 53.  Silva's intent when he fired was to neutralize a lethal threat. | Exh. 9:  Silva DOJ Statement, p. 17:18-23. |
| 54.  Silva did not believe he had any other options. | Exh. 9:  Silva DOJ Statement, pp. 33:10-35:6, 48:20-49:15. |
| 55.  Van Dragt reported "shots fired" around 11:32 a.m. | Exh. 6:  Incident Log, p. 4([67]). |
| | Exh. 8:  Silva Deposition, p. 73:13-15. |
| | Exh. 10:  Dispatch Transcript, p. 10. |
| | Exh. 11:  Dispatch Recordings: 13:52-15:05. |
| | Exh. 17:  MVARS: 7:12-7:14. |

| | |
|---|---|
| 56. About 30 seconds elapsed between Silva's arrival (stopping) and the shooting. | Exh. 14: BWC: 6:35-7:04.<br><br>Exh. 19: Blake Video File: 6:35-7:04. |
| 57. Officers provided Alaniz with medical care for about 4 minutes until the fire department arrived and took over at 11:36 a.m. | Exh. 6: Incident Log, p. 4 ([69-85]).<br><br>Exh. 7: Van Dragt Deposition, pp. 54:2-12, 54:21-55:2.<br><br>Exh. 8: Silva Deposition, p. 27:17-23.<br><br>Exh. 10: Dispatch Transcript, p. 14.<br><br>Exh. 11: Dispatch Recordings: 19:57-20:13.<br><br>Exh. 27: LA County Records.<br><br>Exh. 28: McCormick Records. |
| 58. Paramedics took Alaniz to the hospital where he was pronounced dead at 12:08 p.m. | Exh. 27: LA County Records.<br><br>Exh. 28: McCormick Records. |
| 59. An open eyeglass case holding a glass pipe was found at the scene that Dragt believes was in Alaniz' hands | Exh. 7: Van Dragt Deposition, pp. 58:24-61:10 and exhibits 3-5 to his deposition.<br><br>Exhs. 29, 31-35. |
| 60. A black vape pen was also found at the scene. | Exhs. 29, 30. |
| 61. Plaintiffs' expert concludes that Alaniz was intent on committing "suicide by cop", which is where "a suicidal individual deliberately behaves in a threatening manner with the intent to provide a lethal response from a law enforcement officer to end their own life." | Exh. 36: DeFoe Rule 26 Report Excerpt. |

**CONCLUSIONS OF LAW**

Defendant Ramon Silva is entitled to qualified immunity on parents' first claim under 42 U.S.C. § 1983 asserting a Fourth Amendment violation on Alaniz's behalf because Silva's use of deadly force was objectively reasonable.

Defendant Ramon Silva is entitled to qualified immunity on parents' first claim under 42 U.S.C. § 1983 asserting a Fourth Amendment violation on Alaniz's behalf because no "clearly established" law existed on May 4, 2022 putting all reasonable law enforcement officers on clear notice that Silva's use of deadly force was unconstitutional under the specific circumstances confronting Silva.

Defendant Ramon Silva is entitled to qualified immunity on parents' third claim under 42 U.S.C. § 1983 asserting a violation of their Fourteenth Amendment rights to familial association with Alaniz because Silva did not violate Alaniz's Fourth Amendment rights as his use of deadly force was objectively reasonable.

Defendant Ramon Silva is entitled to qualified immunity on parents' third claim under 42 U.S.C. § 1983 asserting a violation of their Fourteenth Amendment rights to familial association with Alaniz because Silva did not act with an intent to harm Alaniz unrelated to a legitimate law enforcement activity.

Defendant Ramon Silva is entitled to qualified immunity on parents' third claim under 42 U.S.C. § 1983 asserting a violation of their Fourteenth Amendment rights to familial association with Alaniz because no "clearly established" law existed on May 4, 2022 putting all reasonable law enforcement officers on clear notice that Silva's use of deadly force against Alaniz under the circumstances confronting Silva violated parent's Fourteenth Amendment rights.

Defendants Ramon Silva and California Highway Patrol are entitled to judgment on parents' fourth claim for battery under California law because Silva's use of deadly force against Alaniz was objectively reasonable.

Defendants Ramon Silva and California Highway Patrol are entitled to judgment on parents' fifth claim negligence under California law because Silva's

13

use of deadly force was objectively reasonable under the totality of circumstances and no evidence exists to support any other alleged theory of negligence liability.

Defendants Ramon Silva and California Highway Patrol are entitled to judgment on parents' sixth claim under California's Bane Act because Silva did not violate Alaniz's Fourth Amendment rights.

Defendants Ramon Silva and California Highway Patrol are entitled to judgment on parents' sixth claim under California's Bane Act because Silva did not have a specific intent to violate Alaniz's Fourth Amendment rights.

Dated: January 24, 2025                    Dean Gazzo Roistacher LLP

                                By: */s/ Lee H. Roistacher*
                                    Lee H. Roistacher
                                    Attorneys for Defendants
                                    State of California by and through
                                    California Highway Patrol and
                                    Officer Ramon Silva
                                    Email: lroistacher@deangazzo.com