Dean Gazzo Roistacher LLP
Lee H. Roistacher, Esq. (SBN 179619)
440 Stevens Avenue, Suite 100
Solana Beach, CA 92075
Telephone: (858) 380-4683
Facsimile: (858) 492-0486
E-mail: lroistacher@deangazzo.com

Attorneys for Defendants
State of California by and through California Highway Patrol and Officer Ramon Silva

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SANDRA KIRKMAN AND CARLOS ALANIZ, INDIVIDUALLY AND AS SUCCESSORS-IN-INTEREST TO JOHN ALANIZ, DECEASED,

Plaintiff,

v.

STATE OF CALIFORNIA; RAMON SILVA; AND DOES 1-10, INCLUSIVE,

Defendant.

Case No.: 2:23-cv-07532-DMG-SSC

**REPLY OF DEFENDANTS STATE OF CALIFORNIA BY AND THROUGH CALIFORNIA HIGHWAY PATROL AND OFFICER RAMON SILVA TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

Date: February 28, 2025
Time: 2:00 p.m.
Courtroom: 8C
Judge: Hon. Dolly M. Gee

Complaint Filed: July 28, 2023
Trial Date: April 15, 2025

///

///

///

///

///

///

///

///

# TABLE OF CONTENTS

Page


INTRODUCTION ........ 6

ARGUMENT ........ 6

- A. No Genuine Issue Of Material Fact Exists Precluding Summary Judgment ........ 6
- B. Qualified Immunity Bars Parent's 42 U.S.C. § 1983 Claims Against Him And Entitles Him To Summary Judgment On Them ........ 11
  - 1. Fourth Amendment Claim ........ 11
    - a. No Fourth Amendment Violation ........ 12
      - i. Silva reasonably mistakenly believed Alaniz was an imminent threat of death or serious harm and no reasonable juror could conclude otherwise ........ 12
      - ii. Remaining Graham factors ........ 14
      - iii. Other factors ........ 14
- C. Absence of clearly established law ........ 14
  - 1. Fourteenth Amendment Claim ........ 17
- D. Officer Silva And The State Are Entitled To Summary Judgment On Parents' State Law Claims ........ 18

CONCLUSION ........ 19

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A. K. H. v. City of Tustin*
837 F.3d 1005 (9th Cir. 2016)....15

*Abuka v. City of El Cajon*
2019 U.S. Dist. LEXIS 37137 (S.D. Cal. Mar. 7, 2019)....11

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986)....6, 8

*Barnes v. City of Pasadena*
508 F. App'x 663 (9th Cir. 2013)....11, 12

*Brosseau v. Haugen*
543 U.S. 194 (2004)....12

*Carley v. Aranas*
103 F.4th 653 (9th Cir. 2024)....16

*City & Cty. of S.F. v. Sheehan*
575 U.S. 600 (2015)....14

*Collender v. City of Brea*
605 F. App'x 624 (9th Cir. 2015)....16

*Deorle v. Rutherford*
272 F.3d 1272 (9th Cir. 2001)....15

*Espinosa v. City & Cty. of S.F.*
598 F.3d 528 (9th Cir. 2010)....15

*Est. of Ali Hassan v. Mun.*
2024 U.S. App. LEXIS 12296 (9th Cir. May 22, 2024)....9

*Estate of Strickland v. Nev. Cty.*
69 F.4th 614 (9th Cir. 2023)....12

*F.C., III v. Cty. of Los Angeles*
2011 U.S. Dist. LEXIS 160963 (C.D. Cal. Sept. 13, 2011)....18

*Ford v. Ramirez-Palmer*
301 F.3d 1043 (9th Cir. 2002)....15

*Garcia v. Cty. of Napa*
2023 U.S. Dist. LEXIS 12323 (N.D. Cal. Jan. 17, 2023)....16

*Gonzalez v. City of Anaheim*
747 F.3d 789 (9th Cir. 2014)....11

*Hyer v. City & Cty. of Honolulu*
118 F.4th 1044 (9th Cir. 2024)....13

TABLE OF AUTHORITIES (CONTINUED)

Page(s)

