Dean Gazzo Roistacher LLP
Lee H. Roistacher, Esq. (SBN 179619)
440 Stevens Avenue, Suite 100
Solana Beach, CA  92075
Telephone:  (858) 380-4683
Facsimile:  (858) 492-0486
E-mail:  lroistacher@deangazzo.com

Attorneys for Defendants
State of California by and through California
Highway Patrol and Officer Ramon Silva

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA KIRKMAN AND CARLOS ALANIZ, INDIVIDUALLY AND AS SUCCESSORS-IN-INTEREST TO JOHN ALANIZ, DECEASED,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF CALIFORNIA; RAMON SILVA; AND DOES 1-10, INCLUSIVE,<br><br>Defendant. | Case No.: 2:23-cv-07532-DMG-SSC<br><br>**DEFENDANTS STATE OF CALIFORNIA BY AND THROUGH CALIFORNIA HIGHWAY PATROL AND OFFICER RAMON SILVA'S RESPONSE TO THE STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**<br><br>Date:         February 28, 2025<br>Time:         2:00 p.m.<br>Courtroom:  8C<br>Judge:        Hon. Dolly M. Gee<br><br>Complaint Filed: July 28, 2023<br>Trial Date: April 15, 2025 |

**Defendant's Response to Plaintiff's Statement of Genuine Disputes of**

**Material Fact**

| Defendant's Uncontroverted Facts and Supporting Evidence | Plaintiff's Disputed Facts and Supporting Evidence | Defendant's Response |
|---|---|---|
| 1. On May 4, 2022, Alanez jumped in front | Undisputed. | |

1

| Defendant's Uncontroverted Facts and Supporting Evidence | Plaintiff's Disputed Facts and Supporting Evidence | Defendant's Response |
|---|---|---|
| of a big rig truck traveling around 54 mph on westbound I-105.<br><br>*Supporting Evidence:*<br>• Exh. 1: Truck Video: 1:40-1:50<br>• Exh. 2: Acosta Deposition, pp. 7:10-22, 8:8-9:6<br>• Exh. 3: Burtran Statement, pp. 5:25-7:3, 14:3-24 | | |
| 2. Alaniz landed in a traffic lane requiring a driver to stop.<br><br>*Supporting Evidence:*<br>• Exh. 1: Truck Video: 1:50-2:00<br>• Exh. 2: Acosta Deposition, p. 9:7-13 | Undisputed. | |
| 3. Alaniz eventually got up and tried to put his head under the wheels of another big rig.<br><br>*Supporting Evidence*:<br>• Exh. 1: Truck Video: 4:20-4:55<br>• Exh. 2: Acosta Deposition, pp. 15:20-16:25<br>/// | Undisputed. | |

2

| Defendant's Uncontroverted Facts and Supporting Evidence | Plaintiff's Disputed Facts and Supporting Evidence | Defendant's Response |
|---|---|---|
| 4. Someone called 911 around 11:18 a.m. to report the incident.<br><br>*Supporting Evidence*:<br>• Exh. 2: Acosta Deposition, p. 10:23-11:10. | Undisputed. | |
| 5. Starting around 11:20 a.m., information was dispatched by CHP regarding the location and incident.<br><br>*Supporting Evidence*:<br>• Exh. 6: Incident Log, p. .3<br>• Exh. 7: Van Dragt Deposition, pp. 9:1-7, 11:11-12:3.<br>• Exh. 8: Silva Deposition, pp. 22:19-24:1.<br>• Exh. 9: Silva DOJ Statement, pp. 10:1-11:25, 19:6-20:6.<br>• Exh. 10: Dispatch Transcript, pp. 2-9.<br>• Exh. 11: Dispatch Recordings: 0:00-11:46. | Undisputed. | |
| 6. Alaniz eventually walked down the shoulder with a witness following fearing Alaniz | Disputed in part.<br><br>The witness, Mr. Acosta, was not | Plaintiffs misstate the evidence. Defendants' Fact 6 is that Acosta feared Alaniz would try to kill himself, not that Acosta |

| Defendant's Uncontroverted Facts and Supporting Evidence | Plaintiff's Disputed Facts and Supporting Evidence | Defendant's Response |
|---|---|---|
| would try to kill himself by jumping in front of another car.<br><br>*Supporting Evidence*:<br>• Exh. 1: Truck Video: 4:55-6:15.<br>• Exh. 2: Acosta Deposition, pp. 9:4-10:22, 11:19-22.<br>• Exh. 4: 911 Transcript, pp. 1-20.<br>• Exh. 5: 911 Recordings: 0:00-20:55. | afraid of Mr. Alaniz; he was *concerned* for Mr. Alaniz's safety.<br><br>**Exh. C**: Acosta Dep., p. 4:18-22 | was afraid of Alaniz. At no time did Acosta testify that he was concerned for Alaniz's safety. The deposition testimony of Acosta cited by plaintiffs provides that Acosta followed Alaniz because he had a gut feeling he was going to try and jump in front of traffic.<br><br>Additionally, plaintiffs references Acosta Dep., p. 4:18-22. However, p. 4 refers to plaintiffs' exhibit and not the deposition transcript. The correct citation is p. 11:19-22. |
| 7. Alaniz pushed the driver aside and jumped in front of another truck.<br><br>*Supporting Evidence*:<br>• Exh. 2: Acosta Deposition, pp. 11:19-12:11, 12:25-13:16, 14:12-14.<br>• Exh. 12: Verdugo Deposition, pp, 8:3-9:5. | Undisputed. | |
| 8. Alaniz charged at the truck striking it with his head, breaking the front grill and denting the hood.<br><br>/// | Disputed in part. The hood was not dented.<br><br>**Exh. 13**: Truck Photo. | Plaintiffs misstate the evidence. The owner of the vehicle, Mr. Verdugo testified that the hood of his car was dented and it can be seen in Exh. 13. |

4

| Defendant's Uncontroverted Facts and Supporting Evidence | Plaintiff's Disputed Facts and Supporting Evidence | Defendant's Response |
|---|---|---|
| *Supporting Evidence*:<br>• Exh. 12: Verdugo Deposition, pp. 12:17-14:12.<br>• Exh. 13: Truck Photo. | | |
| 9. Alaniz got up and continued to walk down westbound I-105 where he got stuck by a van.<br><br>**Supporting Evidence**:<br>• Exh. 2: Acosta Deposition, pp. 13:20-14:17.<br>• Exh. 12: Verdugo Deposition, pp. 8:20-23, 14:13-15:1. | Undisputed. | |
| 10. Alaniz ignored the witness and appeared to look for cars to jump in front of.<br><br>*Supporting Evidence*:<br>• Exh. 2: Acosta Deposition, p. 17:4-16. | Undisputed. | |
| 11. The witness described Alaniz as "full of adrenalin" and "wanting to kill himself."<br><br>*Supporting Evidence*:<br>• Exh. 2: Acosta Deposition, pp. 17:22-18:9. | Undisputed. | |

Case No. 2:23-cv-07532-DMG-SSC

| Defendant's Uncontroverted Facts and Supporting Evidence | Plaintiff's Disputed Facts and Supporting Evidence | Defendant's Response |
|---|---|---|
| 12. Officers Silva arrived on scene around 11:31 a.m.<br><br>*Supporting Evidence*:<br>• Exh. 6: Incident Log, p. 4([63]).<br>• Exh. 10: Dispatch Transcript, pp. 9-10.<br>• Exh. 11: Dispatch Recordings: 12:12-12:37.<br>• Exh. 14: BWC: 6:20-6:40.<br>• Exh. 19: Blake Video File: 6:206:40. | Undisputed. | |
| 13. Silva had previously requested air support for assistance.<br><br>*Supporting Evidence*:<br>• Exh. 9: Silva DOJ Statement, pp. 20:18-22:12. | Undisputed. | |
| 14. Silva described the scene as "chaotic", "tense" and "uncertain."<br><br>*Supporting Evidence*:<br>• Exh. 9: Silva DOJ Statement, pp. 12:5-13:12, 24:14-25:6. | Undisputed. | |
| 15. Silva was concerned.<br><br>///<br><br>/// | Disputed.<br><br>Silva shot and killed an unarmed within 30 seconds | None of what plaintifs say have anything to do with Silva's concern over the situation in general and none of what plaintiffs say is material. |

