Dean Gazzo Roistacher LLP
Lee H. Roistacher, Esq. (SBN 179619)
440 Stevens Avenue, Suite 100
Solana Beach, CA 92075
Telephone: (858) 380-4683
Facsimile: (858) 492-0486
E-mail: lroistacher@deangazzo.com

Attorneys for Defendants
State of California by and through California
Highway Patrol and Officer Ramon Silva

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA KIRKMAN AND CARLOS ALANIZ, INDIVIDUALLY AND AS SUCCESSORS-IN-INTEREST TO JOHN ALANIZ, DECEASED,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF CALIFORNIA; RAMON SILVA; AND DOES 1-10, INCLUSIVE,<br><br>Defendant. | Case No.: 2:23-cv-07532-DMG-SSC<br><br>**MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Courtroom: 8C<br>Judge: Hon. Dolly M. Gee<br><br>FPTC: March 25, 2025, 2:00 p.m.<br><br>Trial Date: April 15, 2025, 8:30 a.m. |

## CLAIMS AND DEFENSES

This admittedly tragic case is about a May 4, 2022 officer involved shooting. CHP Officers Ramon Silva and Jonathan Van Dragt separately responded to the I-105 freeway (Silva on a motorcycle and Van Draft in a SUV) because John Alaniz was purposely trying to kill himself by jumping in front of vehicles. Upon contact with the officers, Alaniz apparently decided "suicide by cop" was in his plans. Alaniz ignored commands to remove his hands from his pocket until he pulled object(s) from his pocket and immediately charged directly at the officers with his hands together and outstretched in front of him in the

1

classic "shooter's stance." Reasonably believing Alaniz had a gun and was going to shoot (as anyone would), Silva responded with objectively reasonable deadly force. The entire incident lasted about 30 seconds.

Plaintiffs, Alaniz's parents, are pursuing survivor and wrongful death claims under different legal theories.

**A.    Plaintiffs' Claims[1]**

Defendants note that Claims 1-3 are subject to an interlocutory appeal filed on March 10, 2025. Doc. 76. Defendants' position is this Court lacks jurisdiction to proceed to trial on these claims.

### Claim 1

\*    Fourth Amendment Based 42 U.S.C. § 1983 claim for excessive force brought against Officer Silva on behalf of Alaniz.

### Claim 2

\*    State law battery claim against Silva directly and against the State of California (CHP) vicariously based on excessive force.[2]

### Claim 3

\*    State law Bane Act claim against Silva directly and CHP vicariously based on Silva's violation of Alaniz's Fourth Amendment rights.

### Claim 4

\*    State law negligence claim against Silva directly and CHP vicariously for unreasonable use of deadly force.

///

---

[1] Pursuant to stipulation, the Court dismissed plaintiffs' second claim for relief under 42 U.S.C. § 1983 for denial of medical care under the Fourth Amendment and dismissed from the negligence claim theories based on providing medical care, failing to train and supervise, staffing and the handling of evidence and witnesses. Doc. 60-1. Plaintiffs also dismissed the punitive damage claim against Silva. *Id.* The Court granted summary judgment on plaintiffs' third claim for relief under § 1983 for interference with familial relations under the Fourteenth Amendment. Doc. 75.

[2] CHP admits Silva was in the course and scope of his employment and was acting under color of law.

Plaintiffs bring all these claims as survivor claims seeking to recover damages on Alaniz's behalf and further seek their own personal wrongful death damages.

**B.     Elements of plaintiffs' claims[3]**

Defendants recite the elements as set out in the Ninth Circuit Model Civil Jury Instructions and California Civil Jury Instructions (CACI).  Defendants do not here agree on the content of the instructions, which defendants address in the parties' joint and disputed jury instructions.

### CLAIM 1

**Fourth Amendment Based 42 U.S.C. § 1983 claim for excessive force brought against Officer Silva on behalf of Alaniz.**

**9.25 Particular Rights-Fourth Amendment-Unreasonable Seizure of Person-Excessive Force**

In general, a seizure of a person is unreasonable under the Fourth Amendment if a police officer uses excessive force in defending himself or others. Therefore, to establish an unreasonable seizure in this case, the plaintiff must prove by a preponderance of the evidence that the officer[s] used excessive force.

