**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Cooper Alison-Mayne (SBN 343169)
cmayne@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT FOR THE
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA KIRKMAN, CARLOS ALANIZ, individually and successors-in-interest to JOHN ALANIZ, deceased,<br><br>Plaintiff,<br><br>vs.<br><br>STATE OF CALIFORNIA, RAMON SILVA, and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 2:23-cv-07532-DMG-SSC<br>[*Hon. Dolly M. Gee*]<br><br>**PLAINTIFFS' DISPUTED JURY INSTRUCTIONS**<br><br><u>Pre-Trial Conference</u><br>March 25, 2025, 2:00 p.m.<br><br><u>Trial</u><br>April 15, 2025, 8:30 a.m. |

1    **PLEASE TAKE NOTICE** that the Plaintiffs hereby submit their proposed jury
2    instructed that are disputed by Defendants.

     Respectfully submitted,

DATED:  March 14, 2025          **LAW OFFICES OF DALE K. GALIPO**


                                By:    */s/ Cooper Alison-Mayne*
                                       Dale K. Galipo, Esq.
                                       Cooper Alison-Mayne[1]
                                       *Attorneys for Plaintiffs*




DATED:  March 14, 2025          **DEAN GAZZO ROISTACHER**



                                By:    */s/ Lee H. Roistacher*
                                       Lee H. Roistacher, Esq.
                                       *Attorneys for Defendants, State of California,*
                                       *acting by and through the California Highway*
                                       *Patrol, and Ramon Silva*

---

[1] Pursuant to Local Rule 5-4.3.4, as the filer of this document, I attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

# INDEX

| No. | Title | Source | Page |
|---|---|---|---|
| 1. | Fourth Amendment – Excessive Force | 9th Cir. 9.25 | 4 |
| 2. | Battery by a Peace Officer (Deadly Force) | CACI 1305B | 6 |
| 3. | Basic Standard of Care | CACI 401 | 9 |
| 4. | Negligent Use of Deadly Force by Peace Officer | CACI 441 | 11 |
| 5. | Bane Act - Essential Factual Elements | CACI 3066; *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1042 (9th Cir. 2018) | 13 |
| 6. | Damages | 9th Cir. 5.1, 5.2 | 15 |

**PLAINTIFFS' PROPOSED INSTRUCTION NO. 1**
**FOURTH AMENDMENT — EXCESSIVE FORCE**

In general, a seizure of a person is unreasonable under the Fourth Amendment if a police officer uses excessive force in making a lawful arrest or in defending himself. Therefore, to establish an unreasonable seizure in this case, the plaintiff must prove by a preponderance of the evidence that the officer used excessive force.

Under the Fourth Amendment, a police officer may use only such force as is "objectively reasonable" under all of the circumstances. You must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight. Although the facts known to the officer are relevant to your inquiry, an officer's subjective intent or motive is not relevant to your inquiry.

In determining whether the officer used excessive force in this case, consider all of the circumstances known to the officer on the scene, including:

1. the nature of the crime or other circumstances known to the officer at the time force was applied;
2. whether the decedent, John Alaniz, posed an immediate threat of death or severe bodily injury to the officer or to others;
3. whether the decedent was actively resisting arrest or attempting to evade arrest by flight;
4. the amount of time the officer had to determine the type and amount of force that reasonably appeared necessary, and any changing circumstances during that period;
5. the relationship between the need for the use of force and the amount of force used;
6. the extent of the decedent's injury;
7. any effort made by the officer to temper or to limit the amount of force;
8. the severity of the security problem at issue;

9.  the availability of alternative methods to take the decedent into custody;
10. whether it was practical for the officer to give warning of the imminent use of force, and whether such warning was given;
11. whether it should have been apparent to the officer that the person he used force against was emotionally disturbed;
12. whether a reasonable officer would have or should have accurately perceived a mistaken fact;

**Authority:** Ninth Circuit Manual of Model Civil Jury Instructions (2017), No. 9.25 (revised Nov. 2024) (modified).

Plaintiffs' Statement in Support:

See Plaintiffs' response to Defendants' proposed jury instructions for response regarding their proposed additional language. Plaintiffs believe the model instruction is adequate.

Defendants' Response:

Defendants believe the following standard factor should be included as it fits the facts of this case: "the number of lives at risk (motorists, pedestrians, police officers) and the parties' relative culpability; i.e., which party created the dangerous situation, and which party is more innocent."

