Dean Gazzo Roistacher LLP
Lee H. Roistacher, Esq. (SBN 179619)
440 Stevens Avenue, Suite 100
Solana Beach, CA  92075
Telephone:  (858) 380-4683
Facsimile:  (858) 492-0486
E-mail:       lroistacher@deangazzo.com

Attorneys for Defendants
State of California by and through California
Highway Patrol and Officer Ramon Silva

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA KIRKMAN AND CARLOS ALANIZ, INDIVIDUALLY AND AS SUCCESSORS-IN-INTEREST TO JOHN ALANIZ, DECEASED,<br><br>             Plaintiff,<br><br>      v.<br><br>STATE OF CALIFORNIA; RAMON SILVA; AND DOES 1-10, INCLUSIVE,<br><br>             Defendant. | Case No.: 2:23-cv-07532-DMG-SSC<br><br>**DEFENDANTS' DISPUTED JURY INSTRUCTIONS**<br><br>Courtroom:  8C<br>Judge:        Hon. Dolly M. Gee<br><br>FPTC: March 25, 2025, 2:00 p.m.<br><br>Trial Date: April 15, 2025, 8:30 a.m. |

///

///

///

///

///

///

///

///

////

1

1         Defendants hereby submit their proposed jury instructed that are disputed

2    by plaintiffs.

3      Dated: March 14, 2025                                    Dean Gazzo Roistacher LLP

4

5                                                                    By:  */s/ Lee H. Roistacher*

6                                                                    Lee H. Roistacher[1]

7                                                                    Attorneys for Defendant

8                                                                    State of California by and through
                                                                     California Highway Patrol and

9                                                                    Officer Ramon Silva

10   Dated:  March 14, 2025                                    Law Offices Of Dale K. Galipo

11

12

13                                                                  By:  */s/ Cooper Alison-Mayne*

13                                                                  Dale K. Galipo, Esq.

14                                                                  Cooper Alison-Mayne

15                                                                  *Attorneys for Plaintiffs*

16

17

18

19

20

21

22

23

24

25

26

27   [1] Pursuant to Local Rule 5-4.3.4, as the filer of this document, I attest that all other signatories
     listed, and on whose behalf the filing is submitted, concur in the filing's content and have

28   authorized the filing.

2

**DEFENDANTS' PROPOSED INSTRUCTION NO. 1**

**FOURTH AMENDMENT - EXCESSIVE FORCE**

In general, a seizure of a person is unreasonable under the Fourth Amendment if a police officer uses excessive force in making a lawful arrest or in defending himself. Therefore, to establish an unreasonable seizure in this case, the plaintiff must prove by a preponderance of the evidence that the officer used excessive force.

Under the Fourth Amendment, a police officer may use only such force as is "objectively reasonable" under all of the circumstances. You must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight. Although the facts known to the officer are relevant to your inquiry, an officer's subjective intent or motive is not relevant to your inquiry.

In determining whether the officer used excessive force in this case, consider all of the circumstances known to the officer on the scene, including:

1.     the nature of the crime or other circumstances known to the officer at the time force was applied;

2.     whether the decedent, John Alaniz, posed an immediate threat to the safety of the officer or to others;

3.     whether the decedent was actively resisting arrest or attempting to evade arrest by flight;

4.     the amount of time the officer had to determine the type and amount of force that reasonably appeared necessary, and any changing circumstances during that period;

5.     the relationship between the need for the use of force and the amount of force used;

6.     the extent of the decedent's injury;

///

7. any effort made by the officer to temper or to limit the amount of force;

8. the severity of the security problem at issue;

9. the availability of alternative methods to take the decedent into custody;

10. the number of lives at risk (motorists, pedestrians, police officers) and the parties' relative culpability; i.e., which party created the dangerous situation, and which party is more innocent;

11. whether it was practical for the officer[s] to give warning of the imminent use of force, and whether such warning was given;

12. whether it should have been apparent to the officer that the person he used force against was emotionally disturbed;

13. whether a reasonable officer would have or should have accurately perceived a mistaken fact;

The most important factor is whether the decedent posed an immediate threat to the safety of the officers or others at the moment the shots were fired. Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of an immediate threat.


