**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Cooper Alison-Mayne (SBN 343169)
cmayne@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California, 91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA KIRKMAN, CARLOS ALANIZ, individually and successors-in-interest to JOHN ALANIZ, deceased,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF CALIFORNIA, RAMON SILVA, and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 2:23-cv-07532-DMG-SSC<br><br>*Honorable Dolly M. Gee*<br>*Hon. Mag. Judge Stephanie S.*<br>*Christensen*<br><br>**PLAINTIFFS' NOTICE OF MOTION AND *DAUBER* MOTION TO EXCLUDE TESTIMONY AND EXHIBITS OF ROD ENGLERT, NIKKI WAGNER AND CHERYL KANZLER**<br><br>Judge:   Dolly M. Gee<br>Hearing:  March 25, 2025<br>Time:   2:00 p.m.<br>Dept.:   Courtroom 8C<br><br>FPTC:   March 25, 2025<br>Trial:   April 15, 2025 |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on March 18, 2025, at 2:00 p.m., in Courtroom 8C of the United States District Court for the Central District of California, at 350 West 1st Street, Los Angeles, California 90012, Plaintiffs, SANDRA KIRKMAN and CARLOS ALANIZ, hereby move for an order excluding, at the trial of the above-referenced matter, any evidence, testimony, argument, or reference to the expert testimony of Defendants' Forensic Consultants Rod Englert, Nikki Wagner, and Cheryl Kanzler

**Statement of Local Rule 7-3 Compliance:** This motion is made following the meet and confer between counsel for Plaintiffs and Defendants. The Parties were unable to resolve the issues brought up in this motion.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the records and files of this Court, and upon such other oral and documentary evidence as may be presented at the time of the hearing.

DATED:  March 14, 2025

**LAW OFFICES OF DALE K. GALIPO**

By:    /s/ Cooper Alison-Mayne
Dale K. Galipo, Esq.
Cooper Alison-Mayne
*Attorneys for Plaintiffs*

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3        Defendants have retained Rod Englert as their forensics consultant. Mr.

4    Englert is expected to testify regarding forensic analysis and incident reconstruction.

5    However, his conclusion regarding Mr. Alaniz's position at the time of the shooting

6    is unsupported by the facts of this case, making it unreliable and unhelpful to the

7    trier of fact.

8        Along with his partners, Nikki Wagner and Cheryl Kanzler, Mr. Englert is

9    improperly invading the province of the jury by offering unsupported opinions on

10   critical factual issues, including:

11       • What position Mr. Alaniz's body was in at the time of the shooting.

12       • Whether he had an object in his hands in the moments before the

13         shooting.

14       • Whether he still had that object at the time of the shooting or dropped it

15         after being tased.

16       • Whether he turned away from the officers after being tased, and if so,

17         to what extent.

18       Additionally, Mr. Englert provides opinions outside the scope of his expertise,

19   which should also be excluded. Plaintiffs seek to preclude the admission of Mr.

20   Englert's expert testimony at trial and any reference to his opinions.

21   **II.    MR. ENGLERT'S OPINIONS ARE UNRELIABLE AND SHOULD**

22          **THEREFORE BE EXCLUDED**

23       Federal Rule of Evidence 702 permits expert testimony only if it is both

24   relevant and reliable, meaning it must be based on sufficient facts or data, derive

25   from reliable principles and methods, and properly apply those principles to the

26   facts of the case. Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms. Inc*., 509 U.S.

27   579, 589 (1993). The trial court acts as a "gatekeeper" to ensure that expert

28

testimony meets these standards before it is admitted. *Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002), *amended by* 319 F.3d 1073 (9th Cir. 2003). Mr. Englert's opinions fail to meet these requirements and should be excluded because they lack sufficient factual support, rely on speculative reconstructions, and contradict his own statements.

<u>Internal Inconsistencies and Contradictions</u>

Mr. Englert's testimony is internally inconsistent and contradicts established evidence. As depicted below, Englert's animation depicts Alaniz at the time of the shots as having his hands raise up, grasping an object in both hands, and looking in Officer Silva's direction.



