# EXHIBIT 1

*General Case Report for Incident 210038634* *Page 3 of 22*

### Narrative

```
            TORRANCE POLICE DEPARTMENT
ARREST & CRIME REPORT

REPORTING
OFFICER(S): Norris # 19004 /Trivette# 22270

ARRESTEE: John Alaniz
01/25/1988
CDL D8252797

CHARGES: 148(a)(1) PC - Resisting / Obstructing a Peace Officer
243(b) PC - Battery against Peace Officer

DETAILS:
```

On 14Oct21, Officer Trivette and I (Officer Norris) were working uniformed patrol in a marked black and white police vehicle assigned as Unit 9A16. At approximately 0838 hours, TPD Communications dispatched several TPD units to an "Unknown Trouble" call at Steve's Charburger, 18202 Prairie Avenue. They advised that there was a man with a gun in the parking lot of Steve's Charburger. Officer Trivette and I, along with multiple units responded to the location with lights and sirens.

TPD Communications continued to update us via the radio. They further advised that a HMA in dark clothing was on foot in the lot holding a rifle. The RP described the subject as "appears unstable talking to himself." The subject was observed next to a black pickup truck and there was possibly another subject inside the truck.

I drove the police unit north on Prairie Avenue toward Steve's Charburger and I as approached, a citizen was standing in the middle of Prairie Avenue flagging us down. The citizen directed us toward the Steve's parking lot.

I exited the police vehicle and ran to the parking lot on foot. As I entered the lot, I looked east and saw a HMA wearing all black near a pickup truck. The subject (later identified as John Alaniz) was approximately 20-30 yards away from me. I observed that Alaniz matched the provided description. I had my pistol drawn, at a low ready, and began ordering Alaniz to put his hands up. Alaniz turned toward me and began sprinting toward me. I ordered him multiple times to get on the get on the ground but he continued to sprint directly at me while screaming. I holstered my pistol as Alaniz closed the distance between us. Alaniz was filled with rage as he lowered his head and bent forward as he came within feet of me. I subsequently stepped forward, raised my arms in defense, and used my right elbow/shoulder to strike/block Alaniz. I knocked Alaniz back into a parked vehicle and I, along with Officer Trivette and Officer Garver forced the subject to the ground to overcome his resistance and to effect an arrest.

Alaniz continued to yell as we struggled to take him into custody. I then felt a tugging on my pistol and I looked down and Alaniz had his entire hand around the grip of my pistol. He was attempting to pull it out of my holster. I said, "He's got my gun, he's got my gun." Officer Gorciak arrived to assist and I began instructing someone to "tase" Alaniz.

Based on the call for service (man with a gun), coupled with the fact that

*General Case Report for Incident 210038634*                                                              Page 4 of 22

Alaniz charged me (attempting to tackle me), and the fact that he tried taking my gun, I formed the opinion that Alaniz was violent and physically resisting.

At approximately 0842 hours, while kneeing directly over Alaniz, I removed my department issued Taser and looked for an open area on his body to discharge it. However, it was a dynamic situation and there were three other officers attempting to subdue Alaniz. Based on my positioning next to Alaniz, combined with how he was laying, I placed my Taser on Alaniz' chest area and pulled the trigger. The probes discharged (5 second cycle) and I monitored the situation.

The Taser appeared to have zero effect on Alaniz. The Taser also sounded like it wasn't cycling properly and it appeared that the probes did not make contact with his skin. Due to the fact that Alaniz continued to be violent and physically resist, I moved the Taser lower on his chest to spread the circuit and I pulled the trigger to "contact tase" (5 second cycle) Alaniz.

I evaluated the situation and observed that the second Taser discharged appeared to have zero effect. Due to the fact that Alaniz continued to physically resist and be violent toward officers, I moved the Taser toward Alaniz' inner shoulder area and I pulled the trigger to administer another "contact tase" (5 second cycle). This discharge appeared to have some kind of effect. Alaniz yelled and rolled to his stomach. During this 5 second cycle, I adjusted the Taser and placed it on Alaniz' upper back.

