# EXHIBIT 6

```
 1              UNITED STATES DISTRICT COURT

 2              CENTRAL DISTRICT OF CALIFORNIA

 3                       --oOo--

 4

 5   SANDRA KIRKMAN, CARLOS ALANIZ,
     individually and successors
 6   in-interest to JOHN ALANIZ,
              Deceased,
 7
              Plaintiffs,
 8
     v.                          Case No.   2:23-cv-07532-DMG-SSC
 9
     STATE OF CALIFORNIA, RAMON
10   SILVA, and DOES 1-10, inclusive,

11            Defendants.
                                            /
12

13

14        STENOGRAPHIC REPORTER'S TRANSCRIPT OF

15            DEPOSITION OF DEFENSE EXPERT

16                    DAVID BLAKE

17           WEDNESDAY, FEBRUARY 5 2025

18

19

20

21

22   Reported Stenographically by:

23   KIMBERLY D'URSO, CSR 11372, RPR

24   Job No. 00135673

25
```

1  what -- how they perceived the events as they actually
2  happened in realtime versus just looking at the video?
3       A.   I think both are helpful and important.
4       Q.   Was it important in your consideration of
5  whether Officer Silva faced a deadly threat, to consider
6  Van Dragt's testimony, that he thought the object in the
7  decedent's hand looked like a Subway sandwich?
8            MR. ROISTACHER:  Let me object.  I think the
9  first part misstates his opinion.  I think you said -- I
10 think you left out "perception of a deadly threat."  But
11 I could be wrong.
12 BY MR. MAYNE:
13      Q.   I'll shortcut it and say:  Did it affect your
14 opinion in this case that Van Dragt said that the object
15 he perceived in the decedent's hands looked like a
16 Subway sandwich?
17      A.   Yes.  And if you'll bear with me a little bit
18 on my answer.  I think Officer Van Dragt said a lot of
19 things beyond that.  He said he -- he initially thought
20 it was gun, and then he changed his mind after having
21 additional time to view it.
22           But throughout his various descriptions of what
23 occurred, I come away with the perception that he was
24 unsure of what it was, and he still believed it posed a
25 threat to him.  So he initially thought it was a gun;

```
 1   over there."  And I think he was even asked what that
 2   was, and I believe he identified that gray -- whatever
 3   kind of pouch it is -- sunglasses pouch.  I believe that
 4   was the answer.
 5            MR. MAYNE:  Okay.  Let's take a five-minute
 6   break.  I'll look over my notes and hopefully just have a
 7   couple minutes and we'll be on our way.
 8            (Break taken.)
 9   BY MR. MAYNE:
10       Q.   Your opinion in this case, is that based on
11   your view of the facts; is that right?
12            (Reporter clarification.)
13            THE WITNESS:  Correct.
14   BY MR. MAYNE:
15       Q.   And in most cases you've worked on, including
16   this one, the facts are disputed; right?
17       A.   Sometimes they are.  Sometimes they're not.
18   But there's something always disputed.
19       Q.   And is it your understanding that at trial,
20   when there are disputed facts, a jury decides the facts?
21       A.   Of course.
22       Q.   And is it your understanding that at trial,
23   it's a jury who ultimately decides whether Officer
24   Silva's mistaken belief about what the decedent had in
25   his hands was reasonable or not?
```

SANDRA KIRKMAN, ET AL. vs STATE OF CALIFORNIA, ET AL.
Expert David Blake on 02/05/2025

Page 63

1      A.    Yes.

2      Q.    Do you think you're any more equipped than the

3   average juror to watch the video, that's the videos of

4   the incident, and determine what those videos establish?

5      A.    Yes.

6      Q.    And why is that?

7      A.    Because I have an extensive background and

8   training in not only the mechanical aspects of video,

9   digital media evidence, but I also have training in

10  human factors psychology, so I know the capabilities and

11  limitations of watching video or forming an opinion

12  about what someone else's perception is, what you're

13  actually watching.

14          Like, for example, just real quick, if I'm

15  looking at you -- and I'm sure we all have a quadplex on

16  our computers of four different people.  If I look at

17  you, I can look at your face.  I know that there are

18  things in the background.  But they are blurry to me and

19  not clear.  If I focus on the things in the background,

20  I can see have you a plaque back there, it's got writing

21  on it.  There's a calendar back there with "2024."

22          But I also, at the same time, know there's

23  people in the upper right-hand corner and lower

24  right-hand corner, but I can't tell you much about them.

25  They're blurry.  They're literally inches away from my

Page 68

```
 1  STATE OF CALIFORNIA)
                       ) ss:
 2  COUNTY OF ALAMEDA  )

 3
              I, KIMBERLY E. D'URSO, do hereby certify:
 4

 5            That the witness named in the foregoing

 6  deposition was present remotely and duly sworn to testify

 7  to the truth in the within-entitled action on the day and

 8  date and at the time and place therein specified;

 9            That the testimony of said witness was reported

10  by me in shorthand and was thereafter transcribed through

11  computer-aided transcription;

12            That the foregoing constitutes a full, true and

13  correct transcript of said deposition and of the

14  proceedings which took place;

15            Further, that if the foregoing pertains to the

16  original transcript of a deposition in a federal case,

17  before completion of the proceedings, review of the

18  transcript [ ] was [ ] was not requested.

19            That I am a certified stenographic reporter and

20  a disinterested person to the said action;

21            IN WITNESS WHEREOF, I have hereunder subscribed

22  my hand this 18th day of February, 2025.

23  _____

24  KIMBERLY D'URSO, CSR NO. 11372, RPR

25
```