**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Cooper Alison-Mayne (SBN 343169)
cmayne@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California, 91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA KIRKMAN, CARLOS ALANIZ, individually and successors-in-interest to JOHN ALANIZ, deceased,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF CALIFORNIA, RAMON SILVA, and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 2:23-cv-07532-DMG-SSC<br><br>*Honorable Dolly M. Gee*<br>*Hon. Mag. Judge Stephanie S. Christensen*<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE #3 TO EXCLUDE OPINIONS OF PLAINTFFS POLICE PRACTICES EXPERT DEFOE**<br><br>Judge:   Dolly M. Gee<br>Hearing: March 25, 2025<br>Time:    2:00 p.m.<br>Dept.:   Courtroom 8C<br><br>FPTC:    March 25, 2025<br>Trial:   April 15, 2025 |

# MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs oppose Defendants' third motion in limine (Dkt. 82), which seeks to exclude significant portions of the testimony of Plaintiffs' police practices expert, Scott DeFoe. Defendants argue that Mr. DeFoe should not be permitted to reference taser-related evidence or offer his opinion on the officers' conduct even though their own police practices expert, Clarence Chapman, addresses the same issues. While Plaintiffs are amenable to a mutual stipulation that neither party's expert may offer an opinion on the ultimate legal question of whether Silva's use of force was "reasonable," but Defendants' motion goes far beyond that limited request. The motion improperly seeks to exclude all of Mr. DeFoe's opinions, while allowing their own experts to testify freely on the same topics. This one-sided approach is fundamentally unfair. Plaintiffs respectfully request that the Court deny the motion in full or, in the alternative, apply any limitations on expert testimony equally to both parties.

First Defendants argue that Plaintiffs' police practices expert Scott DeFoe should not be permitted to "offer any taser-related opinions" because none of the 10 opinions in his report dealt with the issue of whether Van Dragt effectively tased Alaniz. This argument misses the mark, because Mr. DeFoe does discuss the taser as an important factual predicate for his opinion.

Mr. DeFoe's opinions in this case are informed in part by his analysis of the evidence he reviewed that Van Dragt not only deployed the taser but that the barbs contacted Mr. Alaniz. In his report, he states: "Officer Van Dragt deployed his taser at Mr. Alaniz" and the "autopsy report indicates that the taser barbs did penetrate Mr. Alaniz." He goes on to explain:

> The Taser is an Electronic Controlled Device (ECD) as defined by the manufacturer, Axon. It is a handheld, battery operated tool which uses controlled electrical current designed to disrupt a person's sensory and motor nervous system by means of deploying electrical energy sufficient to cause temporary uncontrolled muscle contractions, or Neuro Muscular Incapacitation, ("NMI"). As a result, the electrical energy can override the person's voluntary motor responses for a brief duration. The use of Taser ECD deployment resulting in NMI may provide a brief opportunity during which physical restraint procedures can be initiated whenever practical.

DeFoe Report at 17 (Alison-Mayne Decl. Exh. A). Mr. DeFoe does not claim to *know* that Mr. Alaniz was incapacitated by the taser strike, but evidence that Alaniz appeared to be struck by the taser is relevant to his evaluation of Mr. Silva's actions, which is why it is part of his analysis of the facts of the case.

Notably, Defendants' police practices expert, Clarence Chapman, includes *his analysis* of the taser issue in his report. Like DeFoe, he couches his factual analysis of the effectiveness of the taser as background for his opinions rather than an independent opinion. Chapman states: "Officer Van Dragt then transitioned to his laser device and fired one cartridge of probes at Alaniz. **The Taser application had**

**no effect** in stopping Alaniz from continuing his charging attack." Exhibit B at 2 (Alison-Mayne Decl. Exh. B) (emphasis added).

Whether an individual was struck by a taser prior to the use of lethal force is relevant to a police practices expert's analysis, which is why the subject appears in both experts' reports. Both experts should be permitted to testify regarding their opinions and the underlying bases for those opinions; there is no principled justification for allowing Chapman to interpret the evidence while precluding DeFoe from doing the same. Therefore, Plaintiffs request that the Court deny this portion of the motion.

