**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Cooper Alison-Mayne (SBN 343169)
cmayne@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California, 91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA KIRKMAN, CARLOS ALANIZ, individually and successors-in-interest to JOHN ALANIZ, deceased,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF CALIFORNIA, RAMON SILVA, and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 2:23-cv-07532-DMG-SSC<br><br>*Honorable Dolly M. Gee*<br>*Hon. Mag. Judge Stephanie S. Christensen*<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE #4 TO EXCLUDE OPINIONS OF PLAINTIFFS EXPERT MEDICAL EXAMINER OMALU**<br><br>Judge:     Dolly M. Gee<br>Hearing:  March 25, 2025<br>Time:     2:00 p.m.<br>Dept.:    Courtroom 8C<br><br>FPTC:     March 25, 2025<br>Trial:    April 15, 2025 |

## MEMORANDUM OF POINTS AND AUTHORITIES

Dr. Omalu's expert testimony regarding pre-death conscious and unconscious pain and suffering is both relevant and admissible under Rule 702 of the Federal Rules of Evidence.[1]

Defendants seek to exclude Dr. Omalu's opinions regarding Alaniz's pain and suffering on the basis that these opinions are irrelevant and speculative. Defendants' argument that unconscious pain and suffering is speculative only illustrates the importance of this testimony. *See United States v. Cazares*, 788 F.3d 956, 977 (9th Cir. 2015) ("Experts may be used to testify to matters outside the expected knowledge of the average juror."); *see also Patterson v. City of Perth Amboy*, 2007 WL 3054939, *2 (D.N.J. 2007) ("Given the severity of the injuries [ ], the Court finds that a lay person would need expert testimony to understand the extent of [decedent]'s pain and suffering from the time he was shot until the time he died."). In order to recover for a decedent's pre-death pain and suffering, Plaintiff must show "that the decedent was conscious for at least some period of time after he suffered the injuries which resulted in his death." *F/V Carolyn Jean, Inc. v. Schmitt*, 73 F.3d 884, 885 (9th Cir. 1995), quoting *Cook v. Ross Island Sand & Gavel Co.*, 626 F.2d 746, 749–750 (9th Cir. 1980). Expert testimony about a decedent's pre-death pain and suffering can be very helpful for the jury to understand the nature and extent of the decedent's pain before they are pronounced dead. *Id.* Courts have repeatedly recognized Dr. Omalu's ability and qualifications to testify regarding a

---

[1] Plaintiffs agree that Dr. Omalu did not offer any opinions in his Rule 26 report concerning the effectiveness of the taser, and Plaintiffs do not intend to elicit any testimony from him on that subject at trial. Accordingly, Dr. Omalu would properly be precluded from offering taser-related opinions in Plaintiffs' case-in-chief. However, should Defendants open the door by eliciting testimony or posing questions that implicate the taser or its effects, Dr. Omalu should be permitted to respond fully and appropriately, consistent with the scope of any such cross-examination.

decedent's conscious and unconscious pain and suffering. *See Murillo*, No. CV218738FMOAGRX, 2023 WL 9420539 at *2–3 (finding Dr. Omalu's opinions on decedents' unconscious pain relevant to Plaintiffs' claims for pre-death pain and suffering damages, helpful to the jury, and reliable); *see also A.B. v. Cnty. of San Diego*, No. 18CV1541-MMA-LL, 2020 WL 4430971 (S.D. Cal. July 31, 2020) (same).

While lay people may understand the basic concept of a person experiencing pain after being shot, they cannot be expected to understand the underlying mechanics, chemistry, or severity of the pain and suffering, or how long that pain and suffering lasts after a person is shot. That is why Dr. Omalu's testimony is so important.

In his expert report, Dr. Omalu dedicates nearly two pages to explaining the patho-physiology of pain and suffering, explaining that a person can experience both mechanical and chemical pain and suffering, and explaining in detail the difference between the two. (Alison-Mayne Decl., Exhibit A, Omalu Report at 11–12.) As Dr. Omalu explains, mechanical pain which can result from "tissue damage by blunt force trauma and by bullets elicits both fast and slow pain types." (*Id*. at 12). Dr. Omalu goes on to explain that this tissue damage causes "biochemical tissue reactants like bradykinin, serotonin, histamine, prostaglandins, leukotrienes, potassium ions…" which the body releases, causing "sustained secondary chemical pain in addition to the primary fast pain directly caused by mechanical tissue damage." (*Id*.)

Dr. Omalu points out that, although Mr. Alaniz had been shot, the reticular activating system of his brain was intact and as long as that portion of the brain remains anatomically and electrochemically intact, a person will feel pain and experience suffering. (*Id*. at 12, 13, 15.)

Regarding unconscious pain and suffering, Omalu explains that even when a person is in a coma or unconscious, their body can still experience significant pain and suffering due to ongoing trauma and chemical responses in the brain and body. (*Id*. at 15–16.) He explains that one of the clinical tests for evaluating the depth or severity of unconsciousness is to intentionally inflict somatic pain to an extremity of the unconscious patient and observe the patients reaction. (*Id*. at 16.) He further explains that unconscious patients in hospitals are routinely given strong pain medications like Morphine or Fentanyl, because it is well known that being unconscious does not preclude pain and suffering. (*Id*.)

Defendants' counsel argues that Dr. Omalu's explanation on unconscious pain and suffering is "virtually impossible to understand," and should be excluded. (Dkt. 83-1 at 9.) But Defendants do not address head on the explanation summarized above. Why would doctors give pain medications like Morphine or Fentanyl to unconscious patients if they could not feel pain? Why would medical professionals be trained to assess pain response in comatose patients by applying painful stimuli if the underlying premise—that unconscious individuals can still experience pain— were not scientifically valid? Far from being speculative or incomprehensible, his explanation is grounded in widely accepted medical knowledge and is consistent with real-world treatment protocols.

For the foregoing reasons, Plaintiffs request that the Court deny Defendants' fourth motion in limine (Dkt. 83).

| | | |
|---|---|---|
| DATED: March 21, 2025 | | **LAW OFFICES OF DALE K. GALIPO** |
| | By: | */s/ Cooper Alison-Mayne* |
| | | Dale K. Galipo |
| | | Cooper Alison-Mayne |
| | | *Attorneys for Plaintiffs* |