**Cases**

*Jenkins v. Cty. of Riverside*
398 F.3d 1093 (9th Cir. 2005)....................17

*John-Charles v. California*
646 F.3d 1243 (9th Cir. 2011)....................18

*Kisela v. Hughes*
584 U.S. 100 (2018)....................16

*Kramer v. Cullinan*
878 F.3d 1156 (9th Cir. 2018)....................16

*Lane v. Franks*
573 U.S. 228 (2014)....................17

*Longoria v. Pinal County*
873 F.3d 699 (9th Cir. 2017)....................8, 13, 15

*Neal v. City of Fresno*
2015 U.S. Dist. LEXIS 30639 (E.D. Cal. Mar. 11, 2015)....................12

*Nehad v. Browder*
929 F.3d 1125 (9th Cir. 2019)....................17

*Newmaker v. City of Fortuna*
842 F.3d 1108 (9th Cir. 2016)....................8

*O.S.C. Corp. v. Apple Computer, Inc.*
792 F.2d 1464 (9th Cir. 1986)....................6

*Plumhoff v. Rickard*
572 U.S. 765 (2014)....................8, 12

*Pro-Com Prods. v. King's Express LA, Inc.*,
2020 U.S. Dist. LEXIS 60540 (C.D. Cal. Feb. 13, 2020)....................17

*Ramirez v. Cty. of San Diego*
2009 U.S. Dist. LEXIS 32363 (S.D. Cal. Apr. 15, 2009)....................15, 18

*Reese v. City of Sacramento*
888 F.3d 1030 (9th Cir. 2018)....................18, 19

*Rico v. Ducart*
980 F.3d 1292 (9th Cir. 2020)....................16

*Rivas Villegas v. Cortesluna*
595 U.S. 1 (2021)....................16

*Rivera v. Cater*
2019 U.S. Dist. LEXIS 177424 (E.D. Cal. Oct. 11, 2019)....................13

TABLE OF AUTHORITIES (CONTINUED)

Page(s)

**Cases**

*Sabbe v. Wash. Cty. Bd. of Comm'rs*
84 F.4th 807 (9th Cir. 2023)....................8

*Saucier v. Katz*
533 U.S. 194 (2001)....................15

*Shafer v. Cty. of Santa Barbara*
868 F.3d 1110 (9th Cir. 2017)....................12

*Sinatro v. Barilla Am., Inc.*
2024 U.S. Dist. LEXIS 155797 (N.D. Cal. Aug. 29, 2024)....................18

*Stern v. Does*,
978 F. Supp. 2d 1031 (C.D. Cal. 2011)....................6

*United States ex rel. Hart v. McKesson Corp.*
96 F.4th 145 (2d Cir. 2024)....................14, 15, 16

*Villiarimo v. Aloha Island Air, Inc.*
281 F.3d 1054 (9th Cir. 2002)....................6

*Vos v. City of Newport Beach*
892 F.3d 1024 (9th Cir. 2018)....................15, 16

*Waid v. Cty. of Lyon*
87 F.4th 383 (9th Cir. 2023)....................14

*Wallace v. City of Fresno*
2022 U.S. Dist. LEXIS 104641 (E.D. Cal. June 10, 2022)....................9

*Weiss Residential Research LLC v. Experian Info. Sols.*
2020 U.S. Dist. LEXIS 210760 (C.D. Cal. Oct. 15, 2020)....................18

*White v. Pauly*
580 U.S. 73 (2017)....................15

*Wilkinson v. Torres*
610 F.3d 546 (9th Cir. 2010)....................14

*Zion v. Cty. of Orange*
874 F.3d 1072 (9th Cir. 2017)....................15

**Statutes**

42 U.S.C. § 1983....................11

## INTRODUCTION

Seeking to avoid summary judgment, plaintiffs ("parents") attempt to create genuine issues of material fact where none exist. Parents rely not on actual evidence but on suppositions, arguments and unreasonable inferences. No material evidence is in dispute. Alaniz's actions demonstrate he wanted Officer Silva to believe he had a gun and was going to shoot him. Silva accordingly responded in an objectively reasonable manner with deadly force. This Court can make that conclusion as a matter of law because no reasonable juror could conclude otherwise. None of parents' claims survive summary judgment.