6

| Defendant's Uncontroverted Facts and Supporting Evidence | Plaintiff's Disputed Facts and Supporting Evidence | Defendant's Response |
|---|---|---|
| *Supporting Evidence*: <br> • Exh. 9: Silva DOJ Statement, pp. 19:25-20:17. | of seeing him. SUF 56. He caused physical harm to Van Dragt, who lost hearing due to the incident, and he shot with citizens in his backdrop. A jury could find that he was not "concerned" for Silva, Van Dragt, or innocent by-standers. | Moreover, plaintiffs misstate the evidence. Silva did not cause harm to Van Dragt and plaintiffs provide no evidence in support of this contention, and it would be immaterial anyway. Additionally, Silva was concerned for the safety of Van Dragt because Alaniz was aggressively charging toward Van Dragt. There were no citizens in the "backdrop" – Silva ensured the bystander, Mr. Acosta, was behind him. The only vehicle in the "backdrop" was a semi-truck which was not damaged as a result of the incident. <br><br> *See* defendants' Exh. 14: BWC: 7:00-7:06. |
| 16. Silva reported to dispatch that Alaniz had his hands in his pocket. <br><br> *Supporting Evidence*: <br> • Exh. 6: Incident Log, p. 4 ([64]). <br> • Exh. 9: Silva DOJ Statement, pp. 13:13-18, 14:24-15:4, 5:22-24. <br> • Exh. 10: Dispatch Transcript, p. 12. <br> • Exh. 11: Dispatch Recordings: 13:20-13:42. <br> /// | Undisputed. | |

| Defendant's Uncontroverted Facts and Supporting Evidence | Plaintiff's Disputed Facts and Supporting Evidence | Defendant's Response |
|---|---|---|
| • Exh. 14: BWC: 6:40-6:45.<br>• Exh. 19: Blake Video File: 6:406:45.<br>•Exh. 20: Blake Video File: 0:000:12. | | |
| 17. Alaniz was between 50-100 feet from Silva at that point.<br><br>*Supporting Evidence*:<br>• Exh. 9: Silva DOJ Statement, p. 25:7-21. | Undisputed. | |
| 18. Silva planned on waiting for back up.<br><br>*Supporting Evidence*:<br>• Exh. 9: Silva DOJ Statement, pp. 13:18-21, 14:24-15:4. | Silva shot and killed an unarmed up. within 30 seconds of seeing him. SUF 56. His actions are not consistent with someone who planned on waiting for back up. | "His actions are not consistent with someone who planned on waiting for back up" is not a fact but an argument. Silva can be heard saying he was going to "stand by" for another unit to "run the break".<br><br>Exh. 14: BWC: 6:22-6:26.<br><br>And Silva's plans changed only because Officer Van Dragt arrived and got out of his car to contact Alaniz, thus requiring Silva to become a "cover" officer. |
| 19. Silva's plan was to secure Alaniz and remove him from the roadway.<br><br>/// | Silva shot and killed an unarmed within 30 seconds of seeing him. SUF 56. A jury could find he had | "A jury could find he had no plan at all" is not a fact but an argument and the short duration of the incident does not mean Silva had not formulated a plan before or on his arrival. What a |

| Defendant's Uncontroverted Facts and Supporting Evidence | Plaintiff's Disputed Facts and Supporting Evidence | Defendant's Response |
|---|---|---|
| *Supporting Evidence*:<br>• Exh. 9: Silva DOJ Statement, pp. 13:24-14:3. | no plan at all. | potential jury could find does not create a triable issue of fact. Plaintiffs must present a dispute, supported by evidence – not speculation, that would allow a reasonable jury to conclude that it is more likely than not Silva did not have a plan to secure Alaniz and remove him from the roadway. Plaintiffs have not presented any such evidence. |
| 20. Van Dragt arrived in his patrol car around 20-30 seconds after Silva.<br><br>*Supporting Evidence*:<br>• Exh. 8: Silva Deposition, p. 22:11-18.<br><br><br>• Exh. 6: Incident Log, p. 4 ([65]).<br>• Exh. 7: Van Dragt Deposition, pp. 9:1-23, 11:11-23.<br>• Exh. 14: BWC: 6:50-6:55.<br>• Exh. 19: Blake Video File: 6:506:55. | Disputed.<br><br>**Exh. H**: BWC: 6:30-7:00 (Van Dragt arrived approximately 10 seconds after Silva.) | |
| 21. Van Dragt positioned his vehicle at an angle to the shoulder between Alaniz and Silva, about 10-15 feet in front of<br>/// | Disputed.<br><br>**Exh. H**: BWC: 6:50-6:55 (When Van Dragt stopped his | Plaintiffs' "dispute" only concerns the distance between Van Dragt's vehicle and Silva. Plaintiffs do not dispute that the vehicle was positioned at an angle to the shoulder between |

| Defendant's Uncontroverted Facts and Supporting Evidence | Plaintiff's Disputed Facts and Supporting Evidence | Defendant's Response |
| --- | --- | --- |
| Silva and in his line of sight.<br><br>*Supporting Evidence*:<br>• Exh. 9: Silva DOJ Statement, pp. 14:4-20 32:18-24.<br>• Exh. 8: Silva Deposition, pp. 32:16-33:1, 35:14-36:12.<br>• Exh. 14: BWC: 6:50-7:00.<br>• Exh. 18: Blake Video File: 0:00-0:10.<br>• Exh. 19: Blake Video File: 6:507:00.<br>• Exh. 20: Blake Video File: 0:000:12. | vehicle, the front of the vehicle was approximately 60 feet from Silva.) | Alaniz and Silva in Silva's line of sight. Regardless, plaintiffs provide no evidentiary support for their estimate of the approximate "60 feet" distance. |
| 22. Van Dragt's plan was to secure and remove Alaniz from the roadway.<br><br>*Supporting Evidence*:<br>• Exh. 7: Van Dragt Deposition, p.16:5-15. | Undisputed. | |
| 23. Van Dragt got out of his car and saw Alaniz standing on the shoulder with his hands in his pockets.<br><br>Supporting Evidence:<br>• Exh. 7: Van Dragt Deposition, pp. 17:9-18:3, 20:10-14.<br>/// | Undisputed. | |

10

| Defendant's Uncontroverted Facts and Supporting Evidence | Plaintiff's Disputed Facts and Supporting Evidence | Defendant's Response |
|---|---|---|
| • Exh. 14: BWC: 6:55-7:00. | | |
| 24. Van Dragt believed Alaniz was a potential threat.<br><br>*Supporting Evidence*:<br>• Exh. 15: Van Dragt CHP Statement, pp. 12:19-13:6. | Undisputed. | |
| 25. Van Dragt had unholstered his gun and moved toward the back of his car toward Alaniz.<br><br>*Supporting Evidence*:<br>• Exh. 8: Silva Deposition, pp. 36:13-22, 37:9-13.<br>• Exh. 14: BWC: 6:55-7:00.<br>• Exh. 19: Blake Video File: 6:55-7:00. | Undisputed. | |
| 26. Van Dragt ordered Alaniz to "let me see your hands."<br>*Supporting Evidence*:<br>• Exh. 7: Van Dragt Deposition, pp. 20:25-22:5.<br>• Exh. 17: MVARS: 7:00-7:03.<br>• Exh. 18: Blake Video File: 0:150:18. | Disputed.<br><br>**Exh. H**: BWC: 6:30-7:06 (the video appears to show Silva ordered Alaniz to "let me see your hands," not Van Dragt). | Plaintiffs misstate the evidence. On the BWC Van Dragt can be heard ordering Alaniz to let him see his hands. Thereafter, Silva gives similar orders to Alaniz. |
| 27. Alaniz initially complied but then put | Undisputed. | |

| Defendant's Uncontroverted Facts and Supporting Evidence | Plaintiff's Disputed Facts and Supporting Evidence | Defendant's Response |
|---|---|---|
| his hands back into his pockets.<br><br>*Supporting Evidence*:<br>• Exh. 8: Silva Deposition, p. 39:6-10, 18-22.<br>• Exh. 7: Van Dragt Deposition, pp. 20:25-22:5. | | |
| 28. Silva unholstered his gun.<br><br>*Supporting Evidence*:<br>• Exh. 8: Silva Deposition, p. 65:13-15.<br>• Exh. 9: Silva DOJ Statement, pp. 14:24-15:9. | Undisputed. | |
| 29. Silva told Alaniz to "show his hands."<br><br>*Supporting Evidence*:<br>• Exh. 8: Silva Deposition, pp. 40:19-41:13, 65:11-18.<br>• Exh. 9: Silva DOJ Statement, pp. 15:10-15, 50:11-19.<br>• Exh. 14: BWC: 6:55-7:00. | Disputed.<br><br>**Exh. H**: BWC: 6:30-7:06 (the video appears to show Silva ordered Alaniz "let me see your hands," not "show me your hands") | This fact is labeled "disputed" to try to create a triable issue of fact where none exists. Plaintiffs do not dispute that Silva was ordered to show his hands or have the officers see his hands, which is fundamentally the same instruction. |
| 30. Alaniz immediately started running at Van Dragt while removing an object from his pocket and getting into a "shooting platform" as | Disputed in part.<br><br>It is misleading to describe someone as being in a "shooter's | There is nothing misleading about this fact, and that is not a proper response anyway. Plaintiffs' examples of various stances are inapt. Regardless of what item an individual |