Under the Fourth Amendment, a police officer may use only such force as is "objectively reasonable" under all of the circumstances. You must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight. Although the facts known to the officer are relevant to your inquiry, an officer's subjective intent or motive is not relevant to your inquiry.

---

[3] Defendants recite the elements as set out in the Ninth Circuit and California Civil Jury Instructions (CACI).  Defendants do not here agree on the content of the instructions, which is addressed in the parties' joint and disputed jury instructions.

In determining whether the officer[s] used excessive force in this case, consider all of the circumstances known to the officer[s] on the scene, including:

(1) the nature of the crime or other circumstances known to the officer at the time force was applied;

(2) whether the decedent posed an immediate threat to the safety of the officer or to others;

(3) whether the decedent was actively resisting arrest or attempting to evade arrest by flight;

(4) the amount of time the officer had to determine the type and amount of force that reasonably appeared necessary, and any changing circumstances during that period;

(5) the relationship between the need for the use of force and the amount of force used;

(6) the extent of the decedent's injury;

(7) any effort made by the officer to temper or to limit the amount of force;

(8) the severity of the security problem at issue;

(9) the availability of alternative methods to subdue the decedet

(10) the number of lives at risk (motorists, pedestrians, police officers) and the parties' relative culpability; i.e., which party created the dangerous situation, and which party is more innocent;

(11) whether it was practical for the officer to give warning of the imminent use of force, and whether such warning was given;

(12) whether it should have been apparent to the officer that the person he used force against was emotionally disturbed;

(13) whether a reasonable officer would have or should have accurately perceived a mistaken fact.

///
///
///
///
///
///
///

# CLAIM 2

**State law battery claim against Silva directly and against the State of California (CHP) vicariously based on excessive force.**

## CACI 1305B

### Battery by Peace Officer (Deadly Force)-Essential Factual Elements

A peace officer may use deadly force only when necessary in defense of human life. Plaintiffs claim that Ramon Silva unnecessarily used deadly force on John Alaniz. To establish this claim, plaintiffs must prove all of the following:

1. That Ramon Silva intentionally touched John Alaniz;

2. That Ramon Silva used deadly force on Leonel Chavez;

3. That Ramon Silva's use of deadly force was not necessary to defend human life;

4. That John Alaniz was killed; and

5. That Ramon Silva's use of deadly force was a substantial factor in causing John Alaniz's death.

Ramon Silva's use of deadly force was necessary to defend human life only if a reasonable officer in the same situation would have believed, based on the totality of the circumstances known to or perceived by Ramon Silva at the time, that deadly force was necessary to defend against an imminent threat of death or serious bodily harm to Ramon Silva or another person.

A person being arrested or detained has a duty not to use force to resist the peace officer unless the peace officer is using unreasonable force.

"Deadly force" means any use of force that creates a substantial risk of causing death or serious bodily injury, including, but not limited to, the discharge of a firearm.

A threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or another

person. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed.

"Totality of the circumstances" means all facts known to the peace officer at the time, including the conduct of Ramon Silva and John Alaniz leading up to the use of deadly force. In determining whether Ramon Silva's use of deadly force was necessary in defense of human life, you must consider Ramon Silva's tactical conduct and decisions before using deadly force on John Alaniz and whether Ramon Silva used other available resources and techniques as an alternative to deadly force, if it was reasonably safe and feasible to do so.

A peace officer who makes or attempts to make an arrest does not have to retreat or stop because the person being arrested is resisting or threatening to resist. Tactical repositioning or other deescalation tactics are not retreat. A peace officer does not lose the right to self-defense by use of objectively reasonable force to effect the arrest or to prevent escape or to overcome resistance. A peace officer does, however, have a duty to use reasonable tactical repositioning or other deescalation tactics.