Defendants also believe the following should be added at the end: "The most importance factor is whether the decedent posed an immediate threat to the safety of the officers or others. Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of an immediate threat." *See Napouk v. L.V. Metro. Police Dep't*, 123 F.4th 906, 915-16 (9th Cir. 2024). See also defendants' statement in support of their proposed alternative instruction

# PLAINTIFFS' PROPOSED INSTRUCTION NO. 2
# BATTERY BY A PEACE OFFICER (DEADLY FORCE)

An officer may use deadly force only when necessary in defense of human life. Sandra Kirkman and Carlos Alaniz claim that Ramon Silva unnecessarily used deadly force on Charles Sesma. To establish this claim, Sandra Kirkman and Carlos Alaniz must prove all of the following:

1. That Ramon Silva intentionally used deadly force on John Alaniz;
2. That Ramon Silva's use of deadly force was not necessary to defend human life;
3. That Ramon Silva's use of deadly force was a substantial factor in causing John Alaniz's death.

Ramon Silva's use of deadly force was necessary to defend human life only if a reasonable officer in the same situation would have believed, based on the totality of the circumstances known to or perceived by Ramon Silva at the time, that deadly force was necessary to defend against an imminent threat of death or serious bodily injury to Ramon Silva and/or another person.

An officer must not use deadly force against persons based only on the danger those persons pose to themselves, if an objectively reasonable officer would believe the person does not pose an imminent threat of death or serious bodily injury to the peace officer or to another person.

A threat of death or serious bodily injury is "imminent" if, based on the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or to another person. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed.

"Totality of the circumstances" means all facts known to or perceived by the peace officer at the time, including the conduct of Ramon Silva and John Alaniz leading up to the use of deadly force. In determining whether Ramon Silva's use of deadly force was necessary in defense of human life, you must consider Ramon Silva's tactical conduct and decisions before using deadly force on John Alaniz and whether Ramon Silva used other available resources and techniques as alternatives to deadly force, if it was reasonably safe and feasible to an objectively reasonable officer.

An officer who makes or attempts to make an arrest does not have to retreat or stop because the person being arrested resists or threatens to resist. Tactical repositioning or other deescalation tactics are not retreat. An officer does not lose the right to self-defense by using objectively reasonable force to arrest or overcome resistance. An officer does, however, have a duty to use reasonable tactical repositioning or other de-escalation tactics.

**Authority:** CACI 1305B (2025 edition) (Modified to consolidate the elements by stating explicitly that Ramon Silva intentionally used deadly force on John Alaniz, rather than breaking it into separate elements distinguishing between an intentional physical act, such as touching or striking, and the use of deadly force).

Plaintiffs' Statement in Support:

See Plaintiffs' response to Defendants' proposed jury instructions for response regarding their proposed amalgamation of federal and state model instructions. Plaintiffs believe CACI 1305B is a proper statement of the law.

Defendants' Response:

Defedants dispute that CACI 1305B is a proper statement of battery liability for a law enforcement officer. The elements for a battery claim are the same as that for excessive force under the Fourth Amendment, *Brown v. Ransweiller* (2009) 171 Cal.App.4th 516, 527 (2009), *R.P. v. City & Cty. of S.F.*, 2025 U.S. Dist. LEXIS 21996, at

*39 (N.D. Cal. Feb. 6, 2025), *Allen v. City of Pasadena Police Dep't*, 2024 U.S. Dist. LEXIS 188775, at *17 (C.D. Cal. Sep. 30, 2024), with the additional of a requirement that there be an intent to use unreasonable force because battery is an intentional tort.

      Defendants also believe "serious bodily injury" means to be defined. Although the instruction defines "imminent" and "totality of the circumstances", it does not define "serious bodily injury." The definition of "serious bodily injury" that officers are taught through POST Learning Domain 20 is that contained in California Penal Code § 243(f)(2): "Serious bodily injury" means a serious impairment of physical condition, including, but not limited to, the following: loss of consciousness; concussion; bone fracture; protracted loss or impairment of function of any bodily member or organ; a wound requiring extensive suturing; and serious disfigurement." See also defendants' statement in support of their offered alternative instruction.

# PLAINTIFFS' PROPOSED INSTRUCTION NO. 3

## BASIC STANDARD OF CARE

Negligence is the failure to use reasonable care to prevent harm to oneself or to others.

A person can be negligent by acting or by failing to act. A person is negligent if that person does something that a reasonably careful person would not do in the same situation or fails to do something that a reasonably careful person would do in the same situation.

You must decide how a reasonably careful person would have acted in Ramon Silva's and John Alaniz's situation.

Authority: CACI 401 (2025 edition).