**Authority**:  Ninth Circuit Manual of Model Civil Jury Instructions 9.25 (modified); *Napouk v. L.V. Metro. Police Dep't*, 123 F.4th 906, 915-16 (9th Cir. 2024); *Plumhoff v. Rickard*, 572 U.S. 765, 777 (2014).


Defendants' Statement in Support:

The dispute on this instruction is over the last paragraph.  Both are established principals of law and relevant to the facts of this case.  The jury should be so instructed.

Plaintiffs' Response:

Plaintiffs object to the inclusion of the last paragraph in Defendants' proposed jury instruction on excessive force. While an officer's reasonable but mistaken beliefs may be relevant, the proposed language improperly emphasizes this point in a way that favors Defendants and risks misleading the jury.

The Ninth Circuit Model Civil Jury Instructions do not include this language, as the listed factors already address mistaken beliefs by considering whether a reasonable officer "would have or should have accurately perceived a mistaken fact." The additional paragraph is unnecessary and unduly shifts the focus toward a defense-favorable narrative.

While case law recognizes that the immediate threat factor is often the most important, that does not justify modifying the Model Instruction. Excessive force jurisprudence includes many legal principles, some favoring Plaintiffs and others favoring Defendants. Rather than each side inserting language in an attempt to tilt the instruction in their favor, we should adhere to the well-established Model Instruction, which has been tested and upheld in countless trials as a fair and neutral statement of the law.

Additionally, Plaintiffs object to Defendants' proposed tenth factor: "the number of lives at risk (motorists, pedestrians, police officers) and the parties' relative culpability; i.e., which party created the dangerous situation, and which party is more innocent". This factor is relevant in scenarios where the actions of the involved parties have broader safety implications, such as high-speed vehicle pursuits. In such cases, assessing the potential risk to others and determining which party's conduct escalated the danger are crucial in evaluating the reasonableness of the force applied. Because this is not a pursuit case and those concerns are not as relevant here, this optional factor need not be included.

///

///

5

**DEFENDANTS' PROPOSED INSTRUCTION NO. 2**

**BATTERY**

Plaintiffs claim that Ramon Silva's use of force constituted a battery on John Alaniz  To establish this claim, plaintiffs must prove:

1.     that Ramon Silva intentionally used unreasonable force against John Alaniz;

2.     that Ramon Silva's use of deadly force was not necessary to defend human life;

3.     that Ramon Silva's use of deadly force was a substantial factor in causing John Alaniz's death.

A police officer may use only such force as is "objectively reasonable" under the totality of the circumstances.  "Totality of the circumstances" means all facts known to the peace officer at the time, including the conduct of Ramon Silva and John Alaniz leading up to the use of deadly force. In determining whether Ramon Silva's use of deadly force was necessary in defense of human life, you must consider Ramon Silva's tactical conduct and decisions before using deadly force on John Alaniz and whether Ramon Silva used other available resources and techniques as an alternative to deadly force, if it was reasonably safe and feasible to do so. You must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight.   Although the facts known to the officer are relevant to your inquiry, an officer's subjective intent or motive is not relevant to your inquiry.

Ramon Silva's use of deadly force was necessary to defend human life only if a reasonable officer in the same situation would have believed, based on the totality of the circumstances known to or perceived by Ramon Silva at the time, that deadly force was necessary to defend against an imminent threat of death or serious bodily harm to Ramon Silva or another person.