Declaration of Cooper Alison-Mayne, Exhibit C, Rod Englert's February 10, 2025 expert report at 29; see also Alison-Mayne Decl., Exhibits D, E, and F, [Kirkman Animation Videos]

PLAINTIFFS' NOTICE OF MOTION AND MOTION IN LIMINE NO. 1 TO EXCLUDE DECEDENT
JOHN ALANIZ'S PRIOR ENCOUNTER WITH POLICE

However, in his deposition, Englert admitted that no video evidence captures the decedent's body at the time of the second shot because Officer Silva's hands obstructed the view from his body-worn camera. Therefore, he admitted he does not know what position Alaniz's arms would have been in at the time of the shots:

> Q: Would you agree that there's no video evidence showing the decedent's body **at the time of the second shot**, because the video was obstructed by Officer Silva's hands?
>
> A: So in the last three-quarters of a second, no, you cannot see what happened.
>
> Q: So your opinion that the decedent was still aiming at Officer Silva is an inference of some kind, based on other information, since we don't have the direct video of that moment?
>
> A: In that very short period of time, in like, I guess, even half a second, for him to change position, all I know is he's canted and he's going down. **And what the position of his arms are at that point, I don't know.**

Alison-Mayne Decl., Exhibit A, Englert Deposition at 36–37.)

Englert further admits that he had no basis for placing the object in Alaniz's hand at the time of the shots. If Alaniz turned away from the taser and started going down, there is no evidence that he did not lose contact with the object in his hands before the shots, potentially leaving him unarmed and turning away from the officers when Silva shot him. Englert himself admits that no one can determine this with certainty:

> Q: So what's the specific evidence that it was in his hand at the time he fell versus a moment before, when he hadn't quite fallen yet?
>
> A: The one second when we know that it was in his hands based upon the body-worn camera, and in that one second we know that what causes him to go down are gunshots to his person. And in that one second, **you can't have any non-display or display of the weapon, because we don't know exactly during that one second that he's shot and going down, which is all very, very, very fast. Nobody knows.**

Alison-Mayne Decl., Exhibit A, Englert Deposition at 61–62.)

Even looking prior to the moment of the shots, his decision to place an object in Alaniz's hands is questionable. Englert claims that he can see an object in the video,

1   forming part of the basis for his reconstruction. Alison-Mayne Decl., Exhibit A,

2   Englert Deposition at 7.) But Defendants' own video expert, Mr. Blake, directly

3   contradicts this claim, stating that no such object is visible in the video Alison-

4   Mayne Decl., Exhibit B, Blake Deposition at 38.). This disagreement between

5   Defendants' own experts further demonstrates the speculative and unreliable nature

6   of Englert's opinions and reconstruction animation.

7          <u>Speculative and Prejudicial Reconstruction</u>

8          Englert's reconstruction is not only speculative but highly prejudicial. His

9   report includes a still image depicting Alaniz holding an object as if it were a gun

10  and aiming at Silva—despite a lack of video evidence supporting this portrayal. This

11  reconstruction is purely conjectural and misleading, as it presents an unverified

12  scenario as fact. In reality, the available evidence—including video footage and the

13  autopsy—suggests the opposite. In the final frames of the video, Alaniz appears to

14  be turning away from the officers, and the trajectory of the gunshots from his right

15  side indicates he had already turned at the time he was shot. Englert's presentation,

16  therefore, improperly influences the jury by portraying speculation as fact—an issue

17  made even more troubling by his own admission that he cannot confirm Alaniz's

18  arm position or whether he was still holding an object when he was shot.

19         The animation is also simply inaccurate compared to the actual events as

20  depicted in the video. For example, Exhibit G shows a frame from a side-by-side

21  exhibit of the video next to the reconstruction animation. Alison-Mayne Decl.,

22  Exhibit G. In this frame, the video shows Van Dragt with his right arm by his hip,

23  but the animation shows him with his arms in a shooters stance. If Mr. Engert and

24  his team cannot accurately reconstruct events that are clearly depicted in a video,

25  how can we believe that they can accurately reconstruct events about which we have

26  less information, like the critical moments before Alaniz is shot?