I continued to evaluate the situation as Alaniz continued to physically resist officers. Officer Trivette managed to get a handcuff on Alaniz' left hand but he struggled to control Alaniz' right arm. Alaniz pulled his arm free and continued to physically resist. We were unable to overcome Alaniz' resistance so I placed the Taser on Alaniz' upper back and discharged the Taser (5 second cycle). However, Alaniz' moved, freed his left arm and I was unable to keep the Taser against his back.

I continued to evaluate the situation while I kept the Taser pressed against Alaniz' upper back. The Taser was not activated but I was monitoring the lack of progress we were having with handcuffing Alaniz. Officers still could not successfully handcuff Alaniz. He continued to physically resist and we were not able to overcome his resistance. I then pulled the trigger again and discharged the Taser (5 second cycle) into Alaniz' upper back.

Shortly thereafter, Officers were finally able to place Alaniz in handcuffs by using two sets of handcuffs. I subsequently instructed officers to place Alaniz on his side in the recovery position but Alaniz rolled back onto his stomach. We were still unable to get control of Alaniz to place him in a recovery position. I then instructed Officer Trivette to use the hobble restraint to restrict Alaniz' movements(see Officer Trivette's supplemental report for further).

I holstered my Taser and stepped back for approximately 30 seconds. During that brief time, Alaniz managed to wiggle his legs free from the Total Appendage Restraint Procedure (TARP). Officers struggled to reposition it and properly placed Alaniz into the TARP. Officer Trivette was able to apply the TARP and we pulled Alaniz behind cover and waited for assisting officers to make the scene safe.

We tried our best to keep Alaniz on his side in the recovery position and monitor his breathing. While we waited for TFD paramedics, I tried to calm Alaniz down because I was concerned that he was experiencing excited delirium.

lwmain.xla                                                                                                     10/31/24

*General Case Report for Incident 210038634*  *Page 5 of 22*

Alaniz continued to flail around and he managed to get free from the TARP. I instructed Officer Trivette to fix the TARP as we anxiously awaited paramedics. I also noticed that Alaniz had several lacerations to his arms which he had prior to our arrival.

TFD Paramedics arrived and attempted to administer medical treatment. They placed a spit hood on Alaniz and administered some medication. With the assistance of the medical personal, Alaniz was strapped to a gurney and placed in the ambulance. Officer Trivette and I subsequently rode with Alaniz while he was transported to Providence Little Company of Mary for medical treatment.

While at the hospital, medical staff took control of transferring Alaniz to a hospital bed. The staff discovered that there was only one Taser dart attached to Alaniz and it was only attached to hist-shirt. Officer Trivette collected the dart and wire for evidence.

Alaniz was positively identified through local file information and by using his California ID.

Based on the fact that Alaniz charged me in a full sprint, lowered his head/body, and collided with me, I formed the opinion that he willfully and unlawfully used force against me to inflict injury, while I was engaging in Peace Officer Duties. Due to this, I formed the opinion that Alaniz was in violation of 243(b) PC.

Based on the fact that I gave Alaniz several lawful orders to get on the ground, coupled with the fact that I had to defend myself against his aggression, and the fact that it took officers several minutes to overcome Alaniz' resistance, I formed the opinion that Alaniz willfully resisted officers in violation of 148(a)(1) PC.

Alaniz was admitted into the hospital for medical treatment. Therefore, I recommended that these charges be pursued by way of complaint.

It should be noted that several officers stayed on scene to interview witnesses and collect evidence. See supplemental reports for further details. The Taser cartridge and Anti-Felon Identification papers were collected at the scene and booked into TPD Property as evidence.

Sergeant Lee was on scene for supervisory oversight.

SUPERVISOR APPROVING: Sgt. A. Lee #19521

lwmain.xla                                                                                    10/31/24