Second, Defendants ask the Court to exclude all of DeFoe's opinions without citing any on-point authority to support such a sweeping request—an especially perplexing position given that their own expert offers opinions on the very same subjects, though he reaches the opposite conclusions.

| DeFoe | Chapman |
|---|---|
| Opinion No. 1: "[A] reasonable police Officer would have initially determined [the decedent] was suicidal, mentally ill, and or experience a mental crisis. It is my opinion that ... Officer Silva failed to initially determine [the decedent] was suicidal mentally ill, and or experience a mental crisis." (Alison-Mayne Decl. Exh. A, p. 7) | "The sudden life-threatening attack by Alaniz prevented Officer Silva from assessing any possible mental illness or accident-based disability that may have caused his threatening behavior." (Alison-Mayne Decl. Exh. B, p. 7) |
| Opinion No. 1(a): "It is my opinion that ... Officer Silva failed to properly recognize that [the decedent] was | *See above*. Additionally: "[I]t was not possible for [the officers] to determine within the time span of a |

| | |
|---|---|
| exhibiting 'Suicide by Cop' ideation when they contacted him." (Alison-Mayne Decl. Exh. A, p. 8) | matter of seconds that Alaniz's behavior may be a result of a mental disfunction." (Alison-Mayne Decl. Exh. B, p. 7) |
| Opinion No. 1(b): "[I]t is my opinion that ... Officer Silva failed to comply with California Highway Manual, HPM 70.6 ..." (Alison-Mayne Decl. Exh. A, p. 8) | "Officer Silva's use of deadly force was . . . consistent with California POST training standards under Learning Domain #20 [and] CHP Use of Force policies under HPM 70.6." (Alison-Mayne Decl. Exh. B, p. 5) |
| Opinion No. 2: "[A] reasonable Police Officer would have initially determined [the decedent] was a Danger to Self and met the criteria for a 5150 Hold. It is my opinion ... Officer Silva failed to initially determine whether [the decedent] was a Danger to Self and met the criteria for a 5150 Hold." (Alison-Mayne Decl. Exh. A, pp. 9–10) | "[I]t was not possible for [the officers] to determine within the time span of a matter of seconds that Alaniz's behavior may be a result of a mental disfunction." (Alison-Mayne Decl. Exh. B, p. 7) |
| Opinion No. 3: "[A] reasonable Police Officer would have established an inner and outer perimeter around I-105 W/B, W/ of Garfield Avenue, Paramount California to contain [the decedent]. .... ¶ It is my opinion ... Defendants to include ... Officer Silva failed to contain [the decedent] in the area of I-105 W/B, W/ of Garfield Avenue, Paramount California to include shutting down the freeway until he was safely in custody." (Alison-Mayne Decl. Exh. A, p. 11) | "[A]ccording to the facts of this case, there were no viable tactical or plausible alternative less-lethal force options that could have been deployed to stop Alaniz from committing what Officer Silva believed to be an immediate life-threatening attack." (Alison-Mayne Decl. Exh. B p. 10) |
| Opinion No. 4: "[A] reasonable Police Officer would have immediately tactically retreated or moved to a | "[T]here was no available or sufficient cover location for Officer Silva to take before stopping the running gun assault |

| | |
|---|---|
| position of cover, if possible, to properly and safely manage this tactical incident. [¶] In addition, it is my opinion ... Officer Silva should have tactically retreated or moved to a position of cover, if possible, to properly and safely manage this tactical incident." (Alison-Mayne Decl. Exh. A, pp. 12–13) | by Alaniz that threatened the life of his partner and potentially his own safety." (Alison-Mayne Decl. Exh. B, p. 10) |
| Opinion No. 5: "It is my opinion .... the Defendants to include, ... Officer Silva failed to formulate a safe tactical plan." (Alison-Mayne Decl. Exh. A, p. 16) | "There were no viable tactical or plausible alternative less-lethal force options that could have been deployed to stop Alaniz." (Alison-Mayne Decl. Exh. B, p. 10) |
| Opinion No. 6: "It is my opinion that a reasonable Police Officer ... would have given a verbal warning to [the decedent] that he was going to fire his service weapon .... It is my opinion .... Officer Silva did not give a verbal warning to [the decedent] and give [him] opportunity to comply prior to firing his [gun] ...." (Alison-Mayne Decl. Exh. A, p. 18) | "Officer Silva had no time or opportunity to issue verbal warning prior to his use of deadly force." (Alison-Mayne Decl. Exh. B, p. 6) |
| Opinion No. 7: "[A] reasonable police officer acting consistent with standard police practices would not have used lethal force in this situation. [¶] In my opinion ... Officer Silva used unnecessary, unreasonable and inappropriate force when he shot and killed [the decedent] as he was not an imminent threat of serious/great bodily injury or death to the Officers or a | "Officer Silva's use of deadly force was necessary, justified, and objectively reasonable under the totality of the circumstances." (Alison-Mayne Decl. Exh. B, p. 5) |