## ARGUMENT

### A. No Genuine Issue Of Material Fact Exists Precluding Summary Judgment

Parents' opposition purports to identify genuine issues of material fact they believe preclude granting summary judgment. *See* Doc. 70, p. 21:10-20. There are none. *See Stern v. Does*, 978 F.Supp.2d 1031, 1037 (C.D. Cal. 2011) ("Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' *Id.*").

Indeed, parents fail to dispute any of Silva's facts with evidence and parents' additional facts are either unsupported by the cited evidence, immaterial or require reaching unreasonable inferences. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 n.10 (9th Cir. 2002) ("At summary judgment, this court need not draw all possible inferences in Harvest's favor, but only all reasonable ones. *O.S.C. Corp. v. Apple Computer, Inc.*, 792 F.2d 1464, 1466-67 (9th Cir. 1986) ('We scrutinize the *evidence* and *reasonable inferences* to determine whether there is sufficient probative evidence to permit

a finding in favor of the opposing party based on more than mere speculation, conjecture, or fantasy.') (emphasis added).").

Moreover, parents weave purported facts into their arguments that simply do not exist.

Parents argue that "Silva's claim that he saw a gun in Alaniz's hands" is disputed (Doc. 70, p. 14:15) and, even if he did, his mistaken perception was unreasonable. *Id.*, pp. 14-17. The argument is a strawman.

The issue is not whether Silva definitively *saw* a gun in Alaniz's hands, and indeed Silva only says he *believed* he saw something cylindrical in Alaniz's hands that resembled the barrel of a gun. The issue is, accordingly, whether Silva's admittedly mistaken belief that Alaniz had a gun was objectively reasonable.

That Officer Van Dragt, who was closer to Alaniz than Silva and was viewing him from an entirely different perspective, believed the object appeared too large to be a gun does not meaningfully impact the reasonableness of Silva's belief in the split-second Silva had to perceive and react to Alaniz's obviously aggressive and threatening conduct.[1]

And, for various reasons, that witnesses did not see anything in Alaniz's hands does not undermine what Silva believed he saw. These witnesses were in different positions than Silva. Moreover, all they say is that they didn't see anything in Alaniz's hands, which is not surprising because he had his hands clasped together thus obscuring the object in his hands.

Likewise, Silva questioning what Alaniz had in his hands immediately after the shooting – an obviously stressful incident occurring extremely fast --

---

[1] Parents make much of Van Dragt's reference to a "subway sandwich." Van Dragt was very clearly not saying it looked like Alaniz was waiving a sandwich around but used "subway sandwich" as a comparison to the width of the unknown object in Alaniz's hands that still "could have been a gun." *See* Exhibit 7, p. 24:1-21 (Van Dragt Deposition).

does not diminish the reasonable, albeit mistaken belief, that Alaniz may have had a gun given Alaniz was undisputedly in a "shooter's stance."

Though parents argue there is a genuine issue of material fact regarding whether Silva saw Alaniz in a "shooter's stance," it is not so. Silva said he saw Alaniz in a "shooters stance" as Alaniz emerged from behind Officer Van Dragt's car, and parents submit no evidence disputing this. Parents attack Silva's credibility on his observation, but this Court does not engage in a credibility assessment in ruling on summary judgment. *Anderson*, 477 U.S. at 255. And Silva's credibility is not "'genuinely in doubt'" but rather "internally consistent and consistent with other known facts." *Sabbe v. Wash. Cty. Bd. of Comm'rs*, 84 F.4th 807, 828-29 (9th Cir. 2023) (distinguishing *Newmaker v. City of Fortuna*, 842 F.3d 1108 (9th Cir. 2016)).

Indeed, Officer Van Dragt saw Alaniz in a "shooter's platform" and independent witnesses also saw Alaniz with his arms outstretched in front of him with his hands together. Parents offer no evidence disputing this. Additionally, the BWC and the still frames from the BWC conclusively establish Alaniz in a "shooter's stance" right "at the moment" Silva fired. *Plumhoff v. Rickard*, 572 U.S. 765, 777 (2014).