| Defendant's Uncontroverted Facts and Supporting Evidence | Plaintiff's Disputed Facts and Supporting Evidence | Defendant's Response |
|---|---|---|
| Van Dragt retreated toward the front of his car away from Alaniz.<br><br>*Supporting Evidence*:<br>• Exh. 2: Acosta Deposition, pp. 21:11-22:5.<br>• Exh. 7: Van Dragt Deposition, pp. 22:21-24:6.<br>• Exh. 8: Silva Deposition, pp. 41:20-42:10, 42:18-43:11.<br>• Exh. 9: Silva DOJ Statement, p. 15:4-20.<br>• Exh. 14: BWC: 6:57-7:04.<br>• Exh. 19: Blake Video File: 6:577:04.<br>• Exh. 20: Blake Video File: 0:000:12.<br>• Exh. 21: Blake PDF File.<br>• Exh. 22: Blake PDF File. | platform" when they are not holding anything that resembles a gun. For example, if someone is holding a phone with their hands outstretched, they would more accurately be described as in a "photographer's stance." Similarly, a person gripping a remote control with both hands might appear to be in a "gamer's stance," while someone holding a book with their arms extended could be said to be in a "reader's stance." Context matters, and mischaracterizing an individual's posture without considering what they are actually holding—or not holding—can lead to dangerous and unjustified assumptions. | holding, it is the position and posture of the individual which dictates the stance. A photographer does not run with their "hands outstretched" and arms locked into position, neither does a "gamer" (unless playing a first-person shooting game) or a "reader".<br><br>"A reasonable jury could find that he was not in fear for anyone's life" is not a fact but an argument.  What a potential jury could find does not create a triable issue of fact. Plaintiffs must present a dispute, supported by evidence – not speculation, that would allow a reasonable jury to conclude that it is more likely than not Silva perceived Alaniz as unarmed. Plaintiffs have not presented any such evidence. |

13

| Defendant's Uncontroverted Facts and Supporting Evidence | Plaintiff's Disputed Facts and Supporting Evidence | Defendant's Response |
|---|---|---|
| | Here, Plaintiffs contend Silva knew Alaniz was not armed with a gun, so to describe his stance as a shooter's stance is disingenuous. **Exh. H**: BWC: 7:16-7:21 (Silva did not mistakenly perceive a gun, which is why he asks Van Dragt what was in Alaniz's hands. A reasonable jury could find that he was not in fear for anyone's life given that a reasonable jury could find that he accurately perceived Alaniz as unarmed.)<br><br>**Exh. F**: Van Dragt Dep. p. 7:6-16, Van Dragt described the object in Alaniz's hands as resembling "a | |

| Defendant's Uncontroverted Facts and Supporting Evidence | Plaintiff's Disputed Facts and Supporting Evidence | Defendant's Response |
|---|---|---|
| | subway sandwich," not a weapon.<br><br>**Exh. H**: BWC: 6:55-7:06; Exh. I: Autopsy Report, p. 4; Exh. J: Defoe Decl., ¶¶ 10-11) Silva saw and heard Van Dragt deploy his Taser, which successfully struck Alaniz, causing him to seize up and turn away—further undermining any claim that Alaniz was in a "shooter's platform" at the time of the shots. | |
| 31. Silva believed he saw a "the barrel of a gun" or a "cylindrical silver thing" in Alaniz's hands.<br><br>*Supporting Evidence*:<br>• Exh. 8: Silva Deposition, pp. 58:17-20, 60:8-13 67:19.<br><br>/// | Disputed.<br><br>**Exh. H**: BWC 7:16-7:21, Silva himself was unsure what Alaniz was holding, as evidenced by his immediate question to Van Dragt, "What did | Plaintiffs misstate the evidence. Silva testified that at the time of the incident, and prior to the shooting, he believed he saw the barrel of a gun. It is immaterial what Silva perceived the item to be after the fact.<br><br>Similarly, Van Dragt testified that "I couldn't determine what it was. It could have been a gun. |

| Defendant's Uncontroverted Facts and Supporting Evidence | Plaintiff's Disputed Facts and Supporting Evidence | Defendant's Response |
|---|---|---|
| • Exh. 9: Silva DOJ Statement, pp. 15:21-16:1, 28:21-29:13.<br>• Exh. 16: Silva CHP Statement, pp. 19:23-20:6.<br>• Exh. 30: Photo of Vape Pen | he have in his hands?"<br><br>**Exh. C**: Acosta Dep. 9:8-18; Exh. M: Van Dragt Interview, May 10, 2022, p. 41:15-18) Both Acosta and Van Dragt, who had clear views of Alaniz, did not perceive anything resembling a firearm.<br><br>**Exh. F**: Van Dragt Dep. pp. 7:6-16, Van Dragt described the object in Alaniz's hands as resembling "a subway sandwich," not a weapon.<br>**Exh. F**: Van Dragt Dep. pp. 7:21-24; 45:20-46:18, The object in Alaniz's hand was likely a gray sunglass case, which does not have the defining features of a | It could have been a knife. I don't know."<br><br>Exh. 7: Van Dragt Deposition, p. 24:4-17. |

16

| Defendant's Uncontroverted Facts and Supporting Evidence | Plaintiff's Disputed Facts and Supporting Evidence | Defendant's Response |
|---|---|---|
|  | firearm—no barrel, trigger, or grip.<br><br>**Exh. G**: Silva Dep. pp. 10:19-61:4, Silva admitted that the gray sunglass case "obviously does not look like a gun."<br><br>**Exh. G**: Silva Dep. pp. 6:16-20, 6:2124, 7:3-4, Silva failed to follow his training, which required him to yell "gun" upon seeing an armed suspect and to order them to drop their weapon—commands that were feasible given the five-second window before he fired. |  |
| 32. Silva feared for Van Dragt's life.<br><br>/// | Disputed.<br><br>See Plaintiffs' response to SUF 31. A reasonable | "A reasonable jury could find that he accurately perceived Alaniz as unarmed" is not a fact but an argument. What a potential jury could find does |

17

| Defendant's Uncontroverted Facts and Supporting Evidence | Plaintiff's Disputed Facts and Supporting Evidence | Defendant's Response |
|---|---|---|
| *Supporting Evidence*: • Exh. 9: Silva DOJ Statement, pp. 25:22-27:12, 29:14-23. • Exh. 16: Silva CHP Statement, pp. 16:4-12, 17-24. | jury could find that he was not in fear for anyone's life given that a reasonable jury could find that he accurately perceived Alaniz as unarmed.) | not create a triable issue of fact. Plaintiffs must present a dispute, supported by evidence – not speculation, that would allow a reasonable jury to conclude that it is more likely than not Silva perceived Alaniz as unarmed. Plaintiffs have not presented any such evidence. *See* Defendants' response to plaintiffs' dispute to Fact 31. |
| 33. Alaniz and Van Dragt were about 10-12 feet from each other. *Supporting Evidence*: • Exh. 9: Silva DOJ Statement, p. 27:13-22. | Undisputed. | |
| 34. Van Dragt did not know if Alaniz was pointing a gun or knife at him but could not confirm it was a gun. *Supporting Evidence*: • Exh. 7: Van Dragt Deposition, pp. 24:15-17, 26:23-27:15, 46:13-18. • Exh. 15: Van Dragt CHP Statement, p. 15:17-16:7. /// | Disputed. **Exh. F**: Van Dragt Dep., p. 7:6-16 (Van Dragt saw Alaniz pull out an objection from his jacket pocket before he started running in his direction, but it looked like "a subway sandwich.") | *See* Defendants' response to plaintiffs' dispute to Fact 31. |

| Defendant's Uncontroverted Facts and Supporting Evidence | Plaintiff's Disputed Facts and Supporting Evidence | Defendant's Response |
|---|---|---|
| 35. Because Van Dragt couldn't positively recognize the object as a gun, he did not use deadly force.<br><br>*Supporting Evidence*:<br>• Exh. 7: Van Dragt Deposition, pp. 24:7-21, 26:23-28:11, 36:15-22. | Disputed.<br><br>**Exh. M**: Van Dragt Interview, May 10, 2022, p. 41:15-18 (Van Drag did not see anything that looked like a firearm in anyway. He says he would have shot if he even remotely thought the object looked like a gun, not that he would have had to "positively recognize it.") | This fact is labeled "disputed" in an effort to create a triable issue of fact where none exists. Plaintiffs dispute the phrasing of the fact but not the fact itself, or the evidence supporting the fact. |
| 36. Van Dragt still feared injury or death from Alaniz.<br><br>*Supporting Evidence*:<br>• Exh. 15: Van Dragt CHP Statement, p. 16:15-23. | Disputed.<br><br>**Exh. F**: Van Dragt Dep., p. 7:6-16 (Van Dragt saw Alaniz pull out an objection from his jacket pocket before he started running in his direction, but it looked like "a subway sandwich." A reasonable jury could find his | Plaintiffs misstate the evidence. Van Dragt stated that at the time of the incident, and prior to the shooting, he was "definitely in fear of being injured by whatever he had in his hands". It is immaterial what Van Dragt perceived the item to be after the fact.<br><br>What a potential jury could find does not create a triable issue of fact. Plaintiffs must present a dispute, supported by evidence – not speculation, that would allow a reasonable jury to conclude that it is more likely |