## CLAIM 3

**State law Bane Act claim against Silva directly and CHP vicariously based on Silva's violation of Alaniz's Fourth Amendment rights**

### CACI 3066

**Bane Act - Essential Factual Elements (Civ. Code, § 52.1)**

Plaintiffs claim that Ramon Silva intentionally interfered with John Alaniz civil rights by threats, intimidation, or coercion. To establish this claim, plaintiffs must prove all of the following:

1. That Ramon Silva acted violently against John Alaniz to prevent him from exercising his right to be free from excessive force under the Fourth Amendment

///

    2.    That Ramon Silva intended to deprive John Alaniz enjoyment of the interests protected by the right to be free from excessive force under the Fourth Amendment

    3.    That John Alaniz was harmed; and

    4.    That Ramon Silva's conduct was a substantial factor in causing John Alaniz's harm.

## CLAIM 4

**State law negligence claim against Silva directly and CHP vicariously for unreasonable use of deadly force.**

### CACI 441

**Negligent Use of Deadly Force by Peace Officer-Essential Factual Elements**

A peace officer may use deadly force only when necessary in defense of human life. Plaintiffs claim that Ramon Silva was negligent in using deadly force to detain, arrest, prevent escape or overcome resistance to John Alaniz. To establish this claim, plaintiffs must prove all of the following:

    1.    That Ramon Silva was a peace officer;

    2.    That Ramon Silva used deadly force on John Alaniz;

    3.    That Ramon Silva's use of deadly force was not necessary to defend human life;

    4.    That John Alaniz was killed; and

    5.    That Ramon Silva's use of deadly force was a substantial factor in causing John Alaniz's death.

Ramon Silva's use of deadly force was necessary to defend human life only if a reasonable officer in the same situation would have believed, based on the totality of the circumstances known to or perceived by Ramon Silva at the time, that deadly force was necessary to defend against an imminent threat of death or serious bodily injury to Ramon Silva or another person.

A person being arrested or detained has a duty not to use force to resist a peace officer unless the peace officer is using unreasonable force.

1  "Deadly force" is force that creates a substantial risk of causing death or serious bodily injury. It is not limited to the discharge of a firearm.

A threat of death or serious bodily injury is "imminent" if, based on the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or to another person. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed.

"Totality of the circumstances" means all facts known to or perceived by the peace officer at the time, including the conduct of Ramon Silva and John Alaniz leading up to the use of deadly force. In determining whether Ramon Silva's use of deadly force was necessary in defense of human life, you must consider Ramon Silva's tactical conduct and decisions before using deadly force on John Alaniz and whether Ramon Silva used other available resources and techniques as an alternative to deadly force, if it was reasonably safe and feasible to an objectively reasonable officer.

A peace officer who makes or attempts to make an arrest does not have to retreat or stop because the person being arrested is resisting or threatening to resist. Tactical repositioning or other deescalation tactics are not retreat. A peace officer does not lose the right to self-defense by using objectively reasonable force to arrest, detain, prevent escape or overcome resistance.

**C.     Defendants' evidence in opposition to plaintiffs' claims**

Defendants will rely on testimony from Silva and Van Dragt, as well as witnesses to the incident. Defendants will rely on videos of the incident from MVARS and BWC, still shots from the video and evidence photographs and diagrams. Defendants will rely on expert testimony in the areas of police

///

practices, human factors, incident reconstruction, pathology and animation and exhibits created by the experts, including an animation of the incident.

The evidence will show, before law enforcement's arrival, that John Alaniz attempted to commit suicide by jumping in front of a truck and trying to get hit my other vehicles and upon law enforcement arrival decedent disobeyed commands and within seconds of their arrival charged at officers with an object in his hands while in a "shooting stance" making Silva's use of deadly force objectively reasonable. Defendants will further rely on pre-incident medical records and police reports demonstrating the decedent's mental illness, suicide attempts and similar behavior.