Plaintiffs' Statement in Support:

Omitting Silva from the general negligence instruction would be confusing, as he is also alleged to have been negligent. While CACI 441 provides additional guidance on evaluating an officer's use of deadly force, it does not replace the need for a basic negligence instruction that applies to all parties alleged to have acted negligently. Omitting Silva from this instruction risks misleading the jury into thinking that only Alaniz's actions are subject to a negligence analysis.

To ensure clarity and consistency, both parties should be included in the general negligence instruction, with CACI 441 providing further clarification on the standard applicable to law enforcement officers.

Defendants' Response:

Defendants agree this instruction applies to John Alaniz for purposes of comparative fault.

Defendant disagrees that the instruction applies to Ramon Silva's conduct because this is a general negligence standard inapplicable to a law enforcement officer's use of force. Separate instructions govern the use of force by law enforcement. See CACI 440 (negligent use of nondeadly force); CACI 441 (negligent use of deady force). Silva's use

of deadly force is controlled by CACI 441. As the directions for use for CACI 441 state: "Use this instruction for a negligence claim arising from a peace officer's use of deadly force." And plaintiffs propose using CACI 441.

    See also defendants' statement in support of their alternative instruction.

**PLAINTIFFS' PROPOSED INSTRUCTION NO. 4**

**NEGLIGENT USE OF DEADLY FORCE BY PEACE OFFICER**

A peace officer may use deadly force only when necessary in defense of human life. Sandra Kirkman and Carlos Alaniz claim that Ramon Silva was negligent in using deadly force to detain and/or overcome resistance by John Alaniz. To establish this claim, Sandra Kirkman and Carlos Alaniz must prove all of the following:

1. That Ramon Silva's use of deadly force was not necessary to defend human life;
2. That Ramon Silva's use of deadly force on John Alaniz was a substantial factor in causing John Alaniz's death.

Ramon Silva's use of deadly force was necessary to defend human life only if a reasonable officer in the same situation would have believed, based on the totality of the circumstances known to or perceived by Ramon Silva at the time, that deadly force was necessary to defend against an imminent threat of death or serious bodily injury to Ramon Silva and/or another person.

A peace officer must not use deadly force against persons based only on the danger those persons pose to themselves, if an objectively reasonable officer would believe the person does not pose an imminent threat of death or serious bodily injury to the peace officer or to another person.

A threat of death or serious bodily injury is "imminent" if, based on the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or to another person. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed.

"Totality of the circumstances" means all facts known to or perceived by the peace officer at the time, including the conduct of Ramon Silva and John Alaniz leading up to the use of deadly force. In determining whether Ramon Silva's use of deadly force was

necessary in defense of human life, you must consider Ramon Silva's tactical conduct and decisions before using deadly force on John Alaniz and whether Ramon Silva used other available resources and techniques as alternatives to deadly force, if it was reasonably safe and feasible to an objectively reasonable officer.

An officer who makes or attempts to make an arrest does not have to retreat or stop because the person being arrested resists or threatens to resist. Tactical repositioning or other deescalation tactics are not retreat. An officer does not lose the right to self-defense by using objectively reasonable force to arrest or overcome resistance.

**Authority:** CACI 441 (2025 edition).

Plaintiffs' Statement in Support:

See Plaintiffs' response to Defendants' proposed jury instructions for response regarding their proposed additional language. Plaintiffs believe the model instruction is adequate.

Defendants' Response:

Defendants believe "serious bodily injury" means to be defined in the instruction. Although the instruction defines "imminent" and "totality of the circumstances", it does not define "serious bodily injury." The definition of "serious bodily injury" that officers are taught through POST Learning Domain 20 is that contained in California Penal Code § 243(f)(2): "Serious bodily injury" means a serious impairment of physical condition, including, but not limited to, the following: loss of consciousness; concussion; bone fracture; protracted loss or impairment of function of any bodily member or organ; a wound requiring extensive suturing; and serious disfigurement."

See also defendants' statement in support of their alternative instruction.

## PLAINTIFFS' PROPOSED INSTRUCTION NO. 5
## BANE ACT - Essential Factual Elements (Civ. Code, § 52.1)

Sandra Kirkman and Carlos Alaniz claim that Ramon Silva intentionally interfered with their civil rights by threats, intimidation, or coercion. To establish this claim, Sandra Kirkman and Carlos Alaniz must prove all of the following:

1. That Ramon Silva used excessive force under the Fourth Amendment;
2. That Ramon Silva intended to violate John Alaniz's Fourth Amendment right to be free from excessive force, which can be shown by a reckless disregard for his right; and
3. That Ramon Silva's conduct was a substantial factor in causing John Alaniz's harm.