6

In determining whether the officer used excessive force in this case, consider all of the circumstances known to the officer on the scene, including:

1.    the nature of the crime or other circumstances known to the officer at the time force was applied;

2.    whether the decedent, John Alaniz, posed an immediate threat to the safety of the officer or to others;

3.    whether the decedent was actively resisting arrest or attempting to evade arrest by flight;

4.    the amount of time the officer had to determine the type and amount of force that reasonably appeared necessary, and any changing circumstances during that period;

5.    the relationship between the need for the use of force and the amount of force used;

6.    the extent of the decedent's injury;

7.    any effort made by the officer to temper or to limit the amount of force;

8.    the severity of the security problem at issue;

9.    the availability of alternative methods to take the decedent into custody;

10.    the number of lives at risk (motorists, pedestrians, police officers) and the parties' relative culpability; i.e., which party created the dangerous situation, and which party is more innocent;

11.    whether it was practical for the officer[s] to give warning of the imminent use of force, and whether such warning was given;

12.    whether it should have been apparent to the officer that the person he used force against was emotionally disturbed;

///

13.    whether a reasonable officer would have or should have accurately perceived a mistaken fact;

The most important factor is whether the decedent posed an immediate threat to the safety of the officers or others at the moment the shots were fired. Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of an immediate threat.

A person being arrested or detained has a duty not to use force to resist the peace officer unless the peace officer is using unreasonable force.

A threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or another person. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed.

"Serious bodily injury" means a serious impairment of physical condition, including, but not limited to, the following: loss of consciousness; concussion; bone fracture; protracted loss or impairment of function of any bodily member or organ; a wound requiring extensive suturing; and serious disfigurement."

A peace officer who makes or attempts to make an arrest does not have to retreat or stop because the person being arrested is resisting or threatening to resist. Tactical repositioning or other deescalation tactics are not retreat. A peace officer does not lose the right to self-defense by use of objectively reasonable force to effect the arrest or to prevent escape or to overcome resistance. A peace officer does, however, have a duty to use reasonable tactical repositioning or other deescalation tactics.

///

**Authority**:  Ninth Circuit Manual of Model Civil Jury Instructions 9.25 (modified);  CACI 1305B; *Brown v. Ransweiller,* 171 Cal.App.4th 516, 527 (2009), *R.P. v. City & Cty. of S.F.*, 2025 U.S. Dist. LEXIS 21996, at *39 (N.D. Cal. Feb. 6, 2025), *Allen v. City of Pasadena Police Dep't*, 2024 U.S. Dist. LEXIS 188775, at *17 (C.D. Cal. Sep. 30, 2024), *Napouk v. L.V. Metro. Police Dep't*, 123 F.4th 906, 915-16 (9th Cir. 2024); *Plumhoff v. Rickard*, 572 U.S. 765, 777 (2014); Cal. Pen. Code § 243(f)(2).

Defendants' Statement in Support:

Defendants' instruction is a combination of California's deadly force battery instruction and the Ninth Circuit's excessive force instruction. Defendants' position is the California battery instruction is not an accurate recitation of California and Ninth Circuit law on the elements of a battery claim against a law enforcement officer.  A battery claim against a law enforcement officer mirrors a Fourth Amendment claim.  But because a Fourth Amendment claim does not require intent, a battery claim has an additional intent element. And in use of deadly force cases, the intent to use unreasonable force is critical to distinguish the tort from negligence because the use of deadly force is always intentional unless an officer accidentally uses deadly force.

Defendants' instruction also defines "serious bodily injury." Although the instruction defines "imminent" and "totality of the circumstances", it does not define "serious bodily injury."  The definition of "serious bodily injury" that officers are taught through POST Learning Domain 20 is that contained in California Penal Code § 243(f)(2):  "Serious bodily injury" means a serious impairment of physical condition, including, but not limited to, the following: loss of consciousness; concussion; bone fracture; protracted loss or impairment

///

1   of function of any bodily member or organ; a wound requiring extensive

2   suturing; and serious disfigurement."

3

4   Plaintiffs' Response:

5        Defendants' proposed instruction departs significantly from CACI 1305B

6   by attempting to blend it with the Ninth Circuit's excessive force instruction.

7   This approach is unwarranted. The California model instruction accurately and

8   fairly describes battery under state law, just as the Ninth Circuit's excessive force

9   instruction properly governs claims brought under the Fourth Amendment. There

10  is no justification for cherry-picking language from one to modify the other.