27

28

Mr. Englert's report also lacks the necessary transparency and documentation required for a reliable forensic analysis. In his February 10 report, he claims to have tested a range of body positions to determine the most probable one based on the physical evidence. Alison-Mayne Decl., Exhibit C, Englert's February report at 25 ("Throughout the reconstruction, a range of body positions were tested to determine the most probable body positioning given the physical evidence."). However, *Englert provides no images, documentation, or rationale for why he selected one scenario over other possible scenarios.* Without information about the alternative positions, he purportedly considered and rejected for undisclosed reasons, there is no way to evaluate his methodology or conclusions. This omission renders his reconstruction speculative and biased rather than grounded in scientific rigor.

Given these significant flaws, Englert's testimony should be excluded under Rule 702. His opinions lack a sufficient factual basis, rely on speculation rather than sound forensic principles, and improperly usurp the jury's role in determining key disputed facts. Allowing him to present his unreliable reconstruction would not assist the jury in reaching a verdict based on actual evidence but would instead prejudice the proceedings in favor of the Defendants. Accordingly, his opinions should be deemed inadmissible and excluded from trial.

## III. MR. ENGLERT'S OPINIONS THAT ARE SIMPLY A BIASED RECITATION OF THE FACTS SHOULD BE EXCLUDED AS OUTSIDE THE SCOPE OF HIS EXPERTISE

Englert's opinions improperly invade the province of the jury by making credibility determinations and speculative conclusions rather than providing objective forensic analysis. He asserts that Alaniz "failed to comply" with officers' commands, despite video evidence showing Alaniz raising his hands in response to their orders. He claims that six "pops" were heard on the body-worn camera, though only five gunshots are audible, and he mischaracterizes the distinct sound of the

taser. He also concludes that the taser had "no apparent effect" on Alaniz's movement, yet the video suggests otherwise.

Englert further states that Alaniz was "holding an object with both hands" and in a "shooting stance," despite the fact that the video does not clearly show an object. Even the defense's own expert concedes that nothing can definitively be seen in Alaniz's hands. His claim that Alaniz's stance was "consistent with a shooting stance" is outside of his expertise and is a lay opinion, as he is no more qualified than the jury to determine what posture Alaniz was in, based on the video. Additionally, he asserts that Officer Silva's belief that Alaniz was armed is "consistent with the body-worn camera video," despite the fact that the video does not confirm Alaniz was holding anything.

These statements do not constitute expert forensic analysis but rather a biased recitation of the facts designed to favor the defense. Englert's role as an expert witness does not grant him the authority to determine credibility, interpret ambiguous evidence in favor of one party, or draw legal conclusions—those are matters reserved for the jury. His testimony in this regard is not based on scientific principles or specialized expertise but instead on subjective interpretation, making it inadmissible under Rule 702.

For these reasons, Plaintiffs respectfully request that the Court exclude Mr. Englert's testimony on these matters, as these opinions exceed the proper scope of expert opinion and could improperly influence the jury's fact-finding role.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court exclude the testimony and exhibits of Rod Englert, and his partners, Nikki Wagner and Cheryl Kanzler. Their opinions are speculative, unreliable, and prejudicial, failing to meet the standards of admissibility under Federal Rule of Evidence 702.

1    Their incident reconstruction, in particular, is internally inconsistent, lacks factual
2    support, and improperly presents an unverified narrative as fact.
3            Allowing these experts to testify would not aid the trier of fact but instead
4    mislead and prejudice the proceedings in favor of the Defendants. Given these
5    deficiencies, Plaintiffs respectfully request that this Court grant their motion to
6    exclude the testimony and exhibits of Rod Englert, Nikki Wagner, and Cheryl
7    Kanzler in their entirety.
8            Respectfully submitted,
9
10   DATED:  March 14, 2025              **LAW OFFICES OF DALE K. GALIPO**
11
12
13                                      By:    */s/ Cooper Alison-Mayne*
14                                             Dale K. Galipo, Esq.
                                               Cooper Alison-Mayne
15                                             *Attorneys for Plaintiffs*
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS' NOTICE OF MOTION AND MOTION IN LIMINE NO. 1 TO EXCLUDE DECEDENT
JOHN ALANIZ'S PRIOR ENCOUNTER WITH POLICE