| | |
|---|---|
| citizen(s)." (Alison-Mayne Decl. Exh. A, p. 19) | |
| Opinion No. 7(a): "[I]t is my opinion based on my review of the facts and videos in this matter ... Officer Silva violated with [sic] failed to comply with California Highway Manual, HPM 70.6, Revised December 2020." (Alison-Mayne Decl. Exh. A, p. 20) | "Officer Silva's use of deadly force was . . . consistent with California POST training standards under Learning Domain #20 [and] CHP Use of Force policies under HPM 70.6." (Alison-Mayne Decl. Exh. B, p. 5) |
| Opinion No. 8: "It is my opinion .... Officer Silva's use of lethal force violated Peace Officer Standards and Training and caused the unnecessary death of [the decedent] ...." (Alison-Mayne Decl. Exh. A. 1, p. 24) | "The tactics and ultimate use of deadly force by Officer Silva was consistent with that of any other well-trained and competent police officer similarly situated." (Alison-Mayne Decl. Exh. B, p. 5) |
| Opinion No. 9: "It is my opinion .... Officer Silva's tactical conduct and decisions preceding the use of deadly for in this matter was inappropriate based on the totality of the circumstances. It is my opinion there was a departure from POST Standards." (Alison-Mayne Decl. Exh. A, p. 25) | "Officer Silva's use of deadly force was . . . consistent with California POST training standards under Learning Domain #20 [and] CHP Use of Force policies under HPM 70.6." (Alison-Mayne Decl. Exh. B, p. 5) |
| Opinion No. 10: "It is my opinion that the California Highway Patrol should have determined through its review process that the use of lethal force by ... Officer Silva was unreasonable, unnecessary and inappropriate." (Alison-Mayne Decl. Exh.A, p. 25) | N/A |
| Opinion No. 10(a): "[I]t is further my opinion .... there was a failure by the California Highway Patrol to properly | "The tactics and ultimate use of deadly force by Officer Silva was consistent with that of any other well-trained and competent police officer similarly |

| | |
|---|---|
| train ... Officer Silva ...." (Alison-Mayne Decl. Exh. A, p. 25) | situated." (Alison-Mayne Decl. Exh. B, p. 5) |

In their motion, Defendants cite a series of cases for the uncontroversial proposition that courts generally do not permit police practices experts to opine on whether an officer's use of force was reasonable under the circumstances. (Dkt. 82-1 at 10–11.) Plaintiffs do not dispute this legal principle and are amenable to an order or stipulation precluding any witness from offering an opinion on the ultimate issue of whether Officer Silva's use of force was reasonable. During the meet-and-confer that occurred prior to the filing of this motion, Plaintiffs informed Defendants that they would agree to such a stipulation.

However, Defendants' motion does not simply seek to exclude ultimate-issue testimony. Rather, it overreaches by attempting to exclude virtually the entire report of Plaintiffs' expert—even though their own expert discusses the exact same topics and reaches contrary conclusions. Defendants cannot have it both ways. If DeFoe is precluded from testifying about the topics outlined above, Defendants experts must also be precluded from testifying on those same topics.[1]

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' third motion in limine in its entirety. Alternatively, if the Court is inclined to impose any limits on the scope of expert testimony regarding police

---

[1] Notably, Defendants do not dispute Mr. DeFoe's exemplary qualifications as an expert in police practices.

1  practices, Plaintiffs only request that such limits be applied equally to both parties'
2  experts.

3  DATED: March 21, 2025              **LAW OFFICES OF DALE K. GALIPO**

6                                     By:   */s/ Cooper Alison-Mayne*
7                                          Dale K. Galipo
                                            Cooper Alison-Mayne
8                                          *Attorneys for Plaintiffs*