Relying on *Longoria v. Pinal County*, 873 F.3d 699 (9th Cir. 2017), parents take issue with Silva's use of the still frames to show Alaniz in a shooter's stance but they rely on the same still frames to argue a factual dispute exists as to whether Alaniz was still in a shooter's stance when Silva fired his first shot less than a half a second after Alaniz came out from behind Van Dragt's car.[2] *See* Doc. 70, pp. 18:24-19:17. Parents cannot have it both ways. Regardless, *Longoria* does not categorically preclude this Court from relying on

---

[2] Notably, Silva had not seen any still shots from the BWC before giving his statements or being deposed. Exhibit 38, p. 6:22-24 (Silva Deposition).

the still frames, especially because they are consistent with the BWC. 873 F.3d at 705-06; *see Est. of Ali Hassan v. Mun.*, 2024 U.S. App. LEXIS 12296, at *2 (9th Cir. May 22, 2024) (unpub.) ("The district court did not err in relying on the compilation of still frames in granting summary judgment. The still frames are consistent with the video recordings of the event, so Plaintiffs-Appellants have not identified a genuine dispute of material fact."); *compare Wallace v. City of Fresno*, 2022 U.S. Dist. LEXIS 104641, at *21 (E.D. Cal. June 10, 2022) ("Martinez contends that he struck Wallace because Wallace took a fighting stance, made a fist/closed his hand, and then struck Martinez in the face. However, the video in real time does not clearly depict this, nor can the Court say that the individual still frames definitively establish such aggressive behavior by Wallace.").

Parents argue genuine issues of material fact exist regarding whether Alaniz had anything in his hands and, if he did, whether it was the glasses case. Not so.[3] The Officer Van Dragt's and Silva's uncontradicted testimony establishes Alaniz had something in his hands, and Van Dragt's testimony that it was the glass case is also uncontradicted. That other witnesses, in different positions, did not *see* anything in Alaniz's hands does not contradict Van Dragt's and Silva's testimony because not seeing something in Alaniz's hands does not mean his hands were empty. The latter is very different than the former.

Parents argue genuine issues of material fact exist regarding whether Officer Van Dragt's Taser incapacitated Alaniz before Silva fired his first shot. Problems exist with their position.

First, Silva never took the position that the Taser was not effective.

---

[3] Parents' position is curious given they argue it was unreasonable for Silva to mistake the glasses case for a gun, which necessarily accepts that Alaniz had the glasses case in his hands.

Second, there is no evidence that the Taser was effective. The only evidence supporting this purported factual assertion is the inadmissible opinion of parents' expert DeFoe. *See* Objections to Evidence. DeFoe's factual assertion that there was penetration into Alaniz's body of two Taser barbs is unsupported by anything – DeFoe just says it without referencing anything. *See* Doc. 70-13, ¶ 10. Indeed, it is not noted in the autopsy report. *See* Exhibit 39 (Autopsy Report). Moreover, DeFoe is not qualified to render an opinion on what the Taser does to a person and parents' expert pathologist, who would be qualified, does not reach that opinion and further says nothing about an effective Taser strike. *See* Exhibit 40 (Omalu Report).

Even if there was an issue of fact regarding an effective Taser strike, it would not be material or genuine. It is undisputed that Silva did not know Officer Van Dragt transitioned to his Taser, which also makes parents' assertion that Van Dragt's conduct should have indicated to Silva that Alaniz did not have a gun meritless.[4] Further, fractions of a second elapsed between Officer Van Dragt firing his Taser and Silva firing his gun, and parents offer no evidence establishing that Silva should have perceived an effective Taser strike in that nearly immeasurable time, that Silva should have withheld fire because of an effective Taser strike, or even how long after an effective Taser strike does it take for one to "lock up."

Parents argue the glasses case does not look like a gun. So, their argument does, a factual dispute exists regarding whether the glasses case looks like a gun. Of course, the glasses case does not look like a gun when viewed after the fact out of Alaniz's hands on the ground. But what the glasses case

[4] Parents try but utterly fail to dispute this fact. That Van Draft could be seen on the BWC transitioning to his Taser says nothing about whether Silva saw him do this and it takes little imagination to conclude that Silva's focus, as he testified, was directly on Alaniz.

looks like in that context is not at issue, and thus no genuine issue of fact exists. *See Gonzalez v. City of Anaheim*, 747 F.3d 789, 794 (9th Cir. 2014) ("We take the perspective of an officer on the scene without the benefit of 20/20 hindsight.").