19

| Defendant's Uncontroverted Facts and Supporting Evidence | Plaintiff's Disputed Facts and Supporting Evidence | Defendant's Response |
|---|---|---|
| | testimony that he feared injury from a Subway sandwich to lack credibility) | than not that, at the time of the incident, Van Dragt did not fear death or injury. Plaintiffs have not presented any such evidence. |
| 37. Silva momentarily lost sight of Alaniz behind Van Dragt's car.<br><br>Supporting Evidence:<br>• Exh. 8: Silva Deposition, pp. 43:12-44:4, 65:25-66:10, 66:19- 67:2.<br>• Exh. 9: Silva DOJ Statement, pp. 15:21-16:3, 31:13-32:9;<br>• Exh. 14: BWC: 7:02-7:04.<br>• Exh. 16: Silva CHP Statement, pp. 16:25-17:20.<br>• Exh. 19: Blake Video File: 7:02-7:04.<br>• Exh. 20: Blake Video File: 0:04-0:06. | Undisputed. | |
| 38. Silva feared for Van Dragt's life and his own.<br><br>*Supporting Evidence*:<br>• Exh. 9: Silva DOJ Statement, pp. 15:21-17:15, 29:20-23, 31:1332:8, 32:25-33:9.<br>/// | Disputed.<br><br>See Plaintiffs' response to SUF 31. A reasonable jury could find that he was not in fear for anyone's life given that a reasonable jury could find that he | *See* defendant's response to plaintiffs' dispute to Facts 15 and 31.<br><br>What a potential jury could find does not create a triable issue of fact. Plaintiffs must present a dispute, supported by evidence – not speculation, that would allow a reasonable jury to conclude that it is more likely |

Case No. 2:23-cv-07532-DMG-SSC

| Defendant's Uncontroverted Facts and Supporting Evidence | Plaintiff's Disputed Facts and Supporting Evidence | Defendant's Response |
|---|---|---|
| • Exh. 16: Silva CHP Statement, p. 17:21-23. | accurately perceived Alaniz as unarmed. | than not Silva perceived Alaniz as unarmed. Plaintiffs have not presented any such evidence. |
| 39. Silva's focus was on where Alaniz would next appear right in front of him.<br><br>*Supporting Evidence*:<br>• Exh. 9: Silva DOJ Statement, pp. 32:25-33:9. | Disputed.<br><br>See Plaintiffs' response to SUF 31, Silva's incredible misperception of events is circumstantial evidence that he was not focused on where Alaniz would next appear. Otherwise, he would likely have perceived that Alaniz did not have a weapon, just as Van Dragt did. | Plaintiffs do not dispute that Silva momentarily lost sight of Alaniz behind Van Dragt's car. However, without evidence, plaintiffs now dispute that Silva was focused on where Alaniz would next appear. This is a nonsensical argument.<br><br>*See* defendant's response to plaintiffs' dispute to Fact 31. |
| 40. Van Dragt thought Alaniz was going to attack him.<br><br>*Supporting Evidence*:<br>• Exh. 7: Van Dragt Deposition, pp. 24:4-21, 39:12-14. | Disputed.<br>**Exh. F**: Van Dragt Dep., p. 7:6-16 (Van Dragt saw Alaniz pull out an objection from his jacket pocket before he started running in his direction, but it | *See* defendants' response to plaintiffs' dispute to Facts 31, 32, 36, and 38. |

21

| Defendant's Uncontroverted Facts and Supporting Evidence | Plaintiff's Disputed Facts and Supporting Evidence | Defendant's Response |
|---|---|---|
| | looked like "a subway sandwich." A reasonable jury could find his testimony that he feared Alaniz would attack him with a Subway sandwich to lack credibility). | |
| 41. Van Dragt retreated toward the front of his car away from Alaniz while holstering his gun and drawing his Taser.<br><br>*Supporting Evidence*:<br>• Exh. 7: Van Dragt Deposition, pp. 37:4-11; 38:2-16.<br>• Exh. 8 - Silva Deposition, p. 44:8-13.<br>• Exh. 14: BWC: 6:57-7:04.<br>• Exh. 19: Blake Video File: 6:577:04.<br>• Exh. 20: Blake Video File: 0:000:05. | Undisputed. | |
| 42. Van Dragt ordered Alaniz to get on the ground.<br><br>*///*<br><br>*///* | Undisputed. | |

| Defendant's Uncontroverted Facts and Supporting Evidence | Plaintiff's Disputed Facts and Supporting Evidence | Defendant's Response |
|---|---|---|
| *Supporting Evidence*: <br>• Exh. 2 - Acosta Deposition, pp. 20:18-21:10. <br>• Exh. 15 - Van Dragt Deposition, p. 39:10-14. <br>• Exh. 17 - MVARS: 7:00-7:07. <br>• Exh. 18: Blake Video File: 0:120:19. <br>• Exh. 20: Blake Video File: 0:000:07. | | |
| 43. Van Dragt fired the Taser when Alaniz was 3-5 feet away from him as he was retreating around his car. <br><br>*Supporting Evidence*: <br>• Exh. 7: Van Dragt Deposition, 36:23-37:1, 37:17-39:14, 52:1417. <br>• Exh. 14: BWC: 7:04. <br>• Exh. 17: MVARS: 7:07-7:09. <br>• Exh. 18: Blake Video File: 0:18-0:22. <br>• Exh. 19: Blake Video File: 7:04. | Disputed in part. <br><br>**Exh. H**: BWC: 7:00-7:06 (based on the video, it appears that Van Dragt is approximately 10 feet from Alaniz at the time he fires his Taser.) | Plaintiffs' "dispute" only concerns the distance between Van Dragt and Alaniz. However, plaintiffs provide no evidentiary support for their estimate of the approximate "10 feet" distance. |
| 44. Van Dragt did not hear gunshots before deploying his Taser. <br><br>/// | Undisputed. | |

| Defendant's Uncontroverted Facts and Supporting Evidence | Plaintiff's Disputed Facts and Supporting Evidence | Defendant's Response |
|---|---|---|
| *Supporting Evidence*:<br>• Exh. 7: Van Dragt Deposition, p. 39:23-25. | | |
| 45. Silva heard what he thought was a gunshot from the direction of Van Dragt and Alaniz and saw Van Dragt to a "weird side step thing."<br><br>*Supporting Evidence*:<br>• Exh. 8: Silva Deposition, pp. 51:1-52:9.<br>• Exh. 9: Silva DOJ Statement, p. 17:18-23. | Disputed.<br><br>**Exh. H**: BWC: 7:00-7:06 (the sound of the Taser is nothing like a gunshot, a reasonable jury could find Silva's testimony on this point to lack credibility.) | The "sound of the Taser is nothing like a gunshot" is not a fact but an argument.  And the only evidence is that it can = plaintiff presents no contrary evidence.<br><br>What a potential jury could find does not create a triable issue of fact. Plaintiffs must present a dispute, supported by evidence – not speculation, that would allow a reasonable jury to conclude that it is more likely than not that a Taser sounds nothing like a gun or that Silva's testimony lacks credibility as to what he heard.<br><br>Plaintiffs have not presented any such evidence. Further, plaintiffs' police practices expert does not provide any opinion in support of plaintiffs' argument that the "sound of the Taser is nothing like a gunshot".  *See* DeFoe Declaration<br><br>Silva and Van Dragt both testified as to the sound of a Taser being similar to that of a gunshot. |

24

| Defendant's Uncontroverted Facts and Supporting Evidence | Plaintiff's Disputed Facts and Supporting Evidence | Defendant's Response |
|---|---|---|
| | | • Exh. 8: Silva Deposition, pp. 51:1-52:9.<br>• Exh. 7: Van Dragt Deposition, p. 42:3-23. |
| 46. A Taser deployment can sound like a gunshot and can be difficult to distinguish.<br><br>*Supporting Evidence*:<br>• Exh. 8: Silva Deposition, pp. 51:1-52:3.<br>• Exh. 7: Van Dragt Deposition, p. 42:3-23. | Disputed.<br><br>Exh. H: BWC: 7:00-7:06 (the sound of the Taser is nothing like a gunshot, a reasonable jury could find Silva's and Van Dragt's testimony on this point to lack credibility.). | *See* defendants' response to plaintiffs' dispute of Fact 45. |
| 47. Silva did not know Van Dragt transitioned to a Taser.<br><br>*Supporting Evidence*:<br>• Exh. 8: Silva Deposition, p. 50:23-25. | Disputed.<br><br>**Exh. H**: BWC: 7:00-7:06 (Van Dragt is clearly visible switching to his Taser in Silva's BWC. A jury could find that he saw what is clearly depicted on his camera and that his testimony lacks credibility.) | Plaintiffs present no evidence in support of this "disputed" fact, a fact supported by Silva's testimony.<br><br>What a potential jury could find does not create a triable issue of fact. Plaintiffs must present a dispute, supported by evidence – not speculation, that would allow a reasonable jury to conclude that it is more likely than not that Silva knew Van Dragt transitioned to a Taser. Drawing the inference that Silva saw something simply because it is visible on the BWC is not based on evidence |