**D.    Defendants' affirmative defenses**

**First Affirmative Defense**

Qualified immunity on the § 1983 claim

**Second Affirmative Defense**

Comparative fault of decedent

**E.    Elements of Defendants' Affirmative Defense**

**First Affirmative Defense**

**Qualified immunity on the § 1983 claim**

"[O]fficers are entitled to qualified immunity under §1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018). It is a plaintiff's burden to overcome both prongs of qualified immunity. *Spencer v. Pew*, 117 F.4th 1130, 1137 (9th Cir. 2024); *Felarca v. Birgeneau*, 891 F.3d 809, 815 (9th Cir. 2018)

"'When a qualified immunity claim cannot be resolved before trial due to a factual conflict, it is a litigant's responsibility to preserve the legal issue for determination after the jury resolves the factual conflict.' *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1083 (9th Cir. 2009). To preserve the

determination of qualified immunity, a defendant must make a motion for judgment as a matter of law under Rule 50(a). *Id*. The Rule 50(a) motion may be filed "at any time before the case is submitted to the jury.' *Id.* at 1081. If the district court denies the Rule 50(a) motion, the defendant must then renew the motion for judgment as a matter of law under Rule 50(b) to preserve the qualified immunity defense. *Id*." *Lam v. City of San Jose*, 869 F.3d 1077, 1088 (9th Cir. 2017).

When there are disputed factual issues that are necessary to a qualified immunity decision, these issues must first be determined by the jury before the court can rule on qualified immunity. *Morales v. Fry*, 873 F.3d 817, 824 (9th Cir. 2017). "[S]pecial interrogatories to the jury can be used to establish disputed material facts." *Id.* "[O]nly the jury can decide the disputed factual issues, while only the judge can decide whether the right was clearly established once the factual issues are resolved." *Id.*

## Second Affirmative Defense

## Comparative Fault

## CACI 401

## Basic Standard of Care

Negligence is the failure to use reasonable care to prevent harm to oneself or to others. A person can be negligent by acting or by failing to act. A person is negligent if that person does something that a reasonably careful person would not do in the same situation or fails to do something that a reasonably careful person would do in the same situation. You must decide how a reasonably careful person would have acted in John Alaniz's situation.

///
///
///
///

10

# CACI 407

## Comparative Fault of Decedent

Ramon Silva and CHP claim that John Alaniz own negligence contributed to his death. To succeed on this claim, Daniel Castaneda and California Highway Patrol must prove both of the following:

1. That Leonel Chavez was negligent; and
2. That Leonel Chavez's negligence was a substantial factor in causing his death.

# CACI 418

## Presumption of Negligence

California Penal Code § 148(a)(1) provides that no person shall willfully resist, delay, or obstruct any peace officer in the discharge or attempt to discharge any duty of his or her office or employment.

California Penal Code § 69(a) provides that no person shall attempt, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon the officer by law, or who knowingly resists, by the use of force or violence, the officer, in the performance of his or her duty.

California Penal Code section 240 provides that an assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another.

If defendants prove

1. That John Alaniz violated any of these laws and
2. That one or more of the violations were a substantial factor in bringing about the death of John Alaniz,

then you must find that Leonel Chavez was negligent.

If you find that John Alaniz did not violate any of these laws or that a violation was not a substantial factor in bringing about the death of Leonel

///

Chavez, then you must still decide whether John Alaniz was negligent in light of the other instructions.

**F.    Evidence In Support Of Defendants' Affirmative Defenses**

See defendants' evidence in opposition to plaintiffs' claims.

**G.    Not applicable**

**H.    Anticipated Evidentiary Issues**

Evidentiary issues are addressed in the motions in limine.

**I.    Issues Of Law**

Jurisdiction of the Court to proceed to trial on the claims subject to appeal. Qualified immunity affirmative defense.

**BIFURCATION OF ISSUES**

None planned at this time but liability and damages may need to be bifurcated depending on how this Court rules on the admissibility of some of defendants' evidence.

**JURY TRIAL**

Both parties demanded a jury trial.

**ABANDONMENT OF ISSUES**

Defendants do not abandon any issues.

Dated: March 14, 2025                    Dean Gazzo Roistacher LLP

By: /s/ Lee H. Roistacher
    Lee H. Roistacher
    Attorneys for Defendants
    State of California by and through
    California Highway Patrol and
    Officer Ramon Silva