**Authority:** CACI No. 3066, (2024 Edition) (modified); *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1042 (9th Cir. 2018) (holding that section 52.1 does not require a showing of threats, intimidation and coercion separate from an underlying constitutional violation); *see also Cornell v. City and County of San Francisco*, 225 Cal. Rptr. 3d at 382-83 (2017) (holding that "[n]othing in the text of the statute requires that the offending 'threat, intimidation or coercion' be 'independent' from the constitutional violation alleged" and "that the use of excessive force can be enough to satisfy the 'threat, intimidation or coercion' element of Section 52.1."); *Id.* at 384 (holding that the Bane Act requires a specific intent to violate the arrestee's right to freedom from unreasonable seizure); *Reese*, 888 F.3d at 1045 (holding that a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights).

Plaintiffs' Statement in Support

      Plaintiffs contend that Plaintiffs' proposed instruction accurately reflects the state of the law regarding the Bane Act. Specific intent may be shown by a reckless disregard for constitutional rights of an individual. *See Reese v. County of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018). Further, Plaintiff's proposed instruction is clear and avoids unnecessarily confusing the jury.

<u>Defendants' Response</u>

      Plaintiffs have not accurately modified CACI 3066. See defendants' statement in support of their alternative instruction.

# PLAINTIFFS' PROPOSED INSTRUCTION NO. 6
## DAMAGES

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for the plaintiffs on any of their claims, you must determine the plaintiffs' damages. The Plaintiffs have the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate plaintiffs for any injury you find was caused by the defendants.

You should consider the following as to John Alaniz's damages:

1. The nature and extent of his injuries;
2. The loss of life and loss of enjoyment of life; and
3. The mental, physical, and emotional pain and suffering experienced prior to death.

You should consider the following as to the damages for Plaintiffs Sandra Kirkman and Carlos Alaniz:

1. The loss of their son John Alaniz's love, companionship, comfort, care, assistance, protection, affection, society, and moral support; and
2. Funeral and burial expenses.

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork, or conjecture.

**Authority:** Ninth Circuit Manual of Model Civil Jury Instructions, 5.1, 5.2.

Plaintiffs' Statement in Support:

Plaintiffs have used the Ninth Circuit Manual of Model Civil Jury Instructions, specifically Instructions 5.1 and 5.2, which provide a clear, straightforward, and well-

established framework for instructing the jury on damages in this case. These instructions are widely accepted and adequately cover the relevant damages without introducing unnecessary complexity.

Defendants' objections seek to add instructions that are not required under Ninth Circuit standards and would only serve to overcomplicate the jury's task. The issues defendants raise—such as distinguishing between damages recoverable under § 1983 and California law—can be appropriately addressed through the special verdict form and do not require additional jury instructions.

Plaintiffs are not necessarily opposed to providing the jury with an explanation on life expectancy, but Plaintiffs' position is that this would be more appropriately done as part of closing argument.

Defendants' argument regarding lump sum damages assumes a rigid application of state procedural law (Cal. Civ. Proc. Code § 377.61), but federal courts are not bound by state procedural rules and it is common practice to separately determine damages for each category to ensure clarity, prevent post-trial disputes, and facilitate appellate review.

The Ninth Circuit model instructions provide jurors with the essential guidance needed to fairly assess damages. Accordingly, Plaintiffs respectfully request that the Court adopt the instruction as proposed.

Defendants' Response:

This instruction does not distinguish between the damage recoverable in a survivor action under § 1983 and California law.  Although loss of life and loss of enjoyment of life damages are recoverable in a survivor action under § 1983, they are not recoverable under California law.  See   That issue may be remedied by the special verdict.

Defendants also believe instructions on life expectancy are necessary because the wrongful death damages for the death of John Alaniz are limited to the shorter life expectancy average life expectancy as between heirs and the deceased.  CACI 3291; *Hammonds v. Yeager*, 2017 U.S. Dist. LEXIS 225742, at *12-13 (C.D. Cal. Aug. 9, 2017).  The survivor damages are also limited to John Alaniz's average life expectancy.

The jury also needs to be told that they can consider this average life expectancy but also a person's health, habits, activities, lifestyle, and occupation. CACI 3921; *Allen v. Toledo*, 109 Cal. App. 3d 415, 424 (1980).

The jury also needs to be told that in determining the wrongful death damages are to be determined in a lump sum with the Court making the division. *See* Cal. Civ. Proc. Code § 377.61; CACI 3921.

See also defendants' statement in support of their alternative instruction.