11  Rather than each side attempting to import language that favors their position, it

12  is far simpler and fairer to apply the appropriate model instruction to each claim.

13  The established instructions already provide clear and neutral guidance,

14  eliminating the need for unnecessary modifications that risk distorting the legal

15  standards.

16       For the same reasons described in their response to Defendants' excessive

17  force instruction, Plaintiffs object to the inclusion of the following paragraph,

18  which is not found in any model instruction: "The most important factor is

19  whether the decedent posed an immediate threat to the safety of the officers or

20  others at the moment the shots were fired.  Officers can have reasonable, but

21  mistaken, beliefs as to the facts establishing the existence of an immediate

22  threat."

23       Additionally, Plaintiffs object to Defendants' inclusion of a definition for

24  "serious bodily injury." The Ninth Circuit Model Civil Jury Instructions do not

25  define this term, as it is not necessary for a jury's determination of excessive

26  force. Here, the definition is particularly unnecessary because the issue is not in

27  dispute. If Defendants' theory prevails—that it was reasonable to believe Alaniz

28  had a gun—there is no real question that a firearm presents a threat of serious

10

bodily injury. If Plaintiffs' theory prevails—that Alaniz was unarmed and turning away—there is no plausible argument that he posed such a threat. In either scenario, defining "serious bodily injury" serves no meaningful purpose. Rather than adding unnecessary definitions, the Court should adhere to the well-established model instruction, which provides a fair and neutral statement of the law.

For these reasons, Plaintiffs respectfully request that the Court reject Defendants' proposed instruction and instead adopt Plaintiffs' version of the model instruction.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

11

# DEFENDANTS' PROPOSED INSTRUCTION NO. 3
## BANE ACT

Sandra Kirkman and Carlos Alaniz claim that Ramon Silva intentionally interfered with their civil rights by threats, intimidation, or coercion. To establish this claim, Sandra Kirkman and Carlos Alaniz must prove all of the following:

1.     That Ramon Silva used excessive force against John Alaniz to prevent him from exercising his right to be free from excessive force under the Fourth Amendment;

2.     That Ramon Silva deprived John Alaniz of his the right to be free from excessive force by acting with a reckless disregard to that right by intending not only the force, but its unreasonableness, its character as more than necessary under the circumstances;

3.     That John Alaniz was harmed; and

4.     That Ramon Silva's conduct was a substantial factor in causing John Alaniz's harm.

**Authority**: California Approved Civil Instructions ("CACI") 3066 (May 2024) (modified); *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1045 (9th Cir. 2018); *United States v. Reese*, 2 F.3d 870, 885 (9th Cir. 1993).

Defendants' Statement in Support:

Defendants believe the jury should be instructed on that intent level is required to establish "reckless disregard."

///

///

///

///

12

<u>Plaintiffs' Response</u>:

Plaintiffs object to Defendants' proposed instruction as overly wordy and complex, which may make it more difficult for the jury to understand the legal standard.

Plaintiffs' instruction clearly and concisely sets out the required elements: (1) that Silva used excessive force in violation of the Fourth Amendment, (2) that he intended to violate Alaniz's Fourth Amendment right, which can be shown by reckless disregard to that right, and (3) that his conduct was a substantial factor in causing Alaniz's injuries or death. This correctly conveys the heightened intent requirement without introducing unnecessary legal jargon.

Defendants' version overcomplicates the instruction, increasing the risk of jury confusion. The Court should adopt Plaintiffs' straightforward and fair instruction, which properly conveys the law without unnecessary complexity.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

13

## DEFENDANTS' PROPOSED INSTRUCTION NO. 4

## NEGLIGENT USE OF DEADLY FORCE BY PEACE OFFICER

A peace officer may use deadly force only when necessary in defense of human life. Sandra Kirkman and Carlos Alaniz claim that Ramon Silva was negligent in using deadly force to detain and/or overcome resistance by John Alaniz. To establish this claim, Sandra Kirkman and Carlos Alaniz must prove all of the following:

1.     That Ramon Silva's use of deadly force on John Alaniz was not necessary to defend human life or serious bodily injury;

2.     That John Alaniz was killed; and

3.     That Ramon Silva's use of deadly force was a substantial factor in causing John Alaniz's death.

Ramon Silva's use of deadly force was necessary to defend human life only if a reasonable officer in the same situation would have believed, based on the totality of the circumstances known to or perceived by Ramon Silva at the time, that deadly force was necessary to defend against an imminent threat of death or serious bodily injury to Ramon Silva and/or another person.