Parents argue it is disputed that Alaniz was running toward the officers. There is no evidence to support a different conclusion than what is clearly shown on the BWC. Parents argue that Alaniz may have been "turning away" but, again, no evidence supports this proposition. Although Alaniz's body was moving, he most certainly was not altering his direction of travel toward the officers. And even if Alaniz's upper body was turning in some manner, his arms remained out in front of him with his hands together pointed at Silva.

**B. Qualified Immunity Bars Parent's 42 U.S.C. § 1983 Claims Against Him And Entitles Him To Summary Judgment On Them**

**1. Fourth Amendment Claim**

At the outset, Silva addresses parents' criticism of Silva's citation of two cases.

Parents assert Silva misinterpreted *Abuka v. City of El Cajon*, 2019 U.S. Dist. LEXIS 37137 (S.D. Cal. Mar. 7, 2019). In that case, the court found the initial use of force reasonable given the suspect "pulled a metal object from his pocket, and while holding the object in his hands, moved into a 'shooting stance' with his hands pointed at the officer" but ultimately found triable issues of fact regarding *the number of shots fired* precluded finding the absence of a Fourth Amendment violation. *Id.* at *21-24. Silva cited *Abuka* for the first proposition, which is accurate, and the important part of the case because the number of shots fired is not at issue here.

Parents argue, presumably, that *Barnes v. City of Pasadena*, 508 F.App'x 663 (9th Cir. 2013) is irrelevant because it was not a Fourth Amendment case but a Fourteenth Amendment case. Though the court was analyzing a

Fourteenth Amendment claim, the court concluded "the determinative issue was whether the officers *reasonably believed* Barnes had a gun and posed an immediate threat to safety" and "[t]he record indicated that they did." *Id.* at 665 (emphasis added). Thus, the court's conclusion on *reasonableness* is accordingly persuasive on a Fourth Amendment claim. *See Shafer v. Cty. of Santa Barbara*, 868 F.3d 1110, 1116 (9th Cir. 2017) ("We analyze excessive force claims according to the constitutional touchstone of objective reasonableness[.]"); *e.g. Neal v. City of Fresno*, 2015 U.S. Dist. LEXIS 30639, at *15 (E.D. Cal. Mar. 11, 2015) (relying on *Barnes* in a Fourth Amendment analysis).

**a. No Fourth Amendment Violation**

*i. Silva reasonably mistakenly believed Alaniz was an imminent threat of death or serious harm and no reasonable juror could conclude otherwise*

The Supreme Court instructs that deadly force is constitutional when the officer reasonably believes a suspect poses a threat of injury or death to the officer or someone else, *Brosseau v. Haugen*, 543 U.S. 194, 197-98 (2004), "at the moment when the shots were fired," *Plumhoff*, 572 U.S. at 777. And "[o]fficers shouldn't have to wait until a gun is pointed at them before they are entitled to take action. If the person is armed -- *or reasonably suspected of being armed* -- a furtive movement, harrowing gesture, or serious verbal threat might create an immediate threat." *Estate of Strickland v. Nev. Cty*., 69 F.4th 614, 620 (9th Cir. 2023) (simplified) (emphasis added).

Silva did not violate the Fourth Amendment because his mistaken belief that Alaniz had a gun and was going to shoot him was objectively reasonable. The undisputed evidence constitutes the "objective factors" rendering Silva's belief in the threat Alaniz posed objectively reasonable. *Estate of Strickland*, 69 F.4th at 620.

///

It is undisputed that Alaniz was in a "shooter's stance" when came around the corner of Officer Van Dragt's car after being hidden from Silva's view.[5] And there is no evidence disputing that Silva saw Alaniz in the "shooter's stance" and both Van Dragt, witnesses and the BWC confirm it. *Cf. Longoria*, 873 F.3d at 707 (no other evidence other than officer's statement supported suspect in a "shooter's stance).