| Defendant's Uncontroverted Facts and Supporting Evidence | Plaintiff's Disputed Facts and Supporting Evidence | Defendant's Response |
|---|---|---|
| | | and a purely speculative and unreasonable inference. |
| 48. Van Dragt did not know if the Taser darts hit Alaniz because he deployed it "on the move."<br><br>*Supporting Evidence*:<br>• Exh. 7: Van Dragt Deposition, p. 44:6-11. | Disputed.<br><br>**Exh. H**: BWC: 7:00-7:06; Exh. N: Frame-by-frame version of Silva's BWC, frames 8–15 (the Taser is clearly visible and the video shows Silva's reaction); **Exh. I**: Autopsy Report, p. 4; **Exh. J**: Defoe Decl., ¶¶ 10-11 (the autopsy and DeFoe declaration support the fact that the taser was successfully depoyed, which is evidence supporting that Van Dragt would have seen that, since he was looking at Alaniz at the time.) | Plaintiffs present no evidence in support of this "disputed" fact. Van Dragt testified that at the time of the incident he did not know if the Taser darts successfully hit Alaniz. Any "after the fact" discovery that the Taser darts did hit Alaniz are immaterial.<br><br>Drawing the inference that Van Dragt "would have seen" the Taser darts hit Alaniz because it is visible on the BWC is not based on evidence but an unreasonable inference and purely speculative.  Only the actual Taser can be seen, not the wires and certainly not the tiny darts. |
| 49. Alaniz came around the corner of Van Dragt's car in a "shooter's stance" | Disputed.<br><br>See Plaintiffs' response to SUF | *See* defendants' response to plaintiffs' dispute to Fact 30. |

| Defendant's Uncontroverted Facts and Supporting Evidence | Plaintiff's Disputed Facts and Supporting Evidence | Defendant's Response |
|---|---|---|
| pointing his outstretched arms with hands together while moving toward the officers.<br><br>*Supporting Evidence*<br>• Exh. 8: Silva Deposition, pp. 13:22-14:1, 51:1-5, 52:4-23.<br>• Exh. 9: Silva DOJ Statement, pp. 17:13-18:5, 35:7-36:7, 39:1-18.<br>• Exh. 14: BWC: 7:02-7:04.<br>• Exh. 16: Silva CHP Statement, pp. 17:24-18:15.<br>• Exh. 19: Blake Video File: 7:027:04.<br>• Exh. 20: Blake Video File: 0:040:06.<br>• Exh. 23: Blake PDF File.<br>• Exh. 24: Blake PDF File.<br>• Exh. 25: Zhou AG Statement, pp. 4:20-25.<br>• Exh. 26: Horbino AG Statement, pp. 2:23-3:9, 5:9-16, 8:19-22. | 30. It is misleading to describe someone as being in a "shooter's stance" when they are not holding anything that resembles a gun. | |
| 50. Believing Alaniz had a gun and was a threat, Silva used deadly force against Alaniz.<br><br>/// | Disputed.<br><br>See Plaintiffs' response to SUF 31. A reasonable jury could find that he did not | *See* defendants' response to plaintiffs' dispute to Facts 31, 32, and 36. |

27

| Defendant's Uncontroverted Facts and Supporting Evidence | Plaintiff's Disputed Facts and Supporting Evidence | Defendant's Response |
|---|---|---|
| *Supporting Evidence*:<br>• Exh. 8: Silva Deposition, pp. 58:17-20, 60:8-13.<br>• Exh. 9 - Silva DOJ Statement, pp. 15:21-16:1, 28:21-29:13, 43:16-22, 44:13-45:3.<br>• Exh. 14: BWC: 7:04-7:06.<br>• Exh. 16: Silva CHP Statement, pp. 19:23-20:6.<br>• Exh. 18: Blake Video File: 0:150:22.<br>• Exh. 19: Blake Video File: 7:047:06.<br>• Exh. 20: Blake Video File: 0:000:12.<br>• Exh. 23: Blake PDF File.<br>• Exh. 24: Blake PDF File. | perceive a gun and did not perceive an immediate threat of death or severe bodily injury. | |
| 51. When Silva fired his gun, he was about five feet from Alaniz who was moving forward.<br><br>*Supporting Evidence*:<br>• Exh. 8: Silva Deposition, pp. 66:19-67:1.<br>• Exh. 14: BWC: 7:04-7:06.<br>• Exh. 19: Blake Video File: 7:04-7:06.<br>/// | Disputed.<br><br>**Exh. H**: BWC: 7:00-7:06 (based on the video, it appears that Van Dragt is approximately 15 feet from Alaniz at the time he fires his Taser); Exh. N (just prior to the shots, Alaniz appears to | Plaintiffs dispute the distance between Silva and Alaniz without providing any evidentiary support for their contention that it was "approximately 15 feet".<br><br>Further, Exh. N does not support plaintiffs' position that Alaniz "appears to turn away from the officers" prior to "the shots". Carefully reviewing Exh. N, the photos show that Alaniz was continuing to run |

| Defendant's Uncontroverted Facts and Supporting Evidence | Plaintiff's Disputed Facts and Supporting Evidence | Defendant's Response |
|---|---|---|
| • Exh. 20: Blake Video File: 0:00-0:12.<br>• Exh. 23: Blake PDF File.<br>• Exh. 24: Blake PDF File. | turn away from the officers.) | toward the officers. |
| 52. Silva thought he was going to get shot if he did not use deadly force.<br><br>*Supporting Evidence*:<br>• Exh. 9: Silva DOJ Statement, p. 45:4-8. | Disputed.<br><br>See Plaintiffs' response to SUF 50. | *See* defendants' response to plaintiffs' dispute to Facts 31, 36, and 38. |
| 53. Silva's intent when he fired was to neutralize a lethal threat.<br><br>*Supporting Evidence*:<br>• Exh. 9: Silva DOJ Statement, p. 17:18-23. | Disputed.<br><br>See Plaintiffs' response to SUF 50. | *See* defendants' response to plaintiffs' dispute to Facts 19, 31, 36, and 38. |
| 54. Silva did not believe he had any other options.<br><br>*Supporting Evidence*:<br>• Exh. 9: Silva DOJ Statement, pp. 33:10-35:6, 48:20-49:15. | Disputed.<br><br>See Plaintiffs response to SUF 31, Plaintiffs dispute that he perceived a gun, therefore, Plaintiffs dispute whether he thought he faced an imminent threat, therefore, Plaintiffs contend that he knew he had less lethal alternatives. | *See* defendants' response to plaintiffs' dispute to Facts 31, 36, and 38. |

29

| Defendant's Uncontroverted Facts and Supporting Evidence | Plaintiff's Disputed Facts and Supporting Evidence | Defendant's Response |
|---|---|---|
| | Exh. H: BWC 7:04 (Van Dragt, another officer at the scene believed there were non-lethal options, and used one, i.e. a Taser) | |
| 55. Van Dragt reported "shots fired" around 11:32 a.m.<br><br>*Supporting Evidence*:<br>• Exh. 6: Incident Log, p. 4([67]).<br>• Exh. 8: Silva Deposition, p. 73:13-15.<br>• Exh. 10: Dispatch Transcript, p. 10.<br>• Exh. 11: Dispatch Recordings: 13:52-15:05.<br>• Exh. 17: MVARS: 7:12-7:14. | Undisputed. | |
| 56. About 30 seconds elapsed between Silva's arrival (stopping) and the shooting.<br><br>*Supporting Evidence*:<br>• Exh. 14: BWC: 6:35-7:04. | Undisputed. | |