A peace officer must not use deadly force against persons based only on the danger those persons pose to themselves, if an objectively reasonable officer would believe the person does not pose an imminent threat of death or serious bodily injury to the peace officer or to another person.

A threat of death or serious bodily injury is "imminent" if, based on the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or to another person. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed.

14

"Serious bodily injury" means a serious impairment of physical condition, including, but not limited to, the following: loss of consciousness; concussion; bone fracture; protracted loss or impairment of function of any bodily member or organ; a wound requiring extensive suturing; and serious disfigurement.

"Totality of the circumstances" means all facts known to or perceived by the peace officer at the time, including the conduct of Ramon Silva and John Alaniz leading up to the use of deadly force. In determining whether Ramon Silva's use of deadly force was necessary in defense of human life, you must consider Ramon Silva's tactical conduct and decisions before using deadly force on John Alaniz and whether Ramon Silva used other available resources and techniques as alternatives to deadly force, if it was reasonably safe and feasible to an objectively reasonable officer.

A peace officer who makes or attempts to make an arrest does not have to retreat or stop because the person being arrested is resisting or threatening to resist. Tactical repositioning or other deescalation tactics are not retreat. A peace officer does not lose the right to self-defense by use of objectively reasonable force to effect the arrest or to prevent escape or to overcome resistance. A peace officer does, however, have a duty to use reasonable tactical repositioning or other de-escalation tactics.

**Authority**: CACI 441(Nov. 2020) (modified); Cal. Pen. Code § 243(f)(2)).

Defendants' Statement in Support:

Defendants believe "serious bodily injury" means to be defined in the instruction. Although the instruction defines "imminent" and "totality of the circumstances", it does not define "serious bodily injury." The definition of "serious bodily injury" that officers are taught through POST Learning Domain 20 is that contained in California Penal Code § 243(f)(2): "Serious bodily

15

injury" means a serious impairment of physical condition, including, but not limited to, the following: loss of consciousness; concussion; bone fracture; protracted loss or impairment of function of any bodily member or organ; a wound requiring extensive suturing; and serious disfigurement."

Plaintiffs' Response:

See Plaintiffs' response to Defendants' proposed instruction for battery, above.

Plaintiffs also object to Defendants' proposed revision of the following element: "That Ramon Silva's use of deadly force on John Alaniz was not necessary to defend human life or serious bodily injury." This modification unnecessarily alters the Model Instruction without adding any meaningful clarity.

The Model Instruction already defines "necessary to defend human life" to include the concept of serious bodily injury. It states that deadly force is necessary only if a reasonable officer in the same situation would have believed, based on the totality of the circumstances, that it was required to defend against an imminent threat of death **or serious bodily injury** to the officer or another person. Because this definition is already built into the instruction, Defendants' proposed revision is redundant and only makes the instruction more verbose and confusing.

///
///
///
///
///
///
///
///

16

**DEFENDANTS' PROPOSED INSTRUCTION NO. 5**

**BASIC STANDARD OF CARE**

Negligence is the failure to use reasonable care to prevent harm to oneself or to others. A person can be negligent by acting or by failing to act. A person is negligent if that person does something that a reasonably careful person would not do in the same situation or fails to do something that a reasonably careful person would do in the same situation.  You must decide how a reasonably careful person would have acted in John Alaniz's situation.