Regardless of parents' quibbles and whatever one wants to call Alaniz's position, it is undisputed Alaniz had his hands together with his arms thrust out in front of him pointed at Silva in a position *no reasonable juror could conclude was something other than one indicating he was going to shoot*. *Rivera v. Cater*, 2019 U.S. Dist. LEXIS 177424, at *11 (E.D. Cal. Oct. 11, 2019) ("The video ... shows Attaway's arms extended, hands clasped together in front of him, and head cocked between his arms in a manner which would cause any reasonable person, whether a police officer or not, to reasonably fear they were about to be shot.").

To be sure, this "most important question" is undisputed – Alaniz was in a "shooter's stance" – and this "entitled [Silva] to shoot." *Hyer v. City & Cty. of Honolulu,* 118 F.4th 1044, 1062 (9th Cir. 2024); *Longoria*, 873 F.3d at 707-08; *see Lal v. California*, 746 F.3d 1112, 1119 (9th Cir. 2014) ("That Lal may have been intent on committing "suicide by cop" does not negate the fact that he threatened the officers with such immediate serious harm that shooting him was a reasonable response.").

And it cannot be forgotten how fast Silva had to act. Silva had a fraction of a second once Alaniz appeared again from where he was hidden behind Officer Van Dragt's car in the "shooter's stance." *See City & Cty. of S.F. v.*

---

[5] This is not a case like *Cruz v. City of Anaheim*, 765 F.3d 1076, 1078-80 (9th Cir. 2014) where a dispute exists about whether the suspect reached for his waistband and the only evidence is officer testimony.

*Sheehan*, 575 U.S. 600, 612 (2015) ("The Fourth Amendment standard is reasonableness, and it is reasonable for police to move quickly if delay would gravely endanger their lives or the lives of others even when, judged with the benefit of hindsight, the officers may have made some mistakes. The Constitution is not blind to the fact that police officers are often forced to make split second judgments.") (simplified); *Wilkinson v. Torres*, 610 F.3d 546, 553 (9th Cir. 2010) ("'the Fourth Amendment does not require omniscience,'" and absolute certainty of harm need not precede an act of self-protection")

*ii. Remaining Graham factors*

Silva demonstrated in his moving papers how the other *Graham* factors favor him. Parents argue Alaniz was not fleeing. Silva agrees. Alaniz was doing the opposite of fleeing. Alaniz was charging at the officers, which is certainly worse than fleeing. In terms of threatening behavior, charging at an officer is on the other side of the spectrum from fleeing. It is also a crime. Parents ignore both points.

*iii. Other factors*

Though this Court need not look to other *Graham* factors, *see United States ex rel. Hart v. McKesson Corp.,* 96 F.4th 145, 552 (2d Cir. 2024) those other factors favor Silva nonetheless. Silva already demonstrated why Alaniz's mental illness, potential less intrusive means of force and the absence of a warning do not alter the conclusion that Silva's use of deadly force was objectively reasonable. Parents' arguments on these issues are unpersuasive given how rapidly the incident unfolded.

**C. Absence of clearly established law**

Parents argue this is an "obvious case" for which no established body of precedent is needed. This case is not one of those "rare" cases. *Waid v. Cty. of Lyon*, 87 F.4th 383, 389 (9th Cir. 2023); *see id.* ("Even assuming that Anderson was unarmed and not reaching for a weapon, there is no dispute that he used

aggressive language with the officers, ignored an order from the officers, and rushed towards them in a small and confined space. It is not obvious that the officers were constitutionally precluded from firing in this situation, where they were responding to an active domestic violence situation, lacked the benefit of having time to fully assess the circumstances, and needed to make split-second decisions as they were being charged.").

Parents also argue genuine issues of material fact preclude this Court from entertaining this prong of the qualified immunity analysis. Silva has already demonstrated the absence of any genuine and material factual disputes. But even assuming some, "the goal of qualified immunity would be undermined if summary judgment were denied every time a material issue of fact remains on an excessive force claim." *Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1049 (9th Cir. 2002) (citing *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). Regardless, it remains undisputed that Alaniz was in a "shooter's stance" running at the officers and no controlling precedent cited by parents establishes beyond debate that it violates the Fourth Amendment to use deadly force against a person engaging in that conduct. *White v. Pauly*, 580 U.S. 73, 79 (2017) ("'existing precedent must have placed the statutory or constitutional question beyond debate'").