Case No. 2:23-cv-07532-DMG-SSC

| Defendant's Uncontroverted Facts and Supporting Evidence | Plaintiff's Disputed Facts and Supporting Evidence | Defendant's Response |
|---|---|---|
| • Exh. 19: Blake Video File: 6:357:04. | | |
| 57. Officers provided Alaniz with medical care for about 4 minutes until the fire department arrived and took over at 11:36 a.m.<br><br>Supporting Evidence:<br>• Exh. 6: Incident Log, p. 4 ([6985]).<br>• Exh. 7: Van Dragt Deposition, pp. 54:2-12, 54:21-55:2.<br>• Exh. 8: Silva Deposition, p. 27:17-23.<br><br>• Exh. 10: Dispatch Transcript, p. 14.<br>• Exh. 11: Dispatch Recordings: 19:57-20:13.<br>• Exh. 27: LA County Records.<br>• Exh. 28: McCormick Records. | Disputed.<br><br>Officers did not provide immediate medical care.<br>**Exh. H**. BWC: 7:00 –9:25 (Two and a half minutes passed between Silva killing Alaniz and Silva and two other officers putting his limp body in handcuffs). So it is incorrect to say "medical care was provided for four minutes until the fire department arrived and took over" | Immaterial as plaintiffs do not maintain a failure to provide medical care claim |
| 58. Paramedics took Alaniz to the hospital where he was pronounced dead at 12:08 p.m.<br><br>*Supporting Evidence*:<br>• Exh. 27: LA County Records.<br>• Exh. 28: McCormick | Undisputed. | |

| Defendant's Uncontroverted Facts and Supporting Evidence | Plaintiff's Disputed Facts and Supporting Evidence | Defendant's Response |
|---|---|---|
| Records. | | |
| 59. An open eyeglass case holding a glass pipe was found at the scene that Dragt believes was in Alaniz' hands<br><br>*Supporting Evidence*:<br>• Exh. 7: Van Dragt Deposition, pp. 58:24-61:10 and exhibits 3-5 to his deposition.<br>• Exhs. 29, 31-35. | Disputed in part.<br><br>Undisputed that an eyeglass case holding a glass pipe was found at the scene that Dragt believes was in Alaniz' hands.<br><br>Disputed that it was open. There is no testimony that the officers at the scene saw the eyeglass case *open.* | This fact is labeled "disputed in part" in an effort to create a triable issue of fact where none exists. Plaintiffs provide no evidence to dispute that the eyeglass case was open. |
| 60. A black vape pen was also found at the scene.<br><br>*Supporting Evidence*:<br>• Exhs. 29, 30. | Undisputed. | |
| 61. Plaintiffs' expert concludes that Alaniz was intent on committing "suicide by cop", which is where "a suicidal individual deliberately behaves in a threatening manner with the intent to provide a lethal response from a | Disputed in part.<br><br>These statements were part of DeFoe's analysis but they are not correctly characterized as conclusions. | This fact is labeled "disputed in part" in an effort to create a triable issue of fact where none exists. It is a conclusion. Regardless, plaintiffs do not dispute Alaniz was intent on committing "suicide by cop." |

| Defendant's Uncontroverted Facts and Supporting Evidence | Plaintiff's Disputed Facts and Supporting Evidence | Defendant's Response |
|---|---|---|
| law enforcement officer to end their own life." *Supporting Evidence*: • Exh. 36: DeFoe Rule 26 Report Excerpt. | | |

### Defendant's Response to Plaintiff's Additional Material Facts

| Plaintiff's Additional Material Facts | Defendant's Disputed Facts and Supporting Evidence |
|---|---|
| 1. On the morning of May 4, 2022, John Alaniz was experiencing a mental health crisis while he was walking alongside the shoulder of the westbound 105 freeway in Paramount, California.<br><br>**Exh. A**: Acosta Interview, May 4, 2022, p. 2:12-16<br>**Exh. B**: Truck Video: 1:40-1:50 | Undisputed. |
| 2. Alaniz ran in front of a semi-truck that was travelling westbound at approximately 55 miles per hour.<br><br>**Exh. A**: Acosta Interview, May 4, 2022, pp. 2:12–14; 3:10<br>**Exh. B**: Truck Video: 1:40-1:50 | Undisputed. |
| 3. He was struck and launched westward by the force of the impact, hitting his head against the pavement.<br><br>**Exh. B**: Truck Video: 1:40-1:50 | Undisputed. |
| 4. The semi-truck and a white pick-up truck in the next lane both | Undisputed. |

| Plaintiff's Additional Material Facts | Defendant's Disputed Facts and Supporting Evidence |
|---|---|
| stopped to avoid running him over.<br><br>**Exh. B**: Truck Video: 1:40-1:50 | |
| 5. Alaniz remained on the ground for nearly three minutes while witnesses got out of their cars to check on him and to call for help.<br><br>**Exh. A**: Acosta Interview: May 4 2022, p. 4:2-4<br>**Exh. B**: Truck Video: 1:40 – 4:40 | Undisputed. |
| 6. One of the witnesses, Acosta, exited his white pick-up truck to check on the Alaniz and saw that he was bleeding from the head and appeared unconscious.<br><br>**Exh. C**: Acosta Dep., pp. 2:20-21; 3:12 | Undisputed. |
| 7. After about three minutes, Alaniz regained consciousness, stood up, and started stumbling along the freeway shoulder.<br><br>**Exh. C**: Acosta Dep., p. 3:1-5<br>**Exh. D**: Acosta Interview, Sept. 27, 2022, p. 4:9-16 | Undisputed. |
| 8. Acosta followed Alaniz because he was concerned for his safety.<br><br>**Exh. C**: Acosta Dep., p. 4:18-22 | Undipsuted. |
| 9. Acosta called 911 and reported that someone had been hit by a truck and was continuing to walk down the freeway, possibly trying to jump into traffic again.<br><br>**Exh. C**: Acosta Dep., p. 4:1-10 | Undisputed. |

34

| Plaintiff's Additional Material Facts | Defendant's Disputed Facts and Supporting Evidence |
|---|---|
| 10. At one point, Alaniz put his head under the tire of a slow-moving semi-truck, but the driver stopped before running him over.<br><br>**Exh. C**: Acosta Dep., p. 5:12-20 | Undisputed. |
| 11. As Alaniz continued to stumble west on the highway, Acosta followed him, trying to help him for approximately 12 minutes before CHP officers arrived.<br><br>**Exh. C**: Acosta Dep., p. 6:14-20 | Undisputed. |
| 12. In that time, Alaniz never hurt or threatened to hurt anyone.<br><br>**Exh. C**: Acosta Dep., p. 11:9-11 | Undisputed.  But this does not mean Alaniz was not a danger.  Alaniz was walking in the middle of traffic lanes. His actions showed a complete disregard for the safety of the cars driving on the freeway and the likelihood of those drivers causing an accident in an effort to avoid him. |
| 13. He was clearly only intent on harming himself.<br><br>**Exh. C**: Acosta Dep., p. 6:3-4 | Undisputed but see defendants' response to plaintiffs' additional Fact 12. |
| 14. At one point, he turned to Acosta, who was attempting to prevent him from doing so, and told him to save himself.<br><br>**Exh. C**: Acosta Dep., p. 5:11-13 | Undisputed. |
| 15. Alaniz was concerned that Acosta might get hurt while trying to help.<br><br>**Exh. C**: Acosta Dep., p. 5:18-19 | Disputed as to Alaniz's state of mind, Drawing the inference that Alaniz was concerned that Acosta might get hurt is purely speculitive. Conclusions of fact or law do not constitute evidentiary facts. |

35

| Plaintiff's Additional Material Facts | Defendant's Disputed Facts and Supporting Evidence |
|---|---|
| | Its immaterial anyway. |
| 16. Alaniz was severely injured from the collisions; he was bleeding a lot from his head and blood was running down his face and jacket.<br><br>**Exh. D**: Acosta Interview, Sept. 27, 2022, pp. 5:21-6:1 | Disputed as to "severely" as that is subjective but immaterial. |
| 17. At approximately 11:31 a.m., Officer Ramon Silva arrived on scene, approaching from the opposite direction of traffic.<br><br>**Exh. C**: Acosta Dep., p. 7:8-25<br>**Exh. E**: Dispatch Transcript, p. 4 | Undisputed. |
| 18. Silva had learned from dispatch that Alaniz was suicidal, and he had been walking in lanes while bleeding, and actively trying to jump in front of vehicles.<br><br>**Exh. E**: Dispatch Transcript, pp. 2-3<br>**Exh. F**: Van Dragt Dep., p 2:8-10 | Disputed. The evidence cited does not support what Silva learned but only what dispatch said and what Van Dragt heard. |
| 19. Silva knew Alaniz was potentially suffering from a mental health crisis.<br><br>**Exh. E**: Dispatch Transcript, p. 3:12-17<br>**Exh. G**: Silva Dep., p. 2:2-8 | Disputed as to "mental health crisis" but Silva did believe Alaniz was "potentially suicidal." |
| 20. Silva had no information indicating that Alaniz had a weapon.<br><br>**Exh. G**: Silva Dep., p. 3:1-9 | Undisputed based on information Silva obtained from dispatch before he arrived on scene. However, this does not mean Silva knew Alaniz did not have a weapon. And once Silva arrived, based on Alaniz's actions, Silva believed that Alaniz was |