**Authority**: CACI 401 (May 2020)

Defendants' Statement in Support:

This instruction only applies to John Alaniz's conduct for purposes of comparative fault.  This instruction does not apply to Ramon Silva's conduct because this is a general negligence standard inapplicable to a law enforcement officer's use of force.  Separate instructions govern the use of force by law enforcement.  *See* CACI 440 (negligent use of nondeadly force); CACI 441 (negligent use of deady force).   Silva's use of deadly force is controlled by CACI 441.  As the directions for use for CACI 441 state: "Use this instruction for a negligence claim arising from a peace officer's use of deadly force."

Plaintiffs' Response:

Plaintiffs object to Defendants' effort to limit this instruction to John Alaniz's conduct while excluding Officer Silva. Plaintiffs' version properly includes both individuals, stating: "You must decide how a reasonably careful person would have acted in Silva's or Alaniz's situation."

Omitting Silva from the general negligence instruction would be confusing, as he is also alleged to have been negligent. While CACI 441

17

provides additional guidance on evaluating an officer's use of deadly force, it does not replace the need for a basic negligence instruction that applies to all parties alleged to have acted negligently. Omitting Silva from this instruction risks misleading the jury into thinking that only Alaniz's actions are subject to a negligence analysis.

To ensure clarity and consistency, both parties should be included in the general negligence instruction, with CACI 441 providing further details on the standard applicable to law enforcement officers.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

18

**DEFENDANTS' PROPOSED INSTRUCTION NO. 6**

**PRESUMPTION OF NEGLIGENCE PER SE**

California Penal Code § 148(a)(1) provides that no person shall willfully resist, delay, or obstruct any peace officer in the discharge or attempt to discharge any duty of his or her office or employment.

California Penal Code § 69(a) provides that no person shall attempt, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon the officer by law, or who knowingly resists, by the use of force or violence, the officer, in the performance of his or her duty.

California Penal Code § 240 provides that an assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another.

If defendants prove

1.    That John Alaniz violated any of these laws and

2.    That one or more of the violations were a substantial factor in bringing about the death of John Alaniz, then you must find that Leonel Chavez was negligent.

If you find that John Alaniz did not violate any of these laws or that a violation was not a substantial factor in bringing about the death of Leonel Chavez, then you must still decide whether John Alaniz was negligent in light of the other instructions.

**Authority**: CACI 418 (Nov. 2020) (modified); Cal. Pen. Code §§ 69(a), 148(a), 240.

///

///

///

1   Defendants' Statement in Support:

2        Defendants are entitled to pursue a negligence per se claim against John

3   Alaniz based on his conduct.

4

5   Plaintiffs' Response:

6        Negligence per se does not apply here because Defendants have not

7   identified a specific statute, ordinance, or regulation that Alaniz violated which

8   would give rise to a presumption of negligence under Evidence Code § 669. To

9   establish negligence per se, Defendants would need to demonstrate that Alaniz

10  violated a statute, that the violation proximately caused the harm at issue, that the

11  harm was of the type the statute was designed to prevent, and that Plaintiffs were

12  within the class of persons the statute was intended to protect. Because these

13  elements have not been satisfied, the presumption of negligence does not arise in

14  this case.

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1
2

**DEFENDANTS' PROPOSED INSTRUCTION NO. 7**

**DAMAGES**

3      It is the duty of the Court to instruct you about the measure of damages.

4   By instructing you on damages, the Court does not mean to suggest for which

5   party your verdict should be rendered.

6      If you find for the plaintiffs on any of their claims, you must determine the

7   plaintiffs' damages. The Plaintiffs have the burden of proving damages by a

8   preponderance of the evidence. Damages means the amount of money that will

9   reasonably and fairly compensate plaintiffs for any injury you find was caused by

10  the defendants.  It is for you to determine what damages, if any, have been

11  proved. Your award must be based upon evidence and not upon speculation,

12  guesswork, or conjecture.

13     There are two categories of damages in this case.  The first are the

14  damages John Alaniz sustained as a result of his death.  The second are the

15  damages Sandra Kirkman sustained as a result of the death of John Alaniz

16     You should consider the following as to John Alaniz's damages:

17     1.    The loss of life and loss of enjoyment of life; and

18     2.    The mental, physical, and emotional pain and suffering experienced

19  prior to death.