Parents cite the following precedents: *Zion v. Cty. of Orange*, 874 F.3d 1072 (9th Cir. 2017); *A. K. H. v. City of Tustin*, 837 F.3d 1005 (9th Cir. 2016); *Vos v. City of Newport Beach*, 892 F.3d 1024 (9th Cir. 2018); *Deorle v. Rutherford*, 272 F.3d 1272 (9th Cir. 2001)[6]; *Longoria*, 873 F.3d 699 and *Espinosa v. City & Cty. of S.F.*, 598 F.3d 528 (9th Cir. 2010). Parents also cite

///

[6] The Supreme Court has instructed courts to read *Deorle* narrowly and cautioned against finding the law clearly established in other factual scenarios. *Hart*, 99 F.4th at 555. *Deorle* is very different than this case.

the non-precedential decision in *Collender v. City of Brea*, 605 F.App'x 624 (9th Cir. 2015).[7]

These cases do not meet parents' burden to "to prove that precedent on the books" at the time of this incident "would have made clear to [Silva] that [his] conduct violated the Constitution." *Carley v. Aranas*, 103 F.4th 653, 661 (9th Cir. 2024). Not one is factually similar. Parents' own description of the cases shows none involved someone in a "shooting stance" advancing toward officers, much less with something in the hands. Even *Vos*, which is arguably the closest, involved, unlike the facts here, many officers surrounding a store where a suspect was contained and confined for 20 minutes, and several officers entered the store and confronted the suspect. 892 F.3d at 1029-30; *see Hart*, 99 F.3d at 556 (distinguishing *Vos*). Simply put, all the cases parents cite are "materially distinguishable," *Rivas Villegas v. Cortesluna*, 595 U.S. 1, 6-7 (2021), and do not '"squarely govern[]' the specific facts at issue" in this case, *Kisela v. Hughes*, 584 U.S. 100, 104 (2018).

Indeed, existing precedent would indicate to a reasonable officer that deadly force was constitutional in the situation Silva encountered. *Garcia v. Cty. of Napa,* 2023 U.S. Dist. LEXIS 12323, at *18 (N.D. Cal. Jan. 17, 2023) ("[G]iven the undisputed facts established by the video footage, a reasonable officer in Sgt. Ackman's position could have seen Mr. Garcia's behavior—advancing directly at close range, despite orders to stop and with a concealed hand where weapons are often kept—as the type of 'harrowing' gesture that, under precedent, may justify the use of deadly force."); *see Kramer v. Cullinan*, 878 F.3d 1156, 1163 (9th Cir. 2018) ("So long as existing case law 'did not preclude' an official from reasonably believing that his or her conduct was

---

[7] "[I]t will be a rare instance in which . . .we can conclude that the law was clearly established on the basis of unpublished decisions only." *Rico v. Ducart*, 980 F.3d 1292, 1300-01 (9th Cir. 2020). This isn't it.

lawful, the official has a right to qualified immunity.") (quoting *Lane v. Franks*, 573 U.S. 228, 243 (2014)).

**1. Fourteenth Amendment Claim**

This claim fails under both prongs of qualified immunity.

Skipping to the second prong, which this Court can do, parents do not even attempt to demonstrate "clearly established" law in their half page discussion of this claim. *See* Doc. 70, p. 24. Parents have thus conceded none exists. *Pro-Com Prods. v. King's Express LA, Inc.*, 2020 U.S. Dist. LEXIS 60540, at *15 (C.D. Cal. Feb. 13, 2020) (Gee, J.) ("parties concede issues by not opposing the summary judgment movant's arguments on those issues") (citing *Jenkins v. Cty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005)).