| Plaintiff's Additional Material Facts | Defendant's Disputed Facts and Supporting Evidence |
|---|---|
| | somebody who had the capability of violence and somebody who was "readily capable of inflicting harm on others." |
| | Exh. 9: Silva Depo., p. 20:10-17. |
| 21. He had no information that Alaniz had harmed or threatened to harm anyone but himself.<br><br>**Exh. G**: Silva Dep., p. 3:1-9 | Undisputed based on information Silva obtained from dispatch before arriving on scene. *See* defendants' response to plaintiffs' additional Fact 20. |
| 22. Unlike Acosta and the other Good Samaritans, who had been managing this situation admirably for more than 12 minutes, when Silva arrived he was agitated and erratic, shouting commands while inexplicably waving traffic to continue driving.<br><br>**Exh. H**: BWC 6:15 – 6:45 | Disputed as this is not a fact but argument and counsel's own immaterial description of what the video shows and what counsel thinks of the witnesses.  Also, Silva was waiving a citizen out of the area and away from Alaniz to "isolate the source of the call" and prevent injury to other people. Silva shouted commands to Acosta to get behind Silva to ensure he was safe and out of harm's way.<br><br>Exh. 9: Silva Dep., pp. 13:3-16; 28:12-14.<br><br>Doc. 70-6, p. 8:4-9 (Plaintiffs' Exh. C). |
| 23. When Silva arrived, he saw Acosta, Alaniz, and another individual "standing around," near the shoulder.<br><br>**Exh. G**: Silva Dep., p. 4:2-5<br>of the highway. | Undisputed. |
| 24. Acosta, who has been helping Alaniz for nearly twenty minutes, approached Silva and tried to convey some information to him, but Silva ignores him and screams | Disputed in part as argument and unsupported by the evidence cited. There is no evidence that Acosta was trying to convey information to Silva regarding Alaniz. |

| Plaintiff's Additional Material Facts | Defendant's Disputed Facts and Supporting Evidence |
|---|---|
| at him to get behind him, "Move! Move! Move! Move! Move!"<br><br>**Exh. C**: Acosta Dep., p. 8:6-9<br>**Exh. H**: BWC 6:15 – 7:00 | |
| 25. Silva does not even attempt to gather critical information from Acosta to learn critical facts like whether anyone is injured, whether Alaniz is attacking or threatening anyone, or whether Alaniz has a weapon.<br><br>**Exh. H**: BWC 6:15 – 7:00 | *See* defendants' response to plaintiffs' additional Fact 24. |
| 26. Van Dragt arrived in his patrol car around 10 seconds after Silva and positioned his vehicle at an angle to the shoulder between Alaniz and Silva, about 60 feet in front of Silva.<br><br>**Exh. H**: BWC 6:50 | Disputed in part as plaintiffs provide no evidentiary support for their estimate of the approximate "60 feet" distance between Van Dragt's vehicle and Silva. |
| 27. At the same time, Silva approached, unholstering his weapon and ordering Alaniz to show his hands.<br><br>**Exh. H**: BWC 6:58 | Undisputed. |
| 28. Alaniz took his hands out of his pockets, in compliance with the order.<br><br>**Exh. H**: BWC 6:59<br><br>/// <br><br>/// | Disputed in part. Alaniz initially complied but then put his hands back into his pockets.<br><br>Exh. 8: Silva Deposition, p. 39:6-10,<br><br>Exh. 7: Van Dragt Deposition, pp. 20:25-22:5. |

| Plaintiff's Additional Material Facts | Defendant's Disputed Facts and Supporting Evidence |
|---|---|
| 29. With his hands visible, Alaniz started walking toward Van Dragt before breaking into a slow run.<br><br>**Exh. C**: Acosta Dep., pp. 9:24-25; 10:1<br>**Exh. H**: BWC 7:00 | Disputed in part. Alaniz initially complied but then put his hands back into his pockets. Alaniz immediately started running at Van Dragt while removing an object from his pocket and getting into a "shooting platform" as Van Dragt retreated toward the front of his car away from Alaniz. It was not a "slow run", Acosta testified that Alaniz was "charging at them".<br><br>Exh. 2: Acosta Deposition, pp. 21:11-22:5.<br><br>Exh. 7: Van Dragt Deposition, pp. 22:21-24:6.<br><br>Exh. 8: Silva Deposition, pp. 41:20-42:10, 42:18-43:11.<br><br>Exh. 9: Silva DOJ Statement, p. 15:4-20.<br><br>Exh. 14: BWC: 6:57-7:04.<br><br>Exh. 19: Blake Video File: 6:577:04.<br><br>Exh. 20: Blake Video File: 0:000:12.<br><br>Exh. 21: Blake PDF File.<br><br>Exh. 22: Blake PDF File. |
| 30. Van Dragt saw that Alaniz did not have a gun or a knife<br><br>**Exh. F**: Van Dragt Dep., p. 3:10-21 | Disputed as it misstates the evidence. Van Dragt testified that "I couldn't determine what it was. It could have been a gun. It could have been a knife. I don't know."<br><br>Exh. 7: Van Dragt Deposition, p. 24:4-17. |
| 31. As Alaniz rounded the rear of Officer Van Dragt's patrol unit, Van Dragt deployed his taser at | Disputed in part. This is plaintiffs' interpretation of the BWC and it does not show a Taser strike nor Alaniz seizing up |

| Plaintiff's Additional Material Facts | Defendant's Disputed Facts and Supporting Evidence |
|---|---|
| Alaniz, striking him and causing him to seize up.<br><br>**Exh. H**: BWC 7:04 | and there is no medical evidence or any other evidence establishing a successful Taser strike that is not inadmissible. *See* Objections to DeFoe Declaration. |
| 32. The autopsy report indicates that the taser barbs penetrated Alaniz, which would likely mean the Taser was effective.<br>**Exh. I**: Autopsy Report, p. 4<br>**Exh. J**: Defoe Decl., ¶¶ 10-11 | Disputed as the evidence cited does not establish the fact or is inadmissible. The autopsy report states "two projectiles" (i.e., bullets) were recovered from "within the body" and one Taser barb "is recovered from the clothing." DeFoe's opinion is inadmissible. *See* Objections to DeFoe's Declaration. |
| 33. About one second after the Taser was fired, while Alaniz was seizing up from the effects of the Taser, Silva shot five rounds at Alaniz without warning, striking his left leg, his right leg, and his chest.<br><br>**Exh. I**: Autopsy Report, pp. 2–3<br>**Exh. J**: Defoe Decl., ¶¶ 10-11<br>**Exh. N**: Frame-by-frame version of Silva's BWC, frames 8–15. | Disputed in part as to the Taser issue. *See* defendants' response to plaintiffs' additional Fact 31. Undisputed as to a verbal warning but pointing a gun at someone is a warning itself. |
| 34. Alaniz died from his injuries.<br><br>**Exh. I**: Autopsy Report, p. 4 | Undisputed. |
| 35. Two and a half minutes after killing Alaniz, Silva and two other officers put his limp body in handcuffs.<br><br>**Exh. H**. BWC: 7:00 – 9:25 | Undisputed but immaterial. |
| 36. A witness can be heard exclaiming, "You guys are going to handcuff a dead guy? He's dead! He's dead! You're handcuffing a dead guy!" | Undisputed but immaterial. |

| Plaintiff's Additional Material Facts | Defendant's Disputed Facts and Supporting Evidence |
|---|---|
| **Exh. K**. Red Truck Video | |
| 37. Acosta saw the entire incident and testified that he did not perceive a gun in Alaniz's hand.<br><br>**Exh. C**: Acosta Dep., 10:8-18 | Disputed in part. Plaintiffs misstate the evidence. Acosta testified that he did not see Alaniz pull anything out of his pocket, not that he did not "perceive a gun" in Alaniz's hand. |
| 38. Van Dragt did not see anything that even "looked like a firearm in any way." **Exh. M**: Van Dragt Interview, May 109, 2022, p. 2:15-18 (this fact is a fair inference from his statement because did not shoot and he stated that he would have shot if he saw anything that looked like a firearm in any way) | Disputed as it misstates the evidence. *See* defendant's response to plaintiffs' additional Fact 30. |
| 39. Acosta was positioned several feet west of Silva's motorcycle and saw the entire incident.<br><br>**Exh. D**: Acosta Interview, Sept. 27, 2022, pp. 2:9; 3:22 | Disputed in part. Acosta was west of Silva's motorcycle, but similar to Silva, Acosta's view was obscured.<br><br>Exh. 14: BWC: 6:55 |
| 40. As Alaniz moved toward the officers, Acosta saw him put his hand into his pocket.<br><br>**Exh. C**: Acosta Dep., p. 10:13-20 | Undisputed. |
| 41. But Acosta did not see the individual pull any object out of his pocket prior to the shots.<br><br>**Exh. C**: Acosta Dep., 10:8-18 | Disputed in part. *See* defendants' response to plaintiffs' additional Fact 39. |
| 42. Van Dragt saw Alaniz pull out an objection from his jacket pocket before he started running in his direction, but the object as looked like "a subway sandwich." | Disputed in part. *See* defendants' response to plaintiffs' additional Fact 30. |