20     In deciding John Alaniz's life expectancy, you may consider, among other

21  factors, the average life expectancy of a person of that age, as well as that

22  person's health, habits, activities, lifestyle, and occupation.   According to the

23  National Vital Statistic Reports, the average life expectancy of a 34 year-old-

24  male is 43 years. This published information is evidence of how long a person is

25  likely to live but is not conclusive. Some people live longer and others die

26  sooner.

27     You should consider the following as to the wrongful death damages for

28  Plaintiffs Sandra Kirkman and Carlos Alaniz:

1          1.      The loss of their son John Alaniz's love, companionship, comfort,

2  care, assistance, protection, affection, society, and moral support; and

3          2.      Funeral and burial expenses.

4          In deciding the life expectancy of Sandra Kirkman and Carlos Alaniz, you

5  may consider, among other factors, the average life expectancy of a person of

6  that age, as well as that person's health, habits, activities, lifestyle, and

7  occupation.  According to the National Vital Statistic Reports, the average life

8  expectancy of a 57-year-old-female is 27 years and a 59-year-old-male is 22

9  years. Again, this published information is evidence of how long a person is

10  likely to live but is not conclusive. Some people live longer and others die

11  sooner.

12          In determining Sandra Kirkman and Carlos Alaniz's loss, do not

13  consider:

14          1.      Sandra Kirkman and Carlos Alaniz's grief, sorrow, or mental

15  anguish;

16          2.      John Alaniz's pain and suffering; or

17          3.      The poverty or wealth of Sandra Kirkman and Carlos Alaniz's

18          In computing these wrongful death damages, consider the losses suffered

19  by all plaintiffs and return a verdict of a single amount for all plaintiffs. I will

20  divide the amount between the plaintiffs.

21

22  **Authority**:  Ninth Circuit Manual of Model Civil Jury Instructions, 5.1, 5.2

23  (modified); CACI 3919 (May 2022) (modified), CACI 3921 (May 2020)

24  (modified); *Hammonds v. Yeager*, 2017 U.S. Dist. LEXIS 225742, at *12-13

25  (C.D. Cal. Aug. 9, 2017); *Allen v. Toledo*, 109 Cal. App. 3d 415, 424 (1980);

26  Cal. Civ. Proc. Code § 377.61.

27  ///

28  ///

Defendants' Statement in Support:

This instruction more clearly tells the jury the two differing damages awards and omits a damage award for John Alaniz's "nature and extent of injuries" because that category of damage is for injury claims and not death claims.  Instructions on life expectancy are necessary because the wrongful death damages for the death of John Alaniz are limited to the shorter life expectancy average life expectancy as between heirs and the deceased.  The survivor damages are also limited to John Alaniz's average life expectancy.  The jury also needs to be told that they can consider this average life expectancy but also a person's health, habits, activities, lifestyle, and occupation.  The jury also needs to be told that in determining the wrongful death damages are to be determined in a lump sum with the Court making the division.

Plaintiffs' Response:

Defendants' proposed instruction is unnecessarily complex and goes well beyond what is required to adequately instruct the jury on damages. The Ninth Circuit Manual of Model Civil Jury Instructions, 5.1 and 5.2, already provide a clear, concise, and legally sufficient framework for instructing the jury on both survival and wrongful death damages. Plaintiffs' proposed instruction adheres to this framework and provides the jury with clear, necessary guidance without unnecessary complexity.

In contrast, Defendants' instruction is nearly twice as long, adding excessive details that do not improve juror comprehension. The additional language is redundant, risks confusing the jury, and deviates from the well-established model instructions without justification. Plaintiffs' instruction fully covers the essential elements of damages, including compensation for pre-death suffering, loss of life, and wrongful death damages, without unnecessary elaboration.

1        Accordingly, Plaintiffs respectfully request that the Court use their

2    proposed instruction, which is taken directly from the Ninth Circuit model

3    instructions.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

24