Notwithstanding, the argument parents do make on the existence of a Fourteenth Amendment violation fairs no better. Indeed, parents concede the "purpose to harm" standard applies to the rapidly evolving and fast paced incident, and further concede no evidence exists establishing Silva subjectively acted in bad faith or had some ulterior motive in using force apart from a legitimate law enforcement objective. *See* Doc. 70, p. 24.

Despite these concessions, however, citing *Nehad v. Browder*, 929 F.3d 1125 (9th Cir. 2019), parents argue the "purpose to harm" standard can be satisfied without evidence of an ulterior motive or bad faith use of force where the "'use of force might be so grossly and unreasonably excessive that it alone could evidence a subjective purpose to harm'" and that Silva's use of force meets this standard. Doc. 70, p. 24 (quoting *Nehad*, 939 F.3d at 1140).

Although *Nehad* declined to hold evidence of ulterior motive or bad faith is always required to show a "purpose to harm," it declined to find the use of force in the case met that standard despite finding a jury could conclude the shooting of an unarmed man violated the Fourth Amendment. 929 F.3d at 1140; *see id.* at 1130-39 (facts and Fourth Amendment analysis).

In reaching its conclusion, the court discussed factual scenarios where a purpose to harm might be found just from the use of force itself. For example, where "two officers shot a fleeing suspect in the back." *Id.* at 1140 (distinguishing *F.C., III v. Cty. of Los Angeles*, 2011 U.S. Dist. LEXIS 160963 (C.D. Cal. Sept. 13, 2011)). Or where "an officer shot a fleeing robbery suspect twice in the leg and then, while the suspect was on the ground and possibly raising his hands in surrender, reloaded and shot the suspect six more times in the chest." *Id.* (distinguishing *Ramirez v. Cty. of San Diego*, 2009 U.S. Dist. LEXIS 32363 (S.D. Cal. Apr. 15, 2009)).

Because the facts of this case, even under parents' version, are nothing like those situations evidence of an ulterior motive by Ellis or bad faith conduct is required but does not exist.

**D. Officer Silva And The State Are Entitled To Summary Judgment On Parents' State Law Claims**

Parents' entire argument on their battery and negligence claims is that they "are entitled to a jury trial." Doc. 70, p. 24. This Court should find parents have conceded that they cannot establish these claims. *Weiss Residential Research LLC v. Experian Info. Sols.*, 2020 U.S. Dist. LEXIS 210760, at *8 (C.D. Cal. Oct. 15, 2020) (finding "argument conceded ... where party 'failed to develop any argument'") (quoting *John-Charles v. California*, 646 F.3d 1243, 1247 n.4 (9th Cir. 2011)); *see also Sinatro v. Barilla Am., Inc.*, 2024 U.S. Dist. LEXIS 155797, at *10 (N.D. Cal. Aug. 29, 2024) ("The court is not required to analyze arguments that the parties fail to develop.").

Although parents do make an argument on the Bane Act claim, it is insufficient. Parents correctly state that *Reese v. City of Sacramento*, 888 F.3d 1030, 1045 (9th Cir. 2018) held a reckless disregard for a person's constitutional rights satisfies the Bane Act's specific intent requirement. But what parents do not do is demonstrate the evidence supports a conclusion that

Silva "intended not only the force, but its unreasonableness." *Id.* Merely saying "summary judgment must be denied" "given the facts" is insufficient. Doc. 25, p. 25.

**CONCLUSION**

This Court should grant summary judgment.

Dated: February 14, 2025

Dean Gazzo Roistacher LLP

By: */s/ Lee H. Roistacher*

Lee H. Roistacher
Attorneys for Defendants
State of California by and through
California Highway Patrol and
Officer Ramon Silva
Email: lroistacher@deangazzo.com

**CERTIFICATION OF COMPLIANCE**

The undersigned, counsel of record for Defendants State of California by and through California Highway Patrol and Officer Ramon Silva, certify that this Reply Of Defendants State Of California By And Through California Highway Patrol And Officer Ramon Silva To Plaintiffs' Opposition To Motion For Summary Judgment contains 4,944 words, which:

__X__ complies with the word limit of L.R. 11-6.1.

_____ complies with the word limit set by court order dated [date].

Dated: February 14, 2025

*/s/ Lee H. Roistacher*
Lee H. Roistacher , declarant