| Plaintiff's Additional Material Facts | Defendant's Disputed Facts and Supporting Evidence |
|---|---|
| **Exh. F**: Van Dragt Dep., p. 7:6-16 | |
| 43. The object in Alaniz's hands was probably the gray sunglass case that was found at the scene.<br><br>**Exh. F**: Van Dragt Dep., pp. 7:21-24; 8:20-9:18 | Undisputed. |
| 44. He is certain that he did not see a gun, otherwise he would not have holstered his firearm.<br><br>**Exh. F**: Van Dragt Dep., p. 6:6-21 | Disputed as it misstates the evidence. *See* defendants' response to plaintiffs' additional Fact 30. |
| 45. Seconds after the shooting, Silva and van Dragt have this important exchange:<br>**Silva**: What did he have in his hand? Was that a gun?<br>**Van Dragt**: No, it was nothing.<br><br>**Exh. H**: BWC: 7:16-7:21 | Disputed as to the characterization but undisputed as the content of the conversation. |
| 46. According to Silva's own perception, the gray sunglass case that that was most likely the object in Alaniz's hands "doesn't look like a gun, obviously."<br><br>**Exh. G**: Silva Dep., pp. 10:19-11:4 | Undisputed but immaterial because the testimony was at Silva's deposition where he was shown a picture of the glasses case on the ground after the incident which says nothing about what Silva reasonably perceived at the time of the shooting.<br><br>Similarly, Van Dragt testified that "I couldn't determine what it was. It could have been a gun. It could have been a knife. I don't know."<br><br>Exh. 7: Van Dragt Deposition, p. 24:4-17.<br><br>Exh. 8: Silva Deposition, pp. 58:17-20, 60:8-13 67:19.<br><br>Exh. 9: Silva DOJ Statement, pp. 15:21-16:1, 28:21-29:13. |

| Plaintiff's Additional Material Facts | Defendant's Disputed Facts and Supporting Evidence |
|---|---|
| | Exh. 16: Silva CHP Statement, pp. 19:23-20:6. |
| 47. Silva was trained to yell "gun" upon seeing an armed suspect, to warn other officers of the lethal danger.<br><br>**Exh. G**: Silva Dep. p. 6:16-20 | Undisputed. |
| 48. He failed to do so.<br><br>**Exh. G**: Silva Dep., pp. 6:25-7:2 | Undisputed but immaterial because it was not feasible to do so given the incredibly rapid presentation of the threat Alaniz posed. |
| 49. Silva was trained to order armed suspects to "drop the gun," giving them an opportunity to comply.<br><br>**Exh. G**: Silva Dep., p. 6:21-24 | Undisputed. |
| 50. He gave no such command.<br><br>**Exh. G**: Silva Dep., p. 7:3-4 | Undisputed but immaterial because it was not feasible to do so given the incredibly rapid presentation of the threat Alaniz posed. |
| 51. He was trained he only needed to take these action "when feasible."<br><br>**Exh. G**: Silva Dep., pp. 6:16-24 | Undipsuted. |
| 52. A felt sunglass case does not have the identifying features of a firearm such as a barrel, trigger, trigger guard, grip, or magazine.<br><br>**Exh. F**: Van Dragt Dep., pp. 4:11-5:7<br>**Exh. G**: Silva Dep., pp. 5:5-8; 10:1911:4 | *See* defendants' response to plaintiffs' additional Fact 46. |

43

| Plaintiff's Additional Material Facts | Defendant's Disputed Facts and Supporting Evidence |
|---|---|
| 53. If the object were something similar to a gun, it would be very unlikely that the two other witnesses would say they did not perceive what they thought could be a gun.<br><br>**Exh. C**: Acosta Dep., 10:8-18<br>**Exh. H**: BWC: 7:16-7:21<br>**Exh. M**: Van Dragt Interview, May 10, 2022, p. 2:15-18 | Disputed as this is argument. And the evidence cited does not support the argument. Regarding Van Dragt, *see* defendants' response to plaintiffs' additional Fact 46. Regarding the other witness, he only says he did not see Alaniz pull anything out of pocket. And observations of people in different positions than Silva with different angles and views is immaterial. |
| 54. Van Drag did not see anything that looked like a firearm in anyway.<br><br>**Exh. M**: Van Dragt Interview, May 10, 2022, p. 2:15-18 | *See* defendants' response to plaintiffs' additional Fact 46. |
| 55. Silva admits that he heard the Taser deploy before he opened fire.<br><br>**Exh. G**: Silva Dep., 8-9:3 | Disputed as the evidence does not support the fact. Silva testified that he heard a "pop" before he fired that he though was a gunshot but later learned it was a Taser shot which sounds like a gunshot. |
| 56. Video footage from Silva's perspective clearly shows Van Dragt unholstering his Taser, aiming it, and successfully striking Alaniz.<br><br>**Exh. H**: BWC: 6:55-7:06<br><br>///<br><br>///<br><br>///<br><br>/// | Undisputed as to Van Dragt unholstering his Taser and "aiming" it but immaterial because the evidence says nothing about what Silva observed and he testified that he did not know Van Dragt had transitioned to his Taser.<br><br>Exh. 8: p. 50:23-25 (Silva Deposition).<br><br>There is also no admissible evidence of a successful Taser strike. *See* defendants' response to plaintiffs' additional Facts 31 and 32. |

| Plaintiff's Additional Material Facts | Defendant's Disputed Facts and Supporting Evidence |
|---|---|
| 57. Alaniz's autopsy confirms that he was struck in two places, completing a full circuit, which explains why he seized up in reaction to the Taser.<br><br>**Exh. I**: Autopsy Report, p. 4<br>**Exh. J**: Defoe Decl., ¶¶ 10-11 | *See* defendants' response to plaintiffs' additional Facts 31 and 32. |
| 58. The video further shows Alaniz turning away from the officers after being struck.<br><br>**Exh. H**: BWC: 7:00-7:06<br>**Exh. J**: Defoe Decl., ¶¶ 10-11 | Disputed as the video does not show this. Also, relies on inadmissible evidence. *See* Objections to DeFoe Declaration. |
| 59. Silva—who heard and saw the Taser deploy, witnessed Alaniz seize up and turn away—chose to shoot even though non-lethal force had already been deployed and was actively neutralizing any perceived threat.<br><br>**Exh. H**: BWC: 7:00-7:06<br>**Exh. I**: Autopsy Report, p. 4<br>**Exh. J**: Defoe Decl., ¶¶ 10-11 | Disputed as this is argument and the evidence cited does not support the argument. *See* defendants' response to plaintiffs' additional Facts 31-33, 56-57. |
| 60. When Silva opened fire, Alaniz was not in a "shooter's stance."<br><br>**Exh. N**: Frame-by-frame version of Silva's BWC, frames 8–15. | Disputed as the evidence does not support the fact. |
| 61. Instead, he had already been struck by Van Dragt's Taser, seized up, and turned away from the officers.<br>**Exh. N**: Frame-by-frame version of Silva's BWC, frames 8–15.<br>**Exh. J**: Defoe Decl., ¶¶ 10-11<br>/// | *See* defendants' response to plaintiffs' additional Fact 58. |

| Plaintiff's Additional Material Facts | Defendant's Disputed Facts and Supporting Evidence |
|---|---|
| 62. Acosta, who witnessed the entire encounter, was shocked that Silva shot Alaniz; he did not believe lethal force was necessary and thought the officers should have used non-lethal means to take him into custody.<br><br>**Exh. C**: Acosta Dep., p. 12:2-11 | Disputed as the evidence cited does not establish Acosta was "shocked" but only that he thought the officers should have used a "<u>less-than-lethal</u>" force "before using their gun." Regardless, what he thought is immaterial. |
| 63. Clark also witnessed the incident and thought the same, stating that "they could have done anything they wanted to keep this man alive, but they fucking killed this man."<br><br>**Exh. O**: Red Truck Video 2 | Undisputed but immaterial. |
| 64. Van Dragt was not expecting gunshots, and explained that he would not shoot someone just because the person is suicidal, even if they did position their body in a shooting stance, as alleged by Silva.<br><br>**Exh. F**: Van Dragt Dep., pp. 7:6-10<br><br>///<br><br>///<br><br>///<br><br>///<br><br>///<br><br>/// | Disputed as unsupported by the evidence. Plaintiff cites Van Dragt's response to plaintiffs' hypothetical question. The hypothetical question assumes that Van Dragt could see the individuals' hands. Plaintiffs present fragmentary and equivocal statements taken out of context which misstates the evidence made during a deposition. |

46

| Plaintiff's Additional Material Facts | Defendant's Disputed Facts and Supporting Evidence |
|---|---|
| 65. Silva's view of Alaniz was obstructed by Van Dragt's vehicle until a half second before he fired.<br><br>**Exh. H**: BWC: 7:00-7:06 | Disputed in part. Silva's view was obstructed for a portion of the incident, but to state that his view of Alaniz was obstructed "until half a second before he fired" is misleading. |

Dated: February 14, 2025                              Dean Gazzo Roistacher LLP


By:  /s/ Lee H. Roistacher
               Lee H. Roistacher
               Attorneys for Defendants
               State of California by and through
               California Highway Patrol and
               Officer Ramon Silva
               Email:  lroistacher